EXHIBIT A

Darren G. Reid (11163)
Brandon T. Christensen (16420)
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, Utah  84101
Telephone:  (801) 799-5800
Facsimile:  (801) 799-5700
dgreid@hollandhart.com
btchristensen@hollandhart.com

*Attorneys for Plaintiffs*

---

## IN THE FOURTH JUDICIAL DISTRICT COURT
## IN AND FOR UTAH COUNTY, STATE OF UTAH

| | |
|---|---|
| SMASH TECHNOLOGY, LLC, a Nevada limited liability company; and MICHAEL ALEXANDER, an individual; | **COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF** |
| Plaintiffs, | |
| vs. | Case No. _____ |
| SMASH SOLUTIONS, LLC, a Delaware limited liability company; JERRY "J.J." ULRICH, an individual; and JOHN DOES 1-3; | Judge _____ |
| Defendants. | **(TIER 3)** |

Plaintiffs Smash Technology, LLC ("**Technology**") and Michael Alexander

("**Alexander**"), by and through their undersigned counsel, hereby complains against Smash

Solutions, LLC ("**Solutions**"), Jerry "J.J." Ulrich ("**Ulrich**"), John Does 1-3 (collectively,

"**Innovations**") as follows:

## PARTIES

1.      Plaintiff Smash Technology, LLC is a Nevada limited liability company doing business in Utah and with its principal place of business in Nevada.

2.      Michael Alexander is an individual residing in Nevada and Indonesia.

3.      Smash Solutions, LLC is a Delaware limited liability company doing business in Utah and with its principal place of business in Utah.

4.      Defendant Jerry "J.J." Ulrich is an individual residing in Utah and upon information and belief is an owner, principal, agent, and/or employee of John Does 1-3, collectively called herein Smash Innovations or "Innovations."

5.      John Does 1-3 are as yet unknown entities—possibly Utah or Wyoming corporations or DBAs wherein Ulrich is attempting to operate as Smash Innovations.

## JURISDICTION & VENUE

6.      Jurisdiction and venue are appropriate in this Court pursuant to Utah Code Ann. §§ 78A-5-102, 78B-3-205(1)-(3), and 78B-3-307.

## GENERAL ALLEGATIONS

7.      Smash Technology has developed "customer relationship management" (CRM) technology that enhances businesses' ability to connect, develop, interact, and communicate with, and market to their customers and prospective contacts in a wide variety of ways, including by creating highly-detailed contact profiles and dashboard aggregating and updating data via public sources and databases to maximize communication, sales, marketing, social media, and various other activities.  Technology's intellectual property and proprietary technology (the "**CRM Platform**") is wholly-owned by Technology.

8.      Michael Alexander is the sole member and manager of Technology.

**The Formation of Smash Technology (Technology)**

9.      In forming Technology, Alexander partnered with J.J. Ulrich, who was previously the majority shareholder in Smash Solutions.  Alexander was also a shareholder in Solutions.

10.     Solutions dissolved its business by executing dissolution papers and sending notice to all interested parties.

11.     Alexander's and Ulrich's Technology partnership intended to work as follows: first, Ulrich agreed to transfer clear title to Solutions' infant intellectual property to Technology, and second, Alexander agreed to fund Technology.  Ulrich agreed to dissolve Smash Solutions and indemnify Alexander and Technology from any liability from Smash Solutions' creditors, investors, and employees.  Ulrich was unable to provide any of the initial funding.  Pursuant to this same agreement, Ulrich agreed to build his Bitclub Network business to produce adequate sales and production volume to maximize daily earnings from Tatiana Alexander's Uberfund and Centurion Bitclub Network.  Ulrich has defaulted on his obligations relating to the Bitclub Network.

12.     Based upon his representations, Ulrich transferred Solutions' intellectual property to Technology and dissolved Smash Solutions.  To date, Alexander has funded Technology with approximately $900,000.

13.     Alexander and Ulrich intended to develop Technology into a CRM technology powerhouse by developing the sophisticated and superior CRM Platform that would outpace all competitors in the marketplace.

14.     As Technology's primary operator, Ulrich was tasked with a simple mandate: hire a Chief Technology Officer (Sam Potter) to run point with the outsourced development team building out the CRM Platform.  Once this important task was completed, Technology would invest in hosting and server costs for the CRM Platform and other necessary operating expenses once ready to deploy the Alpha testing phase and become partially operational.

**The Feracode Agreement**

15.     In March 2018, Technology entered into a Master Services Agreement with Feracode, LLC, a Utah limited liability company, whereby Feracode agreed to develop the CRM Platform in exchange for $1.7 million.  The parties agreed that Feracode would develop the CRM Platform during 12 discrete time periods or milestones.  After each accomplished milestone, the parties would agree upon the completed work, exchange payment, and authorize the next milestone to be performed.  To date, Feracode has completed seven milestones, readying the CRM Platform for its Alpha deployment and testing phase.

16.     Though Solutions never fully developed CRM technology, Solutions developed limited templates and technical documents that could be used as a spring-board for Technology (with Feracode's expertise and services) to develop more sophisticated and superior CRM technology that was viable to market and was sustainable and scalable, including the use of current updated language and superior software code, among other things.

17.     Technology has developed the CRM Platform at great expense and implemented protocols to keep information and processes related to the CRM Platform confidential and proprietary.

18.     Technology's intellectual property, database, and CRM Platform is its most valuable asset.  Technology intends to develop significant goodwill and a quality business reputation in the marketplace with its CRM Platform.

**Ulrich's Financial Misconduct**

19.     Upon information and belief, Ulrich has engaged in numerous unauthorized transactions for Technology without Alexander's knowledge or authorization, including but not limited to entering into unauthorized vendor agreements, commingling Technology funds with Solutions and personal accounts, and using Technology funds for personal expenses.  For example, Ulrich has used funds for personal expenses such as moving expenses, travel and food expenses, investments, computers, and internet and cable services for his home and other businesses.

20.     Upon information and belief, Ulrich has failed to account for substantial funds Alexander invested into Technology, including two wires in the amount of approximately $90,000 and earnings provided from Alexander's other business interests in the amount of approximately $900,000.

21.     Despite repeated requests from Alexander, Ulrich has only provided limited (and troubling) financial information related to Technology's expenses.  Significantly, Ulrich has failed to provide any original documentation of Technology's transactions like bank and credit card statements, digital exchanges conversion transaction reports (when Ulrich converted crypto currencies into U.S. dollars), invoices, and vendor contracts.

22.     Upon information and belief, Ulrich has also fraudulently invoiced Solutions and/or himself for various Technology purchases.  In either instance, Ulrich is enriching himself to the of detriment Technology and Alexander.

**Innovations: Ulrich's Misappropriation and Deceit**

23.     Upon information and belief, Alexander has recently discovered that Ulrich has formed a new entity or entities—John Does 1-3 and referred to herein as Smash Innovations— for the purpose of misappropriating Technology's intellectual property and CRM Platform, hi-jacking Technology's development relationship with Feracode, and soliciting new investors and customers outside of Technology.

24.     Ulrich recently locked Alexander out of chatroom discussions with Feracode, presumably to supplant Technology with his newly-formed enterprise Innovations and to redirect Feracode's development efforts to support his misappropriation of the CRM Platform.  Upon information and belief, Ulrich is working with and/or directing Feracode to circumvent its contractual obligations with Technology and to divert the CRM Platform and related intellectual property to Innovations.

25.     Upon information and belief, and without authorization, Ulrich has dusted off Solutions' old private placement memorandum (PPM) to solicit funds from investors while misrepresenting his ownership of the CRM platform and Technology's business.

26.     Upon information and belief, Ulrich has removed access to Technology's website and is directing investors or customers to the old Solutions website or new Innovations websites.

27.     Ulrich's current actions are causing immediate and irreparable harm to Technology and the CRM Platform by diluting the brand and technology, creating confusion in

the marketplace, and interfering with Technology's current and long-term business value proposition to investors and customers.

## FIRST CAUSE OF ACTION
### (Injunctive Relief)

28.     Plaintiffs hereby incorporate the preceding paragraphs as if fully stated herein.

29.     Upon information and belief, Ulrich and Innovations, acting in concert, have misappropriated Technology's CRM Platform, hi-jacked Technology's development relationship with Feracode, and solicited new investors and customers outside of Technology.

30.     Upon information and belief, and without authorization, Ulrich is using Solutions' old private placement memorandum (PPM) to solicit funds from investors while misrepresenting his ownership of the CRM platform, intellectual property, and Technology's business.

31.     Ulrich's and Innovations' conduct has caused Technology and its CRM Platform to suffer immediate and irreparable harm for which there is no adequate remedy at law.

32.     The injury to Technology and its CRM Platform outweighs whatever damage an injunction may cause to Ulrich and Innovations.

33.     The issuance of an injunction will not be adverse to the public interest.

34.     There is a substantial likelihood that Plaintiffs will prevail on the merits of their underlying claims and the case presents serious issues on the merits which should be the subject of further litigation.

35.     Because of Ulrich's and Innovations' conduct, Plaintiffs are entitled to an order from this Court effective for the pendency of this action and permanently restraining Ulrich and Innovations from (a) misappropriating Technology's intellectual property and CRM Platform;

(b) interfering with Technology's Feracode contract and prospective customers; and (c) misrepresenting their ownership of Technology's intellectual property, CRM Platform, business tool suite, and database to investors, customers, or other third parties; and (d) taking any other action that would impair Plaintiffs' rights and cause them additional harm.

## SECOND CAUSE OF ACTION
### (Breach of Contract—Ulrich)

36.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above.

37.      Alexander and Ulrich entered into an agreement regarding the formation, funding, and operation of Technology.

38.     Alexander has performed all of his material obligations under the agreement.

39.     Ulrich has breached his material obligations under the agreement as described above.

40.     As a direct and proximate result of Ulrich's breach, Alexander has suffered and will continue to suffer damages in an amount to be proven at trial, plus applicable interest, late fees, and costs of collection.

## THIRD CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing—Ulrich)

41.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above.

42.     At the time of entering into their agreement, Alexander justifiably expected— based upon Ulrich's representations and the express terms of the agreement—that he would use his best efforts to form, fund, and operate Technology as agreed upon.

43.     Alexander has performed all of his material obligations under the agreement.

44.     Ulrich has breached his material obligations under the agreement as described above.

45.     Ulrich's failures constitute a breach of his duty of good faith and fair dealing.

46.     Ulrich's conduct was and is intentional, purposeful, and in direct violation of the terms of the agreement, and as a result, his conduct has injured Alexander's right to receive the benefits of the agreement.

47.     Ulrich's conduct has impeded the performance of Alexander's obligations or made it difficult or impossible for Alexander to continue performance while Ulrich takes advantage of any non-performance he has caused.

48.     As a direct and proximate result of Ulrich's breach of the covenant of good faith and fair dealing, Alexander has suffered and will continue to suffer damages in an amount to be proven at trial, plus applicable interest, late fees, and costs of collection.

**FOURTH CAUSE OF ACTION**
**(Unjust Enrichment—Ulrich and Solutions)**

49.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above.

50.     Upon information and belief, Ulrich has fraudulently invoiced Solutions and/or himself for various Technology "expenses."  Moreover, Ulrich has used Technology's funds for personal expenses.

51.     Thus, Technology and Alexander conferred significant benefits on Ulrich and/or Solutions.

52.     Ulrich and/or Solutions knowingly accepted these benefits.

53.     Ulrich and/or Solutions will be unjustly enriched if they are allowed to retain the unauthorized benefits bestowed upon them by an unknowing Technology and Alexander.

54.     As a direct and proximate result of Ulrich's and/or Solutions' unjust enrichment at Technology's and Alexander's expense, Technology and Alexander have suffered damages in an amount to be proven at trial, plus applicable interest, late fees, and costs of collection.

## <u>FIFTH CAUSE OF ACTION</u>
**(Intentional Interference with Economic Relations—Ulrich and Innovations)**

55.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above.

56.     Technology has a contractual relationship with Feracode for the development of the CRM Platform.

57.     Ulrich and Innovations knew about the existing contractual relationship between Technology and Feracode.

58.     Ulrich's and Innovations' intentional actions were by improper means – their misappropriation, dishonesty, and deceit described above – and interfered with Technology's contractual relationship with Feracode, including but not limited to Technology's rights in the CRM Platform and Feracode's development services.

59.     Ulrich's and Innovations' interference was wrongful and/or illegal.

60.     Technology's contractual relationship with Feracode—and its CRM Platform and intellectual property—was damaged and diluted by Ulrich's and Innovations' interference.

61.     As a direct and proximate result of Ulrich's and Innovations' intentional interference, Technology has suffered damages in an amount to be proven at trial, plus applicable interest, late fees, and costs of collection.

## SIXTH CAUSE OF ACTION
### (False Advertising and False Designation of Origin 15 U.S.C. § 1125(a)(1)(B)) (Ulrich and Innovations)

62.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above.

63.     Upon information and belief, Ulrich's and Innovations' advertisement and promotion of Innovations' business and CRM Platform, using descriptions and images that pertain solely to Technology's CRM Platform and/or Solutions' old private placement memorandum, constitutes misrepresentation of the nature, characteristics, and qualities of Innovations' products, services, and commercial activities.

64.     Technology has invested substantial effort and resources to develop the CRM Platform.  Technology is harmed by the false advertising of Innovations' misappropriated products and services in the form of lost sales and dilution of Technology's brand and technology.

65.     Ulrich's and Innovations' advertising of Innovations' products and services is false and misleading because the description of the CRM Platform, intellectual property, products, and services falsely implies that Innovations is the owner and operator of the CRM Platform and related intellectual property that is actually associated with Technology.

66.     Ulrich's and Innovations' acts, alleged herein, constitute false advertising and false designation of origin in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

67.     By reason of Ulrich's and Innovations' actions, Technology has suffered irreparable harm to its reputation and business.  Technology has been and, unless Ulrich and Innovations are preliminarily and permanently restrained from their actions, will continue to be irreparably harmed.  Plaintiffs therefore seek a preliminary and permanent injunction to restrain the advertisement, sale, and/or promotion of Innovations' purported products and services.

68.     As a direct and proximate result of Ulrich's and Innovations' conduct, Technology has suffered and will continue to suffer damages in an amount to be proved at trial.

69.     Technology further seeks damages in the form of disgorgement of all revenue Ulrich and Innovations have received from the advertisement, sale, or promotion of products and services wholly owned by Technology and related to its CRM Platform.

### SEVENTH CAUSE OF ACTION
**(Unfair Competition 15 U.S.C. § 1125(a)(1)(A))**
**(Ulrich and Innovations)**

70.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above.

71.     Ulrich's and Innovations' use in commerce of Technology's CRM Platform and intellectual property, or a confusingly similar variation thereof, and other materials identified herein in connection with Innovations' advertising, marketing, and sale of products and services, as alleged herein, is likely to cause confusion, to cause mistake, or to deceive consumers as to the source, origin, affiliation, connection, or association of Innovations' products, and is likely to

cause consumers to mistakenly believe that Innovations' products have been authorized, sponsored, approved, endorsed, or licensed by Technology, or that Innovations is in some way affiliated with Technology or its wholly-owned CRM Platform.

72.    Ulrich's and Innovations' acts, alleged herein, constitute unfair competition in violation of Section 43(a)(1)(A) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(A).

73.    By reason of Ulrich's and Innovations' actions, Technology suffered irreparable harm to its valuable intellectual property and CRM Platform.  Technology has been and, unless Ulrich and Innovations are preliminarily and permanently restrained from their actions, will continue to be irreparably harmed.

74.    As a direct and proximate result of Ulrich's and Innovations' conduct, Technology has suffered and will continue to suffer damages in an amount to be proved at trial.

### EIGHTH CAUSE OF ACTION
**(Deceptive Trade Practices Utah Code Ann. § 13-11a-3(1)(b), (c) and (e))**
**(Ulrich and Innovations)**

75.    Plaintiffs incorporate by reference the allegations contained in the paragraphs above.

76.    Ulrich's and Innovations' advertisement, marketing, and/or promotion of Innovations' products and services using descriptions that pertain solely to the CRM Platform and Technology's intellectual property, products, and services constitutes misrepresentation of the characteristics, benefits, and qualities of Technology's products and services.

77.    Ulrich's and Innovations'  representations regarding Innovations' products and services is likely to cause confusion or misunderstanding among consumers as to the source, sponsorship, approval or certification of its products and services and as to Innovations'

13

affiliation, connection, or association with Technology and its CRM Platform and intellectual

property.

78.     Ulrich's and Innovations' conduct constitutes a violation of Sections 13-11a-

3(1)(b), (c) and (e) of the Utah Truth in Advertising Act, and Technology therefore asks that the

Court enjoin Defendants from continuance of the violation pursuant to Section 13-11a-4(2)(a).

79.     By reason of Ulrich's and Innovations' actions, Technology has suffered

irreparable harm to its valuable CRM Platform.

80.     Technology is entitled to recover its actual damages, costs, and attorneys' fees

incurred as a result of Ulrich's and Innovations' conduct in an amount to be ascertained at trial

or, if Technology elects, statutory damages in the amount of $2,000 pursuant to Section 13-11a-

4(2)(b) of the Utah Truth in Advertising Act.

### NINTH CAUSE OF ACTION
**(Declaratory Judgment)**
**(Ulrich and Solutions)**

81.     Plaintiffs incorporate by reference the allegations contained in the paragraphs

above.

82.     Based upon his representations of clear title and ownership, Ulrich transferred

Solutions' infant intellectual property to Technology.

83.     Recently, some previous shareholders in Solutions have disputed Ulrich's ability

to transfer the intellectual property to Technology.

84.     Thus, an actual controversy has arisen and now exists regarding the ownership

and control of Solutions' intellectual property that was transferred to Technology and the parties'

rights and obligations thereto.

85.     Technology asserts that Ulrich/Solutions transferred the intellectual property under clear title and Technology now wholly owns and controls the intellectual property, which is only a small component part of Technology's more sophisticated and superior CRM Platform developed in concert with Feracode.

86.     Technology seeks a declaration that: (a) Ulrich/Solutions transferred the intellectual property to Technology under clear title and (b) Technology wholly owns and controls the intellectual property.

## TENTH CAUSE OF ACTION
### (Equitable Accounting)
### (Ulrich)

87.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above.

88.     Based upon the above allegations, Plaintiffs seek a full accounting from Ulrich to determine the amounts that Technology and Innovations have received and spent.

89.     There does not appear to be an adequate remedy at law to uncover Ulrich's financial misdeeds and the transactions in this case appear to be complicated enough that only a court of equity can unravel them.

90.     Accordingly, Technology seeks an order requiring Ulrich to produce all original documentation for Technology and Innovations transactions, including but not limited to bank statements, checks, invoices, purchase orders, ledgers, balance sheets, income statements, and other related documents.

## ELEVENTH CAUSE OF ACTION
### (Conversion)
### (All Defendants)

91.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above.

92.     Defendants are willfully and intentionally interfering with Plaintiffs' property without lawful justification.

93.     Among other things, Defendants currently maintain possession of funds from Technology obtained through fraudulent payments or by other wrongful means.  Upon information and belief, Ulrich has fraudulently invoiced Solutions and/or himself for various Technology "expenses."  Moreover, Ulrich has used Technology's funds for personal expenses.

94.     As a legitimate owner of the funds but for Defendants' fraud and conversion, Plaintiffs are entitled to immediate possession of its property and has therefore been deprived of possession by Defendants.

95.     As a direct and proximate result of Defendants' conversion of Plaintiffs' property, Plaintiffs have suffered damages in an amount to be proven at trial, plus applicable interest, late fees, and costs of collection.

## TWELFTH CAUSE OF ACTION
### (Misappropriation of Trade Secrets)
### (All Defendants)

96.     Plaintiffs incorporate by reference the allegations contained in the paragraphs above.

97.     Defendants had access to information contained in Technology's confidential and proprietary processes, including but not limited to its Feracode Agreement, intellectual property,

CRM platform, customer and vendor lists, local official contact lists, designs, and other strategies and processes, among other information.  All of this information is confidential and proprietary and meets the definition of a protectable trade secret under Utah's Uniform Trade Secret Act as set forth in Utah Code Ann. § 13-24-2 and as recognized at common law.

98.     The information contained in Technology's above trade secrets and proprietary processes, as well as its other confidential information, is the subject of reasonable efforts by Technology to maintain the information as confidential.  Technology derives economic value from its above trade secrets and proprietary processes, as well as its other confidential information, and because the information is not generally known or readily ascertainable by proper means.

99.     As more fully set forth above, and on information and belief, the conduct of Defendants constitutes an actual and continuing misappropriation of Technology's trade secrets by virtue of the disclosure and use of such trade secrets with actual knowledge that the trade secrets had been acquired under circumstances giving rise to a duty to maintain the secrecy of such trade secrets.

100.     Defendants have acquired Technology's trade secrets through improper means.

101.     Upon information and belief, Defendants have utilized and disclosed Technology's trade secrets to other persons or entities without the express or implied consent of Technology.

102.     Technology is entitled to the issuance of a Temporary Restraining Order and an Order of Preliminary and Permanent Injunction enjoining Defendants, and any person or company associated with them, or to whom they have disclosed such trade secrets, from their

further disclosure and use of such trade secrets.  Technology is entitled to have such injunction

continue until such time as Lantern Fest's trade secrets cease to exist, in order to prevent

Defendants from obtaining a commercial advantage derived from the misappropriation and use

of Technology's trade secrets.

103.    Technology is further entitled to recover damages for Defendants'

misappropriation of trade secrets and violations of the Uniform Trade Secret Act, including any

actual losses caused, any unjust enrichment, and for punitive damages in an amount equal to

twice the award of any actual damages caused by Defendants' misappropriation.  Such damages

will be proven at trial.

104.    Pursuant to Utah Code Ann. § 13-24-5, Technology is also entitled to an award of

reasonable attorneys' fees and costs incurred in prosecuting this claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request the following relief.

1.    That Ulrich and Innovations, their affiliates, officers, directors, agents,

representatives, attorneys, and all persons acting or claiming to act on their behalf or under their

direction or authority, and all persons acting in concert or participation therewith, be

preliminarily and permanently enjoined from:

(i)    misappropriating Technology's intellectual property and CRM Platform;

interfering with Technology's Feracode contract and prospective

customers; misrepresenting their ownership of Technology's intellectual

property, CRM Platform, business tool suite, and database to investors,

customers, or other third parties; and

(ii)    using Technology's CRM Platform and intellectual property, or any confusingly similar imitation thereof in connection with the advertisement, marketing, and sale of any products or services offered by Ulrich and/or Innovations;

(iii)    performing any act, making any statement, or distributing any materials that are likely to lead members of the public to believe that any products or services advertised, marketed, or sold by Ulrich and/or Innovations are associated or connected with Technology, or are sold, licensed, sponsored, approved, or authorized by Technology, or provide services that are the equivalent of the CRM Platform or any products or services offered by Technology;

(iv)    reproducing, displaying, distributing, or creating derivative works from any code, text, graphics, photographs, videos, or other materials owned by or emanating from Technology or concerning the CRM Platform and the products and services related thereto;

(v)    referring to the Technology's CRM Platform, products, and services in any way in connection with the promotion of any products or services by Ulrich and Innovations, including in any code, texts, graphics, photographs, videos, or any other materials; and

(vi)    otherwise taking any action likely to cause public confusion, mistake, or deception as to the connection, affiliation, sponsorship, approval, or other

association of Ulrich's and Innovations' products or services with

Technology or its CRM Platform and related products or services;

2.       For an order awarding damages pursuant to 15 U.S.C. § 1117 and Utah Code

Ann. § 13-11a-4(2)(b), including but not limited to Defendants' profits associated with their

advertising, marketing, or sale of Innovations' products or services identified herein,

Technology's and Alexander's damages and costs, and, if Plaintiffs elect, statutory damages.

3.       For an order directing Ulrich to provide a full written accounting of all

transactions—including supporting documents—for purchases, expenses, and/or investments

related to Technology and Innovations.

4.       For an order requiring Ulrich and Innovations to issue corrective advertising to

Feracode and all customers, potential customers, and other recipients of its prior false advertising

in a form and manner directed by the Court.

5.       For an order directing Ulrich and Innovations to file with this Court and serve

upon Plaintiffs' counsel within thirty days after entry of such judgment, a written report under

oath, setting forth in detail the manner and form in which it has complied with such judgment.

6.       For an award of Technology's costs and disbursements incurred in this action.

7.       For an order awarding attorneys' fees for violation of the Lanham Act, the Utah

Truth in Advertising Act, or as otherwise allowed by law or equity.

8.       On Plaintiffs' Second Claim for Relief, Breach of Contract, for an award of

damages in an amount to be proven at trial, plus attorneys' fees, costs and after-accruing interest.

9.      On Plaintiffs' Claim for Relief, Breach of Covenant of Good Faith and Fair Dealing, for an award of damages in an amount to be proven at trial, plus attorneys' fees, costs and after-accruing interest.

10.      On Plaintiffs' Third Claim for Relief, Unjust Enrichment, for an award of damages in an amount to be proven at trial, plus attorneys' fees, costs and after-accruing interest.

11.      On Plaintiffs' Fourth Claim for Relief, Intentional Interference with Economic Relations, for an award of damages in an amount to be proven at trial, plus attorneys' fees, costs and after-accruing interest.

12.      On Plaintiffs' Ninth Claim for Relief, Declaratory Judgment, for a declaration that: (a) Ulrich/Solutions transferred the intellectual property to Technology under clear title and (b) Technology wholly owns and controls the intellectual property at issue.

13.      On Plaintiffs' Tenth Claim for Relief, Equitable Accounting, for an order requiring Ulrich to produce all original documentation for Technology and Innovations transactions, including but not limited to bank statements, checks, invoices, purchase orders, ledgers, balance sheets, income statements, and other related documents.

14.      On Plaintiffs' Eleventh Claim for Relief, Conversion, for an award of damages in an amount to be proven at trial, plus attorneys' fees, costs and after-accruing interest.

15.      On Plaintiffs' Twelfth Claim for Relief, Misappropriation of Trade Secrets, for an award of damages in an amount to be proven at trial, including any actual losses caused, any unjust enrichment, and for punitive damages in an amount equal to twice the award of any actual damages caused by Defendants' misappropriation.

16.      An award of general damages in an amount to be proven at trial.

17.     An award of attorneys' fees and costs incurred in bringing this action as permitted by contract and law.

18.     For such other and further relief as the Court deems just and proper.

Plaintiffs' damages are such to qualify for at least tier 3 pursuant to Utah Rule of Civil Procedure 26(c)(3).

DATED this 28th day of January, 2019.

HOLLAND & HART LLP

/s/ Darren G. Reid
Darren G. Reid
Brandon T. Christensen
*Attorneys for Plaintiff*

**Plaintiff's Address:**

C/O HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, UT  84101

11528267_1