```
 1                  IN THE UNITED STATES DISTRICT COURT

 2              FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

 3


 4

     SMASH TECHNOLOGY, LLC, a      )
 5   Nevada limited liability      )
     company; and MICHAEL          )
 6   ALEXANDER, an individual;     )
                                   )
 7           Plaintiffs,           )
                                   )  Case No:  2:19cv00105
 8        vs.                      )
                                   )
 9   SMASH SOLUTIONS, LLC, a       )
     Delaware limited liability   )
10   company; JERRY "J.J."         )
     ULRICH, an individual; and
11   JOHN DOES 1-3;

12           Defendants,
     _____
13

14

15

16

17

18
                    BEFORE THE HONORABLE TENA CAMPBELL
19
                            March 22, 2019
20
                          STATUS CONFERENCE
21

22

23

                              Reported by:
24                    KELLY BROWN HICKEN, RPR, RMR
                              801-521-7238
25
```

```
 1                        APPEARANCES OF COUNSEL
 2    FOR THE PLAINTIFF:           HOLLAND & HART
 3                                 BY:  DARREN G. REID
 4                                      Attorney at Law
 5                                 222 S. MAIN STREET, SUITE 2200
 6                                 SALT LAKE CITY, UTAH  84101
 7
 8    FOR THE DEFENDANTS:          RICHARDS BRANDT MILLER NELSON
 9                                 BY:  MATTHEW C. BARNECK
10                                      ZACHARY E. PETERSON
11                                      Attorneys at Law
12                                 299 S MAIN ST, 15TH FL
13                                 SALT LAKE CITY, UTAH  84110
14
15
16
17
18
19
20
21
22
23
24
25
```

```
 1            SALT LAKE CITY, UTAH, FRIDAY, MARCH 22, 2019
 2                         *  *  *  *  *
 3            THE COURT:  Sorry I'm late.  A bit of a
 4   malfunction, which I'm not well equipped to deal with.  But I
 5   hope the wait hasn't been that bad.  We are here in
 6   Smash Technology and others vs. Smash Solutions for a status
 7   conference.  Mr. Reid is here.
 8            MR. REID:  Yes, Your Honor.  Darren Reid on behalf
 9   of plaintiffs.
10            THE COURT:  And Mr. Barneck?
11            MR. BARNECK:  Yes, Your Honor.
12            THE COURT:  Am I saying that right?
13            MR. BARNECK:  That's correct.
14            THE COURT:  And Mr. Peterson.
15            MR. PETERSON:  Yes, Your Honor.
16            THE COURT:  Okay.  We delayed this or I put it -- I
17   continued it when Mr. Ulrich became seriously ill.  What's the
18   status of his health now?
19            MR. BARNECK:  Your Honor, he's recovering.
20            THE COURT:  Good.
21            MR. BARNECK:  Just to maybe back up and repeat a
22   bit, about two days after we were retained he had some
23   emergency surgery.  He had a foot amputated and had all of his
24   teeth removed because of a serious infection in his body that
25   was traveling.
```

3

| | |
|---|---|
| 1 | THE COURT: Good grief. |
| 2 | MR. BARNECK: Yeah. Very drastic. He is now out |
| 3 | of the hospital, and I'd say he's able to function on a |
| 4 | limited basis. He's doing some work. But he is still in a |
| 09:31:16  5 | wheelchair. He's not cleared to walk yet. He does not yet |
| 6 | have his upper teeth because of swelling in the jaw. He is |
| 7 | expecting to have at least two more surgeries. He's not sure |
| 8 | when, one to insert the upper teeth and one to do some more |
| 9 | work on the leg where the amputation took place. |
| 09:31:39 10 | THE COURT: It makes you kind of realize that |
| 11 | malfunctioning garage doors are minor business. |
| 12 | MR. BARNECK: Yeah. I'll say things can change |
| 13 | quickly. |
| 14 | And if I can just add a little bit by way of |
| 09:31:55 15 | update. |
| 16 | THE COURT: Please. |
| 17 | MR. BARNECK: We have really a team of three people |
| 18 | that we have been reporting to at Smash Solutions, and |
| 19 | Mr. Ulrich is one, and he's named as a individual defendant. |
| 09:32:07 20 | The other two are Sam Potter and Kevin Kern. And so while |
| 21 | Jerry Ulrich has been out of commission he's been relying upon |
| 22 | Sam and Kevin. |
| 23 | Tuesday evening this week Sam's wife died. And we |
| 24 | don't know anything more than that. We don't know if it was |
| 09:32:30 25 | expected. We don't know about memorial services or when that |

1    will happen, when he will be back to work.  But of the three
2    there's only one who's functioning at a full level right now.
3                THE COURT:  And if I were he I would just shut
4    myself up at my house.
09:32:46  5                MR. BARNECK:  Exactly.  I can't imagine what that
6    would do to me.
7                The problem that we've had really is the timing of
8    when these, they're serious and they would cause some delay.
9    But it was literally two days after we were retained when
09:33:02 10    Jerry's emergency surgeries took place.  So if circumstances
11    like that had come once the case was underway and we had
12    information in our hands I think we would be able to handle it
13    a little bit better, but it's just thrown us.  So we have
14    really not been able to gather the kind of information we need
09:33:19 15    for the case.
16                But that's an update on the status of things.  And
17    it's not good, but it's at least for Mr. Ulrich's part it's
18    improving.
19                THE COURT:  Well, what are we going to do?
09:33:34 20    Mr. Reid, you've got a case that you want to continue.
21                MR. REID:  We do, Your Honor.  We're ready to move
22    the case forward.
23                THE COURT:  Sure.
24                MR. REID:  And we really need the defendants to
09:33:43 25    respond to the complaint.  Just by way of recap, we filed our

5

1    complaint and our motion for TRO in state court on
2    January 28th.  Just before our scheduled state court hearing
3    defendants filed a notice to remove.  On February 26th we held
4    our status conference before Your Honor, wherein we provided
5    this additional time.
6            The Court ordered our motion for TRO moot after
7    that hearing and urged the parties to communicate and attempt
8    to reach an agreement that would preserve the status quo or
9    possibly settle the case.  Unfortunately given the parties'
10   communications regarding preserving the status quo, it was
11   clear that the parties were not going to be able to reach a
12   meaningful agreement.
13           Accordingly, last week I sent a proposed scheduling
14   order to counsel, and what I'm proposing is that they respond
15   to the complaint by no later than April 5th, which would give
16   them an additional two weeks, and then we key off all of our
17   proposed scheduling dates from that date.
18           Fortunately we do understand that Mr. Ulrich's
19   health is improving.  This last week he sent my client a
20   number of lengthy e-mails discussing this case, so it appears
21   that he's able to participate in discussions and have
22   meaningful participation that way.
23           So we would propose an additional two weeks, which
24   obviously, you know, puts us out almost three months from the
25   time we filed.  We think that's reasonable.  We think they can

6

```
                1    get something on file, and we can begin in earnest.  What
                2    we're really intending on doing is doing some discovery before
                3    moving for injunctive relief.  And so we'd like to get to that
                4    business as soon as we can.  And obviously we've tried to be
     09:35:48   5    as accommodating as possible.  We certainly understand the
                6    seriousness of the issues that the defendants have been
                7    dealing with.  So that's where we're at.
                8             THE COURT:  Okay.  Mr. Barneck, what does everybody
                9    think in view of what's happening here?
     09:36:04  10             MR. BARNECK:  We think -- I think for our part,
               11    Your Honor, we could use some help with the upfront deadlines
               12    we haven't been able to agree upon, and other than that I
               13    think we can agree to the rest.
               14             THE COURT:  What do you mean the upfront?  The
     09:36:18  15    answer to the complaint?
               16             MR. BARNECK:  The answer, yes.  We're hoping for
               17    another four to six weeks.  And the reason for that is because
               18    we think there are some counterclaims that ought to be
               19    included.  If it were just answering the complaint we can do
     09:36:30  20    that by April 5th.  That's not hard.  But we don't have the
               21    information yet to evaluate whether there are counterclaims,
               22    and if so to plead them appropriately, and we would need some
               23    more time for that.  And then if we could have another three
               24    weeks beyond whatever that deadline is for the exchange of
     09:36:52  25    initial disclosures then I think the other dates and deadlines
```

1    in the scheduling order we could probably agree upon and
2    submit to the Court.
3              THE COURT:  What do you think about that?
4              MR. REID:  Your Honor, we have serious problems
5    with that.
6              THE COURT:  What's that?
7              MR. REID:  First of all, this idea that they need
8    an additional six weeks to prepare for a counterclaim, we
9    filed our claim in January.  They've had months to consider
10   potential possibilities in response to that.
11             THE COURT:  But you've heard it hasn't exactly been
12   a normal period of time.
13             MR. REID:  Understood. And we think that the court
14   has accommodated defendant's appropriately to this date.  But
15   here's where we're at.  One of the core issues in this case is
16   that defendants continue to develop a software system that we
17   believe that we have ownership and rights in.  And so what we
18   believe is happening is that the defendants are hoping to use
19   this time to continue to delay having to participate
20   substantively in this case so they can continue on down the
21   road to get that to a place where it may be irreversible for
22   us to assert our rights.
23             THE COURT:  Why would it be irreversible?
24             MR. REID:  Well, because they may get it to a point
25   where they're able to launch it and get it to market, and

```
               1    pretty soon you've gone to a place where it's very difficult
               2    for us to reverse all of those activities including profits,
               3    investors investing in this product that we actually claim
               4    rights in.  You know, there's extensive history here.  And so
   09:38:36    5    this idea that we're now going to be pushing an answer to our
               6    complaint to May --
               7              THE COURT:  Okay.  I see your point.  What's the
               8    date that you were --
               9              MR. REID:  We're proposing by April 5th that they
   09:38:51   10    respond to the complaint.  That includes --
              11              THE COURT:  How about April 12th?
              12              MR. REID:  We'll deal with that.
              13              THE COURT:  April 12th?
              14              MR. BARNECK:  We'll do our best, Your Honor.
   09:39:00   15              THE COURT:  Okay.  April 12th.  And then as I
              16    understand, once that date is set you'll be able to launch off
              17    of that April 12th date with other scheduling dates.  Am I
              18    right?
              19              MR. REID:  Yes, Your Honor.  That's what we would
   09:39:17   20    do.  And I will send a proposed scheduling order to counsel
              21    today so we can get something filed as soon as possible.
              22              THE COURT:  How do you feel about that?
              23              MR. BARNECK:  With one question.
              24              THE COURT:  Sure.
   09:39:28   25              MR. BARNECK:  During this past interim few weeks
```

9

|  |  |  |
|---|---|---|
|  | 1 | there have been at least one communication between |
|  | 2 | Mr. Alexander and Mr. Potter where we understood Mr. Alexander |
|  | 3 | to say that the plaintiffs are going to amend their complaint. |
|  | 4 | And if they're going to do that we prefer to see the amended |
| 09:39:48 | 5 | complaint first. |
|  | 6 | MR. REID:  We're not going to be amending our |
|  | 7 | complaint in this case.  We may be moving for other actions |
|  | 8 | elsewhere, but not in this case. |
|  | 9 | THE COURT:  Not in this case. |
| 09:39:57 | 10 | MR. REID:  Not in this case, not at this time. |
|  | 11 | Nope. |
|  | 12 | THE COURT:  Okay. |
|  | 13 | MR. BARNECK:  Okay. |
|  | 14 | THE COURT:  Okay.  Then what's understood, |
| 09:40:05 | 15 | defendant's answer due April 12th, proposed scheduling order |
|  | 16 | from there.  If you have problems with that -- do you have a |
|  | 17 | magistrate judge on this case? |
|  | 18 | THE CLERK:  We do not. |
|  | 19 | THE COURT:  We do not.  Maybe given the rather |
| 09:40:24 | 20 | troubled history here you might want to bring any problems to |
|  | 21 | me. |
|  | 22 | MR. BARNECK:  Okay. |
|  | 23 | THE COURT:  Okay? |
|  | 24 | MR. BARNECK:  All right. |
| 09:40:30 | 25 | MR. REID:  Thank you, Your Honor. |

```
 1              THE COURT:  All right.  And I'll memorialize this
 2   just in a docket industry.
 3              Can that work, Miss Ford?
 4              THE CLERK:  Yes, Judge.
 5              THE COURT:  Okay.  Anything else I can do?
 6              MR. BARNECK:  I don't think so.  Thank you, Your
 7   Honor.
 8              THE COURT:  All right.  And thanks, counsel.
 9              MR. REID:  Thank you.
10         (Whereupon, the court proceedings were concluded.)
11                          *  *  *  *  *
```

09:40:43 (line 5)
09:40:53 (line 10)

```
1    STATE OF UTAH         )
2                          ) ss.
3    COUNTY OF SALT LAKE   )
4              I, KELLY BROWN HICKEN, do hereby certify that I am
5    a certified court reporter for the State of Utah;
6              That as such reporter, I attended the hearing of
7    the foregoing matter on [!DATE], and thereat reported in
8    Stenotype all of the testimony and proceedings had, and caused
9    said notes to be transcribed into typewriting; and the
10   foregoing pages number from ^  through 12 constitute a full,
11   true and correct report of the same.
12             That I am not of kin to any of the parties and have
13   no interest in the outcome of the matter;
14             And hereby set my hand and seal, this ____ day of
15   _____ 2007.
16
17
18
19
20                         _____
                                    KELLY BROWN HICKEN, CSR, RPR, RMR
21
22
23
24
25
```