MATTHEW C. BARNECK [5249]
ZACHARY E. PETERSON [8502]
KRISTINA H. RUEDAS [14306]
RICHARDS BRANDT MILLER NELSON
*Attorneys for Defendants*
Wells Fargo Center, 15th Floor
299 South Main Street
P.O. Box 2465
Salt Lake City, Utah  84110-2465
Email: matthew-barneck@rbmn.com
        zachary-peterson@rbmn.com
        kristina-ruedas@rbmn.com
Telephone: (801) 531-2000
Fax No.: (801) 532-5506

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SMASH TECHNOLOGY, LLC, a Nevada limited liability company; and MICHAEL ALEXANDER, an individual, | **DEFENDANTS' PARTIAL MOTION TO DISMISS** |
| Plaintiffs, | |
| vs. | |
| SMASH SOLUTIONS, LLC, a Delaware limited liability company; JERRY "J.J." ULRICH, an individual; and JOHN DOES 1-3, | Civil No. 2:19-cv-00105-TC |
| Defendants. | Judge Tena Campbell |

Defendants Smash Solutions, LLC ("**Solutions**") and Jerry Ulrich ("**Ulrich**"), by and through counsel, Matthew C. Barneck, Zachary E. Peterson, and Kristina H. Ruedas of the law firm RICHARDS BRANDT MILLER NELSON, hereby file this Motion to Dismiss pursuant to Rules

12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure.  The Motion seeks the dismissal of plaintiffs' 1ˢᵗ-3ʳᵈ and 5ᵗʰ-8ᵗʰ causes of action.

## Introduction

This action is a challenge to defendants' ownership of certain intellectual property (the "**IP**") that defendants are developing into commercially marketable software products (the "**Software**").  Plaintiffs' complaint sets forth a confusing recitation of facts without alleging details sufficient for defendants to understand the precise nature of the claims and to defend against them.  The complaint conflates Ulrich and Solutions and the allegations also contain internal inconsistencies that create further confusion.  For these reasons, defendants file this Motion to Dismiss and rely upon the facts alleged in plaintiffs' complaint to demonstrate why dismissal is warranted.

The IP that lies at the heart of this controversy is a tangible thing.  In the complaint, plaintiffs Michael Alexander ("**Alexander**") and Smash Technology, LLC ("**Technology**") allege ownership of the IP was transferred from Solutions to Technology, and that Technology is now the sole owner and in control of it.  (Compl., ¶¶12, 82, and 85.)  Defendants challenge the plaintiffs' claim of ownership.  Specifically, possessing an ownership interest in the IP is different from physically possessing and controlling it.  In contrast to the complaint, and according to plaintiffs' requested injunctive relief and their representations to this Court,[1] Technology does not have exclusive control of the IP, and it was never physically transferred to Technology.

---

[1]  At the hearing on March 22, 2019, plaintiffs argued that *defendants* have the IP and continue to develop the Software.  This circumstance is what plaintiffs used to argue that time was of the essence in moving the case forward.  (*See* Docket No. 23 – March 22, 2019 hearing transcript at pp. 8-9.)

Defendants also move to dismiss some causes of action for plaintiffs' failure to join Smash Innovations, LLC ("**Innovations**") as a required and indispensable party. Plaintiffs say Innovations is one of the entities represented by John Does 1-3 (Compl., ¶5) and direct allegations against it throughout the Complaint. Specifically, they claim Innovations has represented that it owns or operates the IP in which Technology claims ownership, and which plaintiffs refer to as the "CRM Platform." Plaintiffs ask the Court to award them various forms of relief against Innovations, including injunctive relief. Innovations is a required and indispensable party because the Court cannot accord relief among the existing parties without it, and a judgment rendered in its absence would not be adequate. Plaintiffs offer no explanation for why they did not include Innovations as a defendant.

For these reasons, defendants file this Motion to Dismiss and seek dismissal of the 1st, 2nd, 3rd, 5th, 6th, 7th, and 8th causes of action in plaintiffs' Complaint.

## Allegations in Complaint

Recited below are some of the plaintiffs' allegations, with paragraph numbers as they appear in the Complaint.

### A.    Development and Ownership of Intellectual Property.

16.    Though Solutions never fully developed CRM technology, Solutions developed limited templates and technical documents that could be used as a spring-board for Technology (with Feracode's expertise and services) to develop more sophisticated and superior CRM technology that was viable to market and was sustainable and scalable, including the use of current updated language and superior software code, among other things.

9.      In forming Technology, Alexander partnered with J.J. Ulrich, who was previously the majority shareholder in Smash Solutions. Alexander was also a shareholder in Solutions.

11.      Alexander's and Ulrich's Technology partnership intended to work as follows: first, Ulrich agreed to transfer clear title to Solutions' infant intellectual property to Technology, and second, Alexander agreed to fund Technology. Ulrich agreed to dissolve Smash Solutions and indemnify Alexander and Technology from any liability from Smash Solutions' creditors, investors, and employees. Ulrich was unable to provide any of the initial funding. Pursuant to this same agreement, Ulrich agreed to build his Bitclub Network business to produce adequate sales and production volume to maximize daily earnings from Tatiana Alexander's Uberfund and Centurion Bitclub Network. Ulrich has defaulted on his obligations relating to the Bitclub Network.

12.      Based upon his representations, Ulrich transferred Solutions' intellectual property to Technology and dissolved Smash Solutions. To date, Alexander has funded Technology with approximately $900,000.

82.      Based upon his representations of clear title and ownership, Ulrich transferred Solutions' infant intellectual property to Technology.

83.      Recently, some previous shareholders in Solutions have disputed Ulrich's ability to transfer the intellectual property to Technology.

84.      Thus, an actual controversy has arisen and now exists regarding the ownership and control of Solutions' intellectual property that was transferred to Technology and the parties' rights and obligations thereto.

85.     Technology asserts that Ulrich/Solutions transferred the intellectual property under clear title and Technology now wholly owns and controls the intellectual property, which is only a small component part of Technology's more sophisticated and superior CRM Platform developed in concert with Feracode.

86.     Technology seeks a declaration that: (a) Ulrich/Solutions transferred the intellectual property to Technology under clear title and (b) Technology wholly owns and controls the intellectual property.

**B.     <u>Allegations Regarding Breach of Contract</u>.**

1.     Plaintiff Smash Technology, LLC is a Nevada limited liability company doing business in Utah and with its principal place of business in Nevada.

8.     Michael Alexander is the sole member and manager of Technology.

11.     Alexander's and Ulrich's Technology partnership intended to work as follows: first, Ulrich agreed to transfer clear title to Solutions' infant intellectual property to Technology, and second, Alexander agreed to fund Technology. Ulrich agreed to dissolve Smash Solutions and indemnify Alexander and Technology from any liability from Smash Solutions' creditors, investors, and employees. Ulrich was unable to provide any of the initial funding. Pursuant to this same agreement, Ulrich agreed to build his Bitclub Network business to produce adequate sales and production volume to maximize daily earnings from Tatiana Alexander's Uberfund and Centurion Bitclub Network. Ulrich has defaulted on his obligations relating to the Bitclub Network.

12.     Based upon his representations, Ulrich transferred Solutions' intellectual property to Technology and dissolved Smash Solutions. To date, Alexander has funded Technology with approximately $900,000.

14.     As Technology's primary operator, Ulrich was tasked with a simple mandate: hire a Chief Technology Officer (Sam Potter) to run point with the outsourced development team building out the CRM Platform. Once this important task was completed, Technology would invest in hosting and server costs for the CRM Platform and other necessary operating expenses once ready to deploy the Alpha testing phase and become partially operational.

7.      Smash Technology has developed "customer relationship management" (CRM) technology that enhances businesses' ability to connect, develop, interact, and communicate with, and market to their customers and prospective contacts in a wide variety of ways, including by creating highly-detailed contact profiles and dashboard aggregating and updating data via public sources and databases to maximize communication, sales, marketing, social media, and various other activities. Technology's intellectual property and proprietary technology (the "**CRM Platform**") is wholly-owned by Technology.

18.     Technology's intellectual property, database, and CRM Platform is its most valuable asset. Technology intends to develop significant goodwill and a quality business reputation in the marketplace with its CRM Platform.

37.     Alexander and Ulrich entered into an agreement regarding the formation, funding, and operation of Technology.

38.     Alexander has performed all of his material obligations under the agreement.

39.     Ulrich has breached his material obligations under the agreement as described above.

40.     As a direct and proximate result of Ulrich's breach, Alexander has suffered and will continue to suffer damages in an amount to be proven at trial, plus applicable interest, late fees, and costs of collection.

**C.     Creation of Smash Innovations.**

4.     Defendant Jerry "J.J." Ulrich is an individual residing in Utah and upon information and belief is an owner, principal, agent, and/or employee of John Does 1-3, collectively called herein Smash Innovations or "Innovations."

5.     John Does 1-3 are as yet unknown entities – possibly Utah or Wyoming corporations or DBAs wherein Ulrich is attempting to operate as Smash Innovations.

23.     Upon information and belief, Alexander has recently discovered that Ulrich has formed a new entity or entities—John Does 1-3 and referred to herein as Smash Innovations— for the purpose of misappropriating Technology's intellectual property and CRM Platform, hijacking Technology's development relationship with Feracode, and soliciting new investors and customers outside of Technology.

24.     Ulrich recently locked Alexander out of chatroom discussions with Feracode, presumably to supplant Technology with his newly-formed enterprise Innovations and to redirect Feracode's development efforts to support his misappropriation of the CRM Platform. Upon information and belief, Ulrich is working with and/or directing Feracode to circumvent its contractual obligations with Technology and to divert the CRM Platform and related intellectual property to Innovations.

26.     Upon information and belief, Ulrich has removed access to Technology's website and is directing investors or customers to the old Solutions website or new Innovations websites.

### Rule 12(b)(6) Standard

When reviewing a motion to dismiss under Rule 12(b)(6) the Court must accept as true the well-pleaded facts stated in the Complaint, but is not required to accept or consider conclusory allegations. *Tal v. Hogan, et al.*, 453 F.3d 1244, 1252 (10th Cir. 2006), *cert. denied*, 549 U.S. 1209 (2007). Conclusory allegations are those that "do not allege the factual basis" for the claim. *Brown v. Zavaras, et al.*, 63 F.3d 967, 972 (10th Cir. 1995); *see also Hall v. Bellmon, et al.*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based"). The Court "is not bound by a complaint's legal conclusions … couched as facts." *United States ex. rel. Barrick v. Parker-Migliorini International, LLC, et al.*, 188 F. Supp.3d 1231, 1236 (D. Utah 2016) (*citing Bell Atlantic Corp., et al. v. Twombly, et al.*, 550 U.S. 544, 555 (2007)).

### Rule 12(b)(7) Standards

Rule 12(b)(7) provides for the dismissal of claims based on a plaintiff's failure to join a required and indispensable party. *See* Fed. R. Civ. P. 12(b)(7). Rule 19 provides a three-step process for determining whether an action should be dismissed for failure to join a purportedly indispensable party. *Citizen Potawatomi Nation v. Norton, et al.*, 248 F.3d 993, 997 (10th Cir. 2001).

First, the court must determine whether the absent party is necessary (required).  *Id.*  Rule 19(a)(1) states that a party is "required" or "necessary"[2] and must be joined as a party in an action if:

> (A)   in that person's absence, the court cannot accord complete relief among existing parties; or
>
> (B)   that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>
>> (i)   as a practical matter impair or impede the person's ability to protect the interest; or
>>
>> (ii)   leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

In *Citizen Potawatomi*, the Tenth Circuit held that if the absent parties can claim an interest in the matter before the court – there, the application of federal funding – the existing parties cannot adequately represent their interests and the absent parties are "necessary" ("required").  248 F.3d at 999.  Therefore, disposing of the action in the absence of such a party may "impair or impede [its] ability to protect [its] interest …."  Fed. R. Civ. P. 19(a)(1)(B)(i).

Second, if a party is "required" but has not been joined, the court must then determine whether joinder is "feasible."  *Citizen Potawatomi*, 248 F.3d at 997.

Third, "if joinder is not feasible, the court must decide whether the absent person is 'indispensable,' i.e., whether in 'equity and good conscience' the action can continue in his absence."  *Id.*  The factors to consider in deciding indispensability include:

---

[2]  "[T]he Rule no longer describes such parties as "'necessary,'" although "'necessary party' is a term of art whose meaning parallels Rule 19(a)'s requirements."  *Orff, et al. v. United States, et al.*, 545 U.S. 596, 602-03 (2005).

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

    (A) protective provisions in the judgment;

    (B) shaping the relief; or

    (C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).  The first factor in Rule 19(b) is essentially the same as the inquiry under Rule 19(a) of whether continuing the action without a person will, as a practical matter, impair that person's ability to protect his interest relating to the subject of the lawsuit.  *See Northern Arapaho Tribe v. Harnsberger, et al.*, 697 F.3d 1272, 1282 (10th Cir. 2012).  The second and fourth factors are straightforward in their interpretation.

The third factor is "not intended to address the adequacy of the judgment from the plaintiff's point of view."  *Northern Arapaho Tribe*, 697 F.3d at 1283 (internal citations omitted). Rather, it is intended to address the adequacy of the dispute's resolution.  *See id.* (internal citations omitted).  This factor is concerned with "the interest of the courts and the public in complete, consistent and efficient settlement of controversies."  *Id.* (internal citations omitted).

## Argument

## I.    Plaintiffs' Request for Injunctive Relief (1st Cause of Action).

The Court should dismiss Plaintiffs' first cause of action for failure to join Innovations as a required and indispensable party.  Plaintiffs seek injunctive relief against "Ulrich *and*

*Innovations*" for "acting in concert" to "misappropriate[] Technology's CRM Platform, hi-jack[] Technology's development relationship with Feracode, and solicit[] new investors and customers outside of Technology." (Compl., ¶29 (emphasis added).)  Plaintiffs allege that Ulrich's *and Innovations'* conduct has caused Technology to suffer immediate and irreparable harm. (*See id.* ¶31 (emphasis added).)  Based on these allegations, Plaintiffs seek an order permanently restraining Ulrich *and Innovations* from various actions. (*See id.* ¶35 (emphasis added).)

Apart from the fact that injunctive relief is not an independent cause of action, Innovations is a required party to any injunctive relief the plaintiffs may seek.  Innovations cannot be the subject of an injunction if it is not joined as a party defendant.  The Court cannot accord complete relief among the parties if Ulrich's alleged wrongful conduct is taking place through Innovations.  Further, disposing of plaintiffs' claims in Innovations' absence would impede Innovations' ability to protect its interests in the CRM Platform.

Rule 19(c) requires a party to specifically identify all of the parties that should have been joined pursuant to Rule 19(a) but were not joined, setting forth the specific reasons for their non-joinder.  Fed R. Civ. P. 19(c).  Plaintiffs did nothing in their Complaint to comply with Rule 19(c), and do not set forth any reason why Innovations was not joined in this action.  Plaintiffs identified John Does 1-3 as either Utah or Wyoming corporations operating as Innovations. (*See* Compl., ¶5.)  It is a matter of public record that Innovations is a Wyoming limited liability company and registered to do business in Utah.  Plaintiffs also reference Innovations' publicly available website. (*See id.*, ¶¶26, 63-65.)  Plaintiffs have failed to show it was not feasible to join Innovations in this action.

Should the Court find that joinder is not feasible, it should rule that Innovations is an indispensable party. Continuing this action without Innovations as a party will impair its ability to protect its interest in the Software, the brand, and the IP at issue in the case, and will unfairly prejudice Innovations and its customers and investors. A resolution of Plaintiffs' claims that does not involve Innovations will not yield a "complete, consistent and efficient" settlement of this controversy. *Northern Arapaho Tribe*, 697 F.3d at 1283.

## II.      Breach of Contract, Breach of Covenant of Good Faith and Fair Dealing (2nd and 3rd Causes of Action).

The complaint fails to state a claim for breach of contract because it does not allege the terms of the contract with sufficient specificity to notify defendants of those terms and which ones were breached. The only allegations made in support of the breach of contract claim are paragraphs 11-12 and 36-40. These paragraphs do not set forth each element of a claim for breach of contract or connect the alleged facts with the elements of the claim.

Rule 8 instructs as follows: "A pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled to relief ...." FED. R. CIV. P. 8(a)(2). To meet this pleading requirement a plaintiff must "connect assertions with elements of [the claim alleged]." *Glenn v. First Nat. Bank in Grand Junction*, 868 F.2d 368, 371 (10th Cir. 1989). The court should not have to "search through the several paragraphs of the plaintiffs' 'Introductory Allegations' and attempt to match the factual assertions with the elements of [a claim] to determine if the complaint states a claim for relief." *Id.* Neither should a defendant have to "'piece' together the plaintiffs' complaint." *Id.*

The failure to plead a defendant's culpable actions and connect them to the elements of a claim is grounds for dismissal. *See, e.g., Glenn*, 868 F.2d at 371-72 (affirming dismissal where

"Plaintiffs have failed to state the facts that support the elements of their RICO claim within … their First Claim for Relief"); *Hart v. Salois, et al.*, 605 Fed. Appx. 694, 701 (10th Cir. 2015) (unpublished) ("the culprit is [Plaintiff's] failure to connect his … claims to the … factual allegations"). In *Hart*, the district court dismissed the plaintiff's complaint for failing to plead in accordance with Rule 8. *Hart,* 605 Fed. Appx. at 700-01. The court "pointed to the considerable length of the Complaint; the 'very convoluted and complicated set of facts' alleged, ... and [the plaintiff's] numerous collective allegations against the defendants that failed to clarify which acts the individual defendants were alleged to have committed to give rise to the various claims against them." *Id.* On appeal, plaintiff argued "his Complaint provided fair notice of the specific allegations against each defendant" and that "taken as a whole, his Complaint entitled him to relief." The Tenth Circuit Court upheld the dismissal:

> It is not the sheer length of his filing, the number of paragraphs, or the number of claims, that triggers the Rule 8 violation. Rather, <u>the culprit is [Plaintiff's] failure to connect his 60 separate claims to the Complaint's hundreds of factual allegations</u>. Moreover, [Plaintiff's] multiple collective allegations against the defendants and <u>his corresponding failure to identify each individual defendant's culpable actions</u> only exacerbated this significant deficiency.

*Id.* (emphasis added).

To sustain a claim for breach of contract under Utah law, plaintiffs bear the burden to prove the following elements: (1) a contract; (2) performance under the contract; (3) breach of the contract by defendant(s); and (4) damages. "A breach of express contract claim arises out of the express terms of the contract, and the breach [must be] proven in relation to those terms." *Global Fitness Holdings, LLC v. Federal Recovery Acceptance, Inc.*, 127 F. Supp. 3d 1176, 1187 (D. Utah 2015) (setting forth elements of breach of contract claim under Utah law) (citation

omitted); *see also Beus Gilbert PLLC v. Brigham Young University*, 2019 WL 528303, Civ. No.

2:12-cv-00970-RJS, *7 (D. Utah 2019) (discussing sufficiency of allegations to establish the

existence of a contract and holding complaint failed to state a claim for breach of contract).

The complaint does not allege the terms of the contract in sufficient detail to give

defendants adequate notice of the claim or to allow this Court to enforce the alleged contract.

Paragraph 11 is the only part of the complaint which purports to identify the terms of the

contract, and it suggests that the terms of the agreement are as follows: (1) Ulrich agreed to

transfer title to Solutions' intellectual property to Technology, (2) Alexander agreed to fund

Technology, (3) Ulrich agreed to dissolve Solutions and to indemnify Alexander and Technology

from Solutions' creditors, and (4) Ulrich agreed to build his Bitclub Network from Tatiana

Alexander's Uberfund and Centurion Bitclub Network.  Finally, it alleges that Ulrich defaulted

on his obligation under this fourth term to build a Bitclub Network.

In conclusory fashion, the complaint later alleges that Alexander and Ulrich entered into

an agreement "regarding the formation, funding, and operation of Technology."  The complaint

asserts that Alexander performed his obligations and Ulrich breached his obligations.  (Compl.,

¶¶38-39.)  It does not specify what Alexander did to perform his obligations or which terms

Ulrich breached.  It does not identify how Alexander has suffered damages.  Defendants are left

to guess at the terms of the agreement and which of the undefined terms were allegedly

breached.

The few terms identified in the complaint reveal flaws and inconsistencies with the

plaintiffs' breach of contract claim, starting with the first alleged term that Ulrich agreed to

transfer Solutions' intellectual property to Technology.  Plaintiffs' complaint fails to state a

claim for breach of contract that would allow this Court to grant the relief sought because it fails to allege that Solutions was a party to a contract that would legally obligate it to sell or transfer the IP to Technology.  "A cause of action for breach of contract may only be asserted against a party to the contract itself." *Horman v. Gordon,* 740 P.2d 1346, 1351 (Utah Ct. App.1987).  The complaint does not allege that Solutions – the original owner of the IP – was a party to the contract.  Rather, it alleges Ulrich was the contracting party.  Therefore, the complaint fails to state a claim for breach of contract because Ulrich had no ability, acting on his own, to perform the first term of the alleged contract.  He could only do so while acting on behalf of Solutions.

Furthermore, on this point plaintiffs make conflicting allegations.  Most of the relief sought in the complaint is dependent upon the premise that Technology already owns and possesses the IP.  And plaintiffs allege that, in accordance with his representations, "Ulrich transferred Solutions' intellectual property to Technology and dissolved Smash Solutions." (Compl., ¶12.)  The IP is described as Technology's "most valuable asset."  (Compl., ¶18.)  If that is true, then Ulrich has performed his obligation under the agreement alleged in paragraph 11 of the complaint, and he has not breached any contract.[3]

Furthermore, the complaint does not allege that Technology was a party to a contract or paid or provided anything of value to Solutions as consideration for the performance of a contract.  The complaint says "Alexander and Ulrich entered into an agreement …."  (Compl.¶37 (emphasis added).)  As a "result of Ulrich's breach, Alexander has suffered and will continue to suffer damages …."  (Compl.¶40 (emphasis added).)  Because Technology was not a party to the

---

[3]  To be clear, the Defendants do not contend the intellectual property was transferred to Technology, but instead maintain that Solutions still owns and possesses it.  (*See* Answer and Counterclaims filed concurrently.)  Here, Defendants simply draw the Court's attention to the inconsistent and contradictory allegations of the Complaint as supporting grounds for their Motion to Dismiss.

alleged contract, Technology lacks standing to assert a breach of contract claim against either

defendant.  Because Alexander is not alleged to be the owner of the IP, the complaint does not

identify how Alexander has been harmed by any alleged breach of contract.

Even more inconsistently, the complaint alleges Ulrich <u>did</u> cause the transfer of the IP to

Technology and that Technology <u>owns</u> it.  (Complaint, ¶¶12, 18, 82.)  It does not allege how the

transfer occurred.  The only reference in the complaint is that "[b]ased upon his representations,

Ulrich transferred Solutions' intellectual property to Technology."  (Compl., ¶12.)  It also does

not allege the existence of or attach any transfer instrument or purchase agreement.  The

allegation that Technology is the owner of the IP is a mere legal conclusion unsupported by any

factual details that would support a determination of ownership or possession.  Furthermore,

since the complaint alleges that all of Alexander's financial contributions were made to

Technology, it is at best unclear how either defendant could have breached an agreement by

transferring the IP to a company that is wholly owned and funded by Alexander.

The complaint does not allege any consideration that Solutions or Ulrich would receive

for the transfer of the IP from Solutions to Technology.  (*See* Compl., ¶11.)  "It is black letter

law that a promise must be supported by consideration to be legally enforceable."  *Gull*

*Laboratories, Inc. v. Diagnostic Technology, Inc.*, 695 F. Supp. 1151, 1153 (D. Utah 1988)

(*citing Resource Management Co. v. Weston Ranch*, 706 P.2d 1028, 1036 (Utah 1985)).

"Consideration is an act or promise, bargained for and given in exchange for a promise."  *Id.*  All

of the contract terms plaintiffs allege are consideration that flow to the plaintiffs, with no alleged

consideration flowing to the defendants.  The complaint fails to allege why Ulrich or Solutions

would agree to such a one-sided deal.

Furthermore, the complaint also alleges that Ulrich may not have had authority to transfer the intellectual property.  In paragraphs 83 and 84, the complaint alleges that Solutions' shareholders have contested whether Ulrich could deliver clear title as alleged.

Finally, the complaint does not provide any detail about how Ulrich was supposed to build his Bitclub Network position from Tatiana Alexander's Bitclub Network position.  The complaint does not allege how much revenue Ulrich needed to generate.  If Ulrich was responsible for this funding, then the complaint again suggests that no consideration exists. Moreover, to the extent Ulrich was working with Tatiana Alexander, she appears to be a required party to any claim that Ulrich's breached his obligation to build a Bitclub Network under her positions.

The complaint does not satisfy the requirements of Rule 8 as set forth above.  Given these defects, defendants move the Court to dismiss the claim for breach of contract and the corresponding claim for breach of the covenant of good faith and fair dealing based upon the same alleged contract.

## III.   Intentional Interference with Economic Relations (5th Cause of Action).

The Court should dismiss Plaintiffs' fifth cause of action under Rule 12(b)(7) for failure to join Innovations as a required and indispensable party.  Plaintiffs' allegations do not differentiate between Ulrich and Innovations, and do not delineate where one person's actions end and the other's begins.  The complaint alleges the actions of "Ulrich and Innovations" at least 4 times in 6 paragraphs.  (Compl., ¶¶56-61.)  Therefore, the Court cannot accord complete relief among the existing parties on Plaintiffs' interference claim if Innovations is not joined as a

party.  *See* Fed. R. Civ. P. 19(a)(1)(A).  Plaintiffs ask for both damages and injunctive relief

against Innovations without making any attempt to join it as a party defendant.

      If the Court finds joinder is not feasible, it should rule that Innovations is an

indispensable party.  The Court cannot resolve Plaintiffs' claims against Ulrich on the intentional

interference claim without adjudicating Innovations' involvement.  A resolution of Plaintiffs'

claims that does not involve Innovations will not yield a "complete, consistent, and efficient"

settlement of this controversy.  *Northern Arapaho Tribe*, 697 F.3d at 1283.  Further, disposing of

Plaintiffs' claims in Innovations' absence would impede its ability to protect its interests in the

IP, the Software, Feracode's development services, and Innovations' customers and investors.

*See* Fed. R. Civ. P. 19(a)(1)(B).  For these reasons the fifth cause of action should be dismissed

under Rule 12(b)(7).

**IV.**    **False Advertising and False Designation of Origin (6th Cause of Action).**

      The Court should also dismiss Plaintiffs' sixth cause of action under Rule 12(b)(7) for

failure to join Innovations as a required and indispensable party.  Under the Lanham Act, a

person who "uses in commerce any word, term, name, symbol, or device, or any combination

thereof, or any false designation of origin, false or misleading description of fact, or false or

misleading representation of fact, which in commercial advertising or promotion, misrepresents

the nature, characteristics, qualities, or geographic origin of his or her or another person's goods,

services, or commercial activities" can be liable for damages.  15 U.S.C.A. § 1125(a)(1)(B).

      Plaintiffs allege that Ulrich and Innovations falsely advertised and promoted Innovations'

business and CRM Platform.  (*See* Compl., ¶63 (emphasis added).)  Plaintiffs claim Technology

has been harmed by the "false advertising of Innovations' misappropriated products and

services." (*See id.* ¶64 (emphasis added).)  Plaintiffs claim that Innovations' advertising falsely

implies it is the owner and operator of the "CRM Platform." (*See id.* ¶65.)  Plaintiffs do not

specify the form of advertisement at issue, but the Complaint contains an earlier reference to

Innovations' website. (*Id.* ¶26.)  Plaintiffs also reiterate their request for a "preliminary and

permanent injunction to restrain the advertisement, sale, and/or promotion of Innovations'

purported products and services." (*Id.* ¶67.)

Innovations is a required and indispensable party to this claim.  While Plaintiffs direct

some of their allegations against Ulrich, the only advertising medium identified in the Complaint

is Innovations' website.  At the root of this cause of action is the allegation that Innovations has

implied it is the owner and operator of the IP and the Software.  Finally, Plaintiffs again seek

injunctive relief against Innovations, a nonparty to this action, as well as a disgorgement of all

revenue received by Innovations.

This Court simply cannot accord relief between the existing parties in Innovations'

absence when its alleged actions are central to the claim.  Further, the Court should not entertain

injunctive or other relief against Innovations without allowing it to defend its interests as a party

to the action.

## V.      Unfair Competition (7th Cause of Action).

The Court should likewise dismiss Plaintiffs' seventh cause of action under Rule 12(b)(7)

for failure to join Innovations as a required and indispensable party.  Under this provision of the

Lanham Act, a person who "uses in commerce any word, term, name, symbol, or device, or any

combination thereof, or any false designation of origin, false or misleading description of fact, or

false or misleading representation of fact, which is likely to cause confusion, or to cause mistake,

or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person" may be liable for damages.  15 U.S.C. §1125(a)(1)(A).

This cause of action is centered on "Innovations' advertising, marketing, and sale of products and services."  (Compl., ¶71.)  Here again, the Court cannot accord complete relief among the existing parties if Innovations is not joined, and joinder of Innovations is feasible. Further, the Court should not entertain injunctive or other relief against Innovations without allowing it to defend its interests in the IP and the Software at issue.

## VI.   Deceptive Trade Practices (8th Cause of Action).

The Court should also dismiss Plaintiffs' eighth cause of action under Rule 12(b)(7) for failure to join Innovations as a required and indispensable party.  Under Utah's Truth in Advertising Act, "[d]eceptive trade practices occur when, in the course of a person's business, vocation, or occupation that person: … (b) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; (c) causes likelihood of confusion or of misunderstanding as to affiliation, connection, association with, or certification by another; [or] … (e) represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have …."  UTAH CODE ANN. §13-11a-3(b), (c), (e).

Plaintiffs contend that Ulrich and Innovations have misled consumers by advertising, marketing, and promoting Innovations' use of "the CRM Platform."  (Compl., ¶76.)  They claim representations regarding "Innovations' products and services" have caused confusion and

misunderstanding among consumers as to the "affiliation, connection, or association" with Technology and the CRM Platform.  (*Id.* ¶77.)  Plaintiffs again ask the Court to enjoin Innovations and to award actual or statutory damages against it.  (*Id.* ¶¶78-80.)

This cause of action is also centered on Innovations' alleged advertising and its relationship to the IP and the Software.  In its absence, the Court cannot accord complete relief among the existing parties if Innovations is not joined.  The Court also should not entertain injunctive relief against Innovations if it is not a party to the action.

### Conclusion

Pursuant to Rule 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure, Defendants request this Court to dismiss Plaintiffs' 1st-3rd and 5th-8th causes of action.

DATED this 12th day of April, 2019.

RICHARDS BRANDT MILLER NELSON

*/s/ Matthew C. Barneck*

MATTHEW C. BARNECK
ZACHARY E. PETERSON
KRISTINA H. RUEDAS
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 12th day of April, 2019, I electronically filed the foregoing **DEFENDANTS' PARTIAL MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

> Darren G. Reid
> Brandon T. Christensen
> HOLLAND & HART LLP
> 222 South Main Street, Suite 2200
> Salt Lake City, UT 84101
> dgreid@hollandhart.com
> btchristensen@hollandhart.com
> *Attorneys for Plaintiffs*

*/s/  Peggy Stockton*

G:\EDSI\DOCS\21981\0002\18X1585.DOC