MATTHEW C. BARNECK [5249]
ZACHARY E. PETERSON [8502]
KRISTINA H. RUEDAS [14306]
RICHARDS BRANDT MILLER NELSON
*Attorneys for Defendants*
Wells Fargo Center, 15th Floor
299 South Main Street
P.O. Box 2465
Salt Lake City, Utah  84110-2465
Email: matthew-barneck@rbmn.com
         zachary-peterson@rbmn.com
         kristina-ruedas@rbmn.com
Telephone: (801) 531-2000
Fax No.: (801) 532-5506

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SMASH TECHNOLOGY, LLC, a Nevada limited liability company; and MICHAEL ALEXANDER, an individual,<br><br>          Plaintiffs,<br><br>vs.<br><br>SMASH SOLUTIONS, LLC, a Delaware limited liability company; JERRY "J.J." ULRICH, an individual; and JOHN DOES 1-3,<br><br>          Defendants. | **DEFENDANTS' ANSWER AND COUNTERCLAIM AGAINST SMASH TECHNOLOGY, LLC AND MICHAEL ALEXANDER**<br><br><br>Civil No. 2:19-cv-00105-TC<br><br>Judge Tena Campbell |

Defendants Smash Solutions, LLC ("**Solutions**") and Jerry J. Ulrich ("**Ulrich**"), by and

through counsel, Matthew C. Barneck, Zachary E. Peterson, and Kristina H. Ruedas of the law

firm RICHARDS BRANDT MILLER NELSON, hereby Answer part of the Plaintiffs' Complaint as

described below, Counterclaim against Plaintiffs Smash Technology, LLC ("**Technology**") and

Michael Alexander ("**Alexander**"), and allege as follows:

## ANSWER

Solutions and Ulrich respond to the individually numbered paragraphs as follows:

## PARTIES

1.      Admit.

2.      Admit upon information and belief.

3.      Admit that Solutions is now a Delaware limited liability company.

4.      Admit.

5.      Deny.  Smash Innovations, LLC is a Wyoming limited liability company that is

registered to do business in Utah.

## JURISDICTION & VENUE

6.      Admit.

## GENERAL ALLEGATIONS

7.      Deny.

8.      Deny for lack of knowledge, information, and belief.

**The Formation of Smash Technology (Technology)**

9.      Deny.

10.     Deny.

11.     Deny.

12.     Deny.

13.     Deny.

14.     Deny.

**The Feracode Agreement**

15.     The Master Services Agreement, which has not been produced, speaks for itself. Deny all remaining allegations.

16.     Deny.

17.     Deny.

18.     Deny for lack of knowledge, information, and belief.

**Ulrich's Financial Misconduct**

19.     Deny.

20.     Deny.

21.     Deny.

22.     Deny.

**Innovations: Ulrich's Misappropriations and Deceit**

23.     Deny.

24.     Deny.

25.     Deny.

26.     Deny.

27.     Deny.

<u>**FIRST CAUSE OF ACTION**</u>
**(Injunctive Relief)**

28.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

29.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

30.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

31.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

32.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

33.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

34.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

35.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

## SECOND CAUSE OF ACTION
### (Breach of Contract—Ulrich)

36.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

37.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

38.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

39.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

40.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

## THIRD CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing—Ulrich)

41.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

42.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

43.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

44.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

45.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

46.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

47.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

48.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment – Ulrich and Solutions)

49.     Solutions and Ulrich incorporate by reference their answers to the allegations contained in the paragraphs above.

50.     Deny.

51.     Deny.

52.     Deny.

53.     Deny.

54.     Deny.

## FIFTH CAUSE OF ACTION
### (Intentional Interference with Economic Relations—Ulrich and Innovations)

55.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

56.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

57.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

58.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

59.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

60.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

61.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

## SIXTH CAUSE OF ACTION
### (False Advertising and False Designation of Origin 15 U.S.C. § 1125(a)(1)(B)— Ulrich and Innovations)

62.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

63.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

64.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

65.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

66.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

67.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

68.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

69.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

**SEVENTH CAUSE OF ACTION**
**(Unfair Competition 15 U.S.C. § 1125(a)(1)(A)—Ulrich and Innovations)**

70.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

71.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

72.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

73.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

74.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

**EIGHTH CAUSE OF ACTION**
**(Deceptive Trade Practices Utah Code Ann. § 13-11a-3(1)(b), (c) and (e)—**
**Ulrich and Innovations)**

75.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

76.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

77.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

78.     The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

79.    The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

80.    The allegations in this paragraph are subject to Solutions' and Ulrich's pending Motion to Dismiss.

## NINTH CAUSE OF ACTION
### (Declaratory Judgment – Ulrich and Solutions)

81.    Solutions and Ulrich incorporate by reference their answers to the allegations contained in the paragraphs above.

82.    Deny.

83.    Deny for lack of knowledge, information, and belief.

84.    Deny.

85.    Deny.

86.    Deny.

## TENTH CAUSE OF ACTION
### (Equitable Accounting – Ulrich)

87.    Solutions and Ulrich incorporate by reference their answers to the allegations contained in the paragraphs above.

88.    Deny.

89.    Deny.

90.    Deny.

## ELEVENTH CAUSE OF ACTION
### (Conversion – All Defendants)

91.    Solutions and Ulrich incorporate by reference their answers to the allegations contained in the paragraphs above.

92.     Deny.

93.     Deny.

94.     Deny.

95.     Deny.

## TWELFTH CAUSE OF ACTION
### (Misappropriation of Trade Secrets – All Defendants)

96.     Solutions and Ulrich incorporate by reference their answers to the allegations

contained in the paragraphs above.

97.     Deny.

98.     Deny.

99.     Deny.

100.    Deny.

101.    Deny.

102.    Deny.

103.    Deny.

104.    Deny.

### First Affirmative Defense

Plaintiffs' claim for unjust enrichment fails to state a claim for relief or establish the

required elements under Utah law: "(1) a benefit conferred on one person by another; (2) an

appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by

the conferee of the benefit under such circumstances as to make it inequitable for the conferee to

retain the benefit without payment of its value." *Jeffs v. Stubbs,* 970 P.2d 1234, 1248 (Utah

1998).

### Second Affirmative Defense

Plaintiffs seek injunctive relief which is not enforceable against defendants and request further information which is not in defendants' custody or control.

### Third Affirmative Defense

Plaintiffs' claim for conversion fails to state a claim for relief or establish the required elements of the claim under Utah law: "A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." *Allred v. Hinkley*, 328 P.2d 726, 728 (Utah 1958).

### Fourth Affirmative Defense

Plaintiffs' claims, in whole or in part, are derivative claims, and plaintiffs have not complied with the threshold procedural requirements to assert a derivative claim.  *See* UTAH CODE ANN. §48-3a-802; *see also* Fed. R. Civ. P. 23.1.

### Fifth Affirmative Defense

Plaintiffs' claim for ownership of the intellectual property would deprive third party investors of rights, and plaintiffs' complaint fails to identify, acknowledge, or join these third parties who are required and indispensable parties to the requested relief.

### Sixth Affirmative Defense

Plaintiffs' complaint makes allegations concerning Smash Innovations, LLC and seeks relief against it, but has failed to join it as a required and indispensable party to the case.

### Seventh Affirmative Defense

Plaintiffs lack standing to assert some or all of the claims in this action.

### Eighth Affirmative Defense

Plaintiff Michael Alexander has not established a prima facie claim for relief under any of the causes of action because he has not personally suffered any damages.

### Ninth Affirmative Defense

Plaintiffs' claims for breach of contract are not supported by any signed agreement or other written documents.

### Tenth Affirmative Defense

Plaintiffs' claims for relief are barred in whole or in part by the statute of frauds.

### Eleventh Affirmative Defense

Plaintiffs' claims for equitable relief are barred in whole or in part by the doctrine of unclean hands.

### Twelfth Affirmative Defense

The allegations in plaintiffs' complaint are too vague and unintelligible to provide adequate notice of the nature of claims.  Furthermore, plaintiffs' claims are internally inconsistent, such that defendants cannot reasonably understand the nature of the claims in order to answer the allegations.

### Thirteenth Affirmative Defense

To the extent plaintiffs' complaint is based on allegations of fraud or fraudulent conduct, the allegations do not contain enough specificity to meet the requirements of Rule 9 of the Federal Rules of Civil Procedure.

**Fourteenth Affirmative Defense**

To the extent plaintiffs request injunctive relief, plaintiffs have not established irreparable harm to warrant an award of injunctive relief.

**Fifteenth Affirmative Defense**

Plaintiffs have not adequately investigated the asserted claims, and plaintiffs do not have documents to support the allegations in the complaint.

**Sixteenth Affirmative Defense**

To the extent defendants prove the alleged allegations in the complaint are false, defendants are entitled to attorney fees and costs incurred in proving the allegations were not adequately investigated and false.

**Seventeenth Affirmative Defense**

Plaintiffs' claim of ownership may be barred by existing copyrights, trademarks, or patents.

**Eighteenth Affirmative Defense**

Plaintiffs' damages may be caused in whole or in part by the conduct and malpractice of P. Sterling Kerr, and defendants reserve the right to seek the apportionment of fault to Mr. Kerr at trial as supporting facts are discovered.

**Nineteenth Affirmative Defense**

Plaintiffs' damages are caused in whole or in part by the conduct of others over whom defendants have no right of control or for whom defendants are no vicariously liable.

WHEREFORE, having fully answered Plaintiffs' Complaint, Solutions and Ulrich deny liability for Plaintiffs' allegations, seek dismissal of the claims against them, and request such other and further relief as the Court deems appropriate.

## COUNTERCLAIM

Solutions and Ulrich allege Counterclaims against Technology and Alexander as set forth below.

## DESCRIPTION OF THE PARTIES

1.      Defendant and Counterclaimant Solutions was originally formed as a Utah limited liability company on September 5, 2012.  (*See Ex. 1*.)  It was converted to a Delaware limited liability company on or around January 2, 2013 pursuant to a Certificate of Conversion and a Certificate of Formation filed with the Secretary of State of Delaware.  Its principal place of business is in the State of Utah.

2.      Solutions is creating software that allows individuals and businesses to manage virtually every aspect of their business, including tasking, project management, communications, and focus on building a personalized relationships with their customers through an automated process.

3.      Defendant and Counterclaim Plaintiff Ulrich is an individual resident of the State of Utah.

4.      Plaintiff and Counterclaim Defendant Technology is a Nevada limited liability company with its principal place of business in the State of Nevada.

5.      Plaintiff and Counterclaim Defendant Alexander is an individual who is believed to be a resident of Bali.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§§1331 and 1367.

7.      This Court has personal jurisdiction over the plaintiffs because they have

submitted themselves to the jurisdiction of the Court by filing this action.

8.      Venue properly lies in this Court.

## GENERAL ALLEGATIONS

**A.      Smash Solutions, LLC.**

9.      When Solutions was formed in 2012, Ulrich was the sole member and manager.

As of today's date, Ulrich is still the primary manager of Solutions.

10.      By April 2014, several other persons had become members of Solutions,

including Samuel Potter ("**Potter**").  Alexander is not a member then nor is he a party to the

Operating Agreement signed in 2014.

11.      The Operating Agreement was amended effective July 5, 2018, and as of that date

Alexander still was not a member of Solutions or a signing party to the Operating Agreement.

12.      The current officers of Solutions are Ulrich as Chairman, Kevin C. Kern ("**Kern**")

as President, and Sarah A. Ulrich ("**Sarah**") as Vice President.

13.      Ulrich invented the technology and infrastructure for the business software suite.

His experience working with big data aggregation and data collection created the initial system

that Solutions is developing, with the intent to market it commercially.  The software is a data

collection platform that has CRM (Customer Relationship Management) capabilities.  Ulrich and

Solutions own all intellectual property rights (the "**IP**") to the software (the "**Software**").

14.     Solutions began developing this software in 2012 in Salt Lake City, and later in India and Brazil, long before Alexander became affiliated with Solutions.

15.     Beginning in 2012, Solutions began preparing a "**Build Plan**" and completed it in 2014.  The Build Plan consists of nearly 6,000 pages and Alexander has never seen it.

**B.     Alexander's Business Dealings with Smash Solutions, LLC.**

16.     For two to three years, Alexander had certain business dealings with Solutions in which it was proposed that Alexander would provide funding and assistance with business operations.

17.     His first formal involvement with Solutions began in late 2015 when there were discussions concerning a reseller agreement for a Solutions software product known as "Smash Booster Bar."

18.     Alexander signed a reseller agreement with Solutions effective date June 6, 2016.

19.     In or about September 2016, Alexander sent Ulrich his resume and biography looking to be hired by Solutions as a representative to raise money for Solutions and its software development.

20.     Afterward, Solutions prepared an offer letter for Alexander to be its chief sales officer.  The offer dated January 2, 2017 contemplated a beginning salary of $13,500 per month and an ownership stake in Solutions.

21.     In April 2017, a consulting agreement was prepared between Solutions and Alexander that contemplated Alexander becoming a consultant to identify and introduce prospective investors to Solutions.

22.     One of Alexander's primary responsibilities was to raise funding for Solutions.

23.     One potential source of funds for Solutions was Alexander's investments in cryptocurrency, and more specifically in mining bitcoins.  The parties contemplated that Ulrich and Alexander would develop a bitcoin network (the "**Bitclub Network**") to generate additional funding for Solutions.

24.     In late April 2017, a draft agreement was prepared between Alexander and Ulrich whereby Ulrich would enroll in the Bitclub Network under Alexander's Centurion position.

25.     The Centurion position was under Uberfund, and the parties discussed how to split commissions and revenue generated from the Centurion position in the Bitclub Network.

26.     As early as April 21, 2017, the relationship between Ulrich and Alexander experienced some setbacks, which resulted in back and forth communications between them.

**C.      Feracode USA.**

27.     To develop the IP into a finished software product that can be marketed commercially, Solutions signed a contract with Feracode USA ("**Feracode**") on January 29, 2018 (the "**Feracode-Solutions Agreement**").  This Agreement provided that Feracode would write the code for the Software.

28.     This Agreement was entered before Alexander's involvement with Solutions began, and before Alexander formed Technology.  It has never been canceled and remains in force.

29.     Solutions provided the Build Plan to Feracode when it was complete and Feracode has been executing it.

30.     Feracode continues to write code and perform according to the Feracode-Solutions Agreement, and Solutions and Ulrich continue to make payments according to the Agreement.

31.     The Agreement required Solutions to make monthly payments of in excess of $100,000.  To service that obligation and to pay its other expenses, Solutions needed outside funding.

**D.     Further Discussions with Alexander; Smash Technology, LLC.**

32.     Beginning in or about November 2017, there were discussions between Solutions and Alexander toward a possible agreement for the funding, management, and possible licensure of the IP and the Software.  The discussions involved several talking points, which often differed based upon Alexander's change of position.

33.     The discussion points included at various times at least the following:

a.      Alexander would provide funding for Solutions to support the development of the Software and to service the Feracode-Solutions Agreement.

b.      Solutions ultimately would be dissolved.

c.      A new company would be formed and owned by at least Ulrich and Alexander.

d.      Alexander would take an active role in the day-to-day operations of Solutions and in transitioning the business to the new company.

e.      A user license to the IP and/or the Software to be entered with the new company.

34.     The parties did not reach a verbal agreement on these or any other terms and no agreement was reduced to writing.

35.     Technology was formed as a Nevada limited liability company on February 28, 2018.  Alexander was the organizer, the sole manager, and the only member.  A lawyer in Las Vegas named P. Sterling Kerr ("**Sterling**") was the registered agent.  Sterling recommended that Alexander be the sole member of Technology until Solutions was clear of any potential legal claims by accomplishing a dissolution.

36.     An agreement was entered between Feracode and Technology on or about March 12, 2018 (the "**Feracode-Technology Agreement**").

37.     This Agreement was entered in preparation for an ultimate transition of the business to the new company, which would now be Technology.  It did not replace or modify the Feracode-Solutions Agreement.

38.     Shortly after entering this Agreement with Feracode, Technology defaulted on its payment obligations to Feracode.

39.     On January 25, 2019, Feracode gave notice to Technology that the Feracode-Technology Agreement was terminated pursuant to its terms.  Feracode's stated reasons were the "serious delinquency of the payments and final transfer of the Intellectual Property not being completed from Jerry Ulrich and Smash Solutions …."

40.     Solutions continues to perform under the Feracode-Solutions Agreement, which predated the Feracode-Technology Agreement and remains in force.

**E.     Alexander Fails to Provide Funding; Ulrich and Solutions Make Feracode Payments.**

19

41.     In the latter part of 2018, the value of cryptocurrency and bitcoin started to decrease.

42.     This decrease in value impacted the availability of funding for Solutions from cryptocurrency.

43.     During this same time, Alexander continued to miss meetings with the Solutions team and failed to implement certain steps necessary to get Technology up and running.

44.     Specifically, Solutions requested that Technology put in place an operating agreement to govern the business operations of Technology.

45.     To date, Solutions and Ulrich are unaware of an operating agreement ever being signed for Technology.

46.     Neither Ulrich nor Solutions have ever signed an operating agreement for Technology that would allow it to operate as Alexander desired.

47.     Also, Technology never opened a bank account in its name to conduct business or to maintain its own finances.

48.     The team at Solutions repeatedly requested that Technology open a bank account, but it failed to do so.

49.     As the relationship between Alexander and the Solutions team continued to deteriorate in late 2018, Alexander unilaterally cut off the access of Ulrich and others at Solutions to commissions or revenue from the Centurion position in the Bitclub Network.

## FIRST CAUSE OF ACTION
### Declaratory Judgment

50.     Based on the facts in the record, the Court should enter declaratory judgment pursuant to 28 U.S.C. §2201, *et seq.* that the IP and the Software at issue in this action are owned

by Solutions and that neither ownership, licensure, nor any other rights were ever transferred to Technology.

51.     Alexander and Technology failed to perform their obligations according to the discussions described above, first, by failing to provide funding as agreed.

52.     Technology did not make any payments to Feracode.  All payments to Feracode were made by Solutions or Ulrich.

53.     For several months in 2018, Ulrich asked Alexander to provide funding for the payments to Feracode, pursuant to their discussions, but he would not do so.

54.     Alexander also failed to provide adequate funding to support Solutions' own expenses in the development of the IP and the Software.  Accordingly, Ulrich and Solutions had to find other ways to raise the money, and if not the development of the Software would have failed.

55.     Aside from the failure to provide funding, Alexander also showed a total disregard for the day-to-day operations of Solutions during the transition of the business to Technology.  Alexander attended only 2 meetings out of many during the 7 month period from July 2018 to January 2019.

56.     No contract of sale was ever written or signed, nor was there a bill of sale or any other instrument purporting to effect a transfer to Technology of any rights in the IP or the Software.

57.     During various meetings with Sterling and others, sometimes including Alexander, a licensure or sale of the IP was discussed.  When Kern asked about a contract of

sale, Sterling told him the sale contract was not yet drawn up and since Alexander and Ulrich had an existing relationship, the contract would be filled out later.

58.     When Kern asked about the sale price, Sterling said a price had not yet been decided upon, and it would not be required unless someone brought it up.  Then Kern was told he did not need to worry about it.

59.     Thus, there is no written evidence of a transfer to Technology of any rights in the IP or the Software.

60.     Further, even if the discussions between the parties as described above were somehow enforceable, Alexander breached those terms for the reasons just described, and Solutions then had no further obligation to continue.

61.     This is an actual case or controversy and the dispute is real and substantial.

62.     Based thereon, the Court should enter declaratory judgment in favor of Counterclaimants Solutions and Ulrich and against Counterclaim Defendants Alexander and Technology as set forth in the Prayer for Relief below.

## SECOND CAUSE OF ACTION
### Unfair Competition Under the Lanham Act, 15 U.S.C. § 1125(a)(1)

63.     Ulrich invented the IP at issue in this litigation, and Ulrich and Solutions own the IP and the Software.

64.     Solutions never entered into any contracts, either written or oral, with Technology or Alexander in which Solutions agreed to transfer to Technology any rights in the IP or the Software.

65.     Technology never signed an operating agreement or otherwise established itself as an operational entity.

66.     Technology never opened a bank account to transact business on its own behalf.

67.     Technology contends it is the sole owner of the IP, and is entitled to exclusive possession and use of the IP and the Software under the name of Smash Technology, LLC.

68.     While asserting this ownership interest, Technology is unable to operate as a business and owns no IP or Software in its own name.

69.     Accordingly, Technology's use of the Smash name and its representations of ownership are likely to cause confusion or mistake, or deceive as to Technology's affiliation, connection, or association with Solutions and the IP and Software, in violation of § 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

70.     Because Technology has no understanding of the capabilities of the IP and no ability to properly develop or market the IP, Technology's continued misrepresentations will dilute the product in the eyes of consumers and cause harm to Solutions based on Technology's inability to properly market and develop the Software products.

71.     In addition to its claim of ownership, Technology's acts in asserting ownership over the IP and Software have caused harm to Solutions' ability to develop and market its own products to consumers.

72.     Accordingly, Technology's acts in commercial advertising or promotion misrepresents the nature, characteristics, qualities, or geographic origin of the IP and/or the Software or Solutions' goods, services, or commercial activities, in violation of § 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(B).

73.     Technology's acts have caused irreparable harm to Solutions' reputation and business, and Technology should be restrained from misrepresenting its ownership in the IP and/or the Software.

74.     Solutions continues to suffer from harm based on Technology's actions and have suffered damages in an amount to be proven at trial.

### THIRD CAUSE OF ACTION
**Breach of Contract**

75.     Ulrich and Alexander entered into an agreement whereby they agreed to develop and share in commissions and revenue from the Bitclub Network.

76.     Ulrich and Alexander agreed to have Ulrich establish and develop a position under Alexander's Centurion position within the Uberfund.

77.     The parties contemplated that commissions and revenue generated from both Ulrich's and Alexander's positions in the Bitclub Network would generate revenue to be used to develop the IP.

78.     Alexander has unilaterally cut off Ulrich's access to the position Ulrich has created and developed under the Centurion position, including cutting off all payments for commissions and revenue to Ulrich.

79.     Alexander's unilateral actions in cutting off Ulrich's access to the Bitclub Network are in violation of the parties' agreement with respect to developing positions within Bitclub Network and to use the revenue to support Solutions.

80.     Ulrich has suffered monetary damages because of his inability to access commissions and revenue that are due to him for his position in the Bitclub Network.

81.     Alexander has wrongfully retained commissions and revenue owed to Ulrich for his own personal use.

82.     Alexander's breach of the parties' agreement is ongoing.

83.     Accordingly, Ulrich has suffered monetary losses in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### Intentional Interference with Economic Relations

84.     Ulrich and Alexander both contemplated that the use of commissions and revenues from Bitclub Network would be used to fund Solutions' continued development of the IP and marketing of the Software.

85.     Based on the parties' discussions, Solutions was an intended third-party beneficiary of the revenue generated from Ulrich's and Alexander's position in Bitclub Network.

86.     Alexander unilaterally cut off access to the Centurion position in order to stop funding to Solutions in an attempt to prevent it from continuing to develop the software.

87.     Alexander's conduct was done to further the interests of Technology at the expense of Solutions.

88.     Alexander's conduct was intentional interference with Solutions' contractual right, it was done by improper means, *i.e.* by a breach of Alexander's agreement with Ulrich, and it caused injury to Solutions.

89.     Alexander's unilateral act in cutting off commissions and revenue to be used by Solutions, or on its behalf, has damaged Solutions' ability to meet its financial obligations and develop the Software.

90.     Alexander's conduct has caused delays in Solutions' development of the IP, which has caused lost revenue and lost profits.

91.     Accordingly, Solutions is entitled to recover damages in an amount to be proven at trial for Alexander's breach of the parties' agreement and corresponding harm caused to the intended third-party beneficiary of the contract, Solutions.

## PRAYER FOR RELIEF

WHEREFORE, Solutions and Ulrich pray for judgment against Technology and Alexander as follows:

A.      For judgment in their favor and against Plaintiffs Technology and Alexander on all claims asserted in the Complaint;

B.      For judgment in their favor and against Counterclaim Defendants Technology and Alexander on all claims asserted in the Counterclaim;

C.      For an award of attorneys incurred; and

D.      For such other and further relief as the Court deems just and proper.

DATED this 12th day of April, 2019.

                                        RICHARDS BRANDT MILLER NELSON


                                        */s/ Matthew C. Barneck*
                                        MATTHEW C. BARNECK
                                        ZACHARY E. PETERSON
                                        KRISTINA H. RUEDAS
                                        *Attorneys for Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 12th day of April, 2019, I electronically filed the foregoing **DEFENDANTS' ANSWER AND COUNTERCLAIM AGAINST SMASH TECHNOLOGY, LLC AND MICHAEL ALEXANDER** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

> Darren G. Reid
> Brandon T. Christensen
> Holland & Hart LLP
> 222 South Main Street, Suite 2200
> Salt Lake City, UT 84101
> dgreid@hollandhart.com
> btchristensen@hollandhart.com
> *Attorneys for Plaintiffs*

> */s/ Peggy Stockton*

G:\EDSI\DOCS\21981\0002\18W2107.DOC