Darren G. Reid (11163)
Brandon T. Christensen (16420)
HOLLAND & HART LLP
222 South Main Street, Suite 2200
Salt Lake City, Utah  84101
Telephone:  (801) 799-5800
Facsimile:  (801) 799-5700
dgreid@hollandhart.com
btchristensen@hollandhart.com
*Attorneys for Plaintiffs*

# IN THE UNITED STATES DISTRICTCOURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SMASH TECHNOLOGY, LLC, a Nevada limited liability company; and MICHAEL ALEXANDER, an individual;<br><br>      Plaintiffs,<br><br>vs.<br><br>SMASH SOLUTIONS, LLC, a Delaware limited liability company; JERRY "J.J." ULRICH, an individual; and JOHN DOES 1-3;<br><br>      Defendants. | **PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY**<br><br><br>Case No. 2:19-cv-00105-TC<br><br>Judge Tena Campbell |
| SMASH SOLUTIONS, LLC, a Delaware limited liability company; JERRY "J.J." ULRICH, an individual; and JOHN DOES 1-3;<br><br>      Counterclaim Plaintiffs,<br><br>vs.<br><br>SMASH TECHNOLOGY, LLC, a Nevada limited liability company; and MICHAEL ALEXANDER, an individual;<br><br>      Counterclaim Defendants. | |

Plaintiffs Smash Technology, LLC and Michael Alexander (collectively, "Plaintiffs"), respectfully submit this Opposition to Defendants Smash Solutions, LLC's and Jerry "J.J." Ulrich's Partial Motion to Dismiss (collectively, "Defendants") (Dkt. No. 26) (the "Motion"). In the alternative, Plaintiffs move to stay the Court's decision until further discovery can establish the necessary Defendant parties.

## INTRODUCTION

Defendants' Motion fails for a variety of reasons. It (i) ignores and mischaracterizes the clearly-pled allegations of the Complaint; (ii) contradicts Rule 12(b)(6) and the standards applicable to such motions; and (iii) misconstrues Rule 12(b)(7) and the standards related to John Doe pleading. For these reasons, as more fully set forth below, Defendants' Motion should be denied.

## FACTUAL BACKGROUND

Jerry Ulrich and Michael Alexander teamed up to form Smash Technology LLC ("Technology"), which intended to develop "customer relationship management" (CRM) technology for the marketplace. Pursuant to their agreement related to the formation of Technology, among other things, Ulrich agreed to transfer title to the intellectual property to Technology. In exchange, Alexander agreed to fund Technology because Ulrich had no ability to do so. Alexander and Ulrich understood and agreed that Feracode—a third-party developer under contract with Technology—would continue to develop the infant intellectual property into a full-fledged CRM platform. Feracode has, indeed, developed Technology's CRM platform, and its work has been paid for by Alexander's funds invested into Technology.

Unfortunately, Ulrich has breached his agreement by, among other things, using Alexander's investment in Technology for numerous unauthorized transactions like personal expenses. Now, in his Counterclaim, Ulrich also disputes his actual transfer and ownership of the intellectual property to Technology, which is an additional, significant breach of the parties' agreement.

It is apparent what Ulrich is trying to do. Instead of having Technology develop the CRM platform pursuant to Ulrich's and Alexander's agreement, Ulrich formed "Smash Innovations" for the purpose of ousting Alexander, misappropriating Technology's intellectual property and CRM Platform, hi-jacking Technology's development relationship with Feracode, and soliciting new investors and customers outside of Technology. Thus, Ulrich is working directly with Feracode and Smash Innovations to circumvent his obligations to Alexander and Technology, leaving Plaintiffs with no choice but to affirm their rights in the intellectual property that they have paid Feracode substantial sums to develop for Technology.

## ARGUMENT

Defendants' Motion seeks to dismiss seven of Plaintiffs' twelve causes of action.[1] Defendants move to dismiss Plaintiffs' breach of contract/good faith claims for failure to state a claim under Rule 12(b)(6). Defendants move to dismiss Plaintiffs' five other claims for failure to join an indispensable party under Rule 12(b)(7). In doing so, Defendants mischaracterize Plaintiffs' allegations, ignore parts of the Complaint, misconstrue pleading and dismissal

---

[1] Defendants move to dismiss Plaintiffs' causes of action 1-3 (injunctive relief, breach of contract, breach of implied covenant of good faith and fair dealing) and 5-8 (intentional interference, false advertising, unfair competition, and deceptive trade practices). Plaintiffs' claims for unjust enrichment, declaratory judgment, equitable accounting, conversion, and misappropriation of trade secrets are not addressed.

standards, and otherwise fail to present persuasive arguments. Plaintiffs' claims against Defendants meet every pleading standard under Rules 12(b)(6) and 12(b)(7) and the Court should deny the Motion in its entirety.

**I.     THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(6).**

Plaintiffs' claims for breach of contract/breach of good faith are properly pled. This Court has succinctly described the standards applicable to Defendants' Motion:

> "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991). The court may consider the facts alleged in the complaint, along with "'documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity.'" *County of Santa Fe, N.M. v. Pub. Serv. Co. of New Mexico,* 311 F.3d 1031, 1035 (10th Cir. 2002) (quoting *Jacobsen v. Deseret Book Co.,* 287 F.3d 936, 941 (10th Cir. 2002)). In doing so, the court accepts as true "all well-pleaded factual allegations" in the complaint, which are "viewed in the light most favorable to the nonmoving party." *Sutton,* 173 F.3d at 1236. The court "must indulge all reasonable inferences in favor of the plaintiff." *Curtis Ambulance of Florida, Inc. v. Bd. of County Comm'rs of Shawnee County, Kan.,* 811 F.2d 1371, 1374 (10th Cir. 1987). To dismiss a complaint under Rule 12(b)(6), "it must appear beyond doubt that the plaintiff can prove no set of facts that would entitle him to relief." *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir. 1984).

*Ogden UT Soleco Return, LLC v. Soleco Inc.*, No. 1:14-CV-00050-TC, 2015 WL 1034204, at *2 (D. Utah Mar. 10, 2015) (unpublished) (denying a motion to dismiss because the complaint alleged sufficient facts to state a claim for relief). When this standard is properly applied to Defendants' Motion, none of Plaintiffs' claims are subject to dismissal, including its claims for breach of contract and breach of the implied covenant of good faith and fair dealing.

Defendants argue that Plaintiffs fail to allege facts to support the elements of a breach of contract claim–*i.e.*, (a) a contract; (b) performance under the contract; (c) breach of the contract; and (d) damages.  *See Global Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 2d 1176, 1187 (D. Utah 2015).  To be clear, however, Plaintiffs' Complaint is replete with such allegations.  For example, the Complaint asserts the following allegations regarding Alexander's and Ulrich's agreement for the formation of Smash Technology, LLC and Ulrich's related breaches:

### Alexander's and Ulrich's Technology Contract & the Parties' Performance

- In forming Technology, Alexander **partnered with** J.J. Ulrich.  *See* Complaint, attached as Exhibit A, ¶ 9.  Alexander and Ulrich **entered into an agreement** regarding the formation, funding, and operation of Technology.  *Id.* ¶ 37.

- Alexander's and Ulrich's Technology partnership intended to work as follows: first, **Ulrich agreed** to transfer clear title to Solutions' infant intellectual property to Technology, and second, **Alexander agreed** to fund Technology.  *Id.* ¶ 11.

- ***Ulrich agreed*** to dissolve Smash Solutions and indemnify Alexander and Technology from any liability from Smash Solutions' creditors, investors, and employees.  *Id.*

- Pursuant to this same agreement, **Ulrich agreed** to build his Bitclub Network business to produce adequate sales and production volume to maximize daily earnings from Tatiana Alexander's Uberfund and Centurion Bitclub Network.  Ulrich **has defaulted** on his obligations relating to the Bitclub Network.  *Id.*

- ***Based upon his representations***, Ulrich transferred Solutions' intellectual property to Technology and dissolved Smash Solutions.[2]  ***To date, Alexander has funded Technology with approximately $900,000***.  *Id.* ¶ 12.

---

[2]  The key phrase here is "based upon his representations," as Alexander understood "Ulrich transferred Solutions' intellectual property to Technology and dissolved Smash Solutions."  As discussed more fully below, Ulrich now disputes he performed as promised, giving rise to additional claims for breach under Alexander's and Ulrich's agreement.

- Alexander *has performed* all of his material obligations under the agreement. *Id.* ¶ 38.

- Alexander and Ulrich intended to develop Technology into a CRM technology powerhouse by developing the sophisticated and superior CRM Platform that would outpace all competitors in the marketplace. *Id.* ¶ 13.

- As Technology's primary operator, Ulrich was tasked with a simple mandate: hire a Chief Technology Officer (Sam Potter) to run point with the outsourced development team building out the CRM Platform. Once this important task was completed, Technology would invest in hosting and server costs for the CRM Platform and other necessary operating expenses once ready to deploy the Alpha testing phase and become partially operational. *Id.* ¶ 14.

**<u>Breach of Technology Contract</u>**

- Upon information and belief, Ulrich *has engaged in numerous unauthorized transactions* for Technology without Alexander's knowledge or authorization, including but not limited to entering into unauthorized vendor agreements, commingling Technology funds with Solutions and personal accounts, and using Technology funds for personal expenses. For example, Ulrich has used funds for personal expenses such as moving expenses, travel and food expenses, investments, computers, and internet and cable services for his home and other businesses. *Id.* ¶ 19.

- Upon information and belief, Ulrich *has failed to account for substantial funds Alexander invested into Technology*, including two wires in the amount of approximately $90,000 and earnings provided from Alexander's other business interests in the amount of approximately $900,000. *Id.* ¶ 20.

- Despite repeated requests from Alexander, Ulrich has only provided limited (and troubling) financial information related to Technology's expenses. Significantly, Ulrich *has failed to provide any original documentation of Technology's transactions* like bank and credit card statements, digital exchanges conversion transaction reports (when Ulrich converted crypto currencies into U.S. dollars), invoices, and vendor contracts. *Id.* ¶ 21.

- Upon information and belief, Ulrich *has also fraudulently invoiced Solutions and/or himself for various Technology purchases*. In either instance, Ulrich is enriching himself to the of detriment Technology and Alexander. *Id.* ¶ 22.

- Upon information and belief, Alexander has recently discovered that Ulrich has formed a new entity or entities—John Does 1-3 and referred to herein as Smash Innovations—*for the purpose of misappropriating Technology's*

- *intellectual property and CRM Platform*, hi-jacking Technology's development relationship with Feracode, and soliciting new investors and customers outside of Technology. *Id.* ¶ 23.

- Ulrich recently locked Alexander out of chatroom discussions with Feracode, presumably to supplant Technology with his newly-formed enterprise Innovations and to redirect Feracode's development efforts to support his misappropriation of the CRM Platform. Upon information and belief, Ulrich is working with and/or directing Feracode to circumvent its contractual obligations with Technology and to divert the CRM Platform and related intellectual property to Innovations. *Id.* ¶ 24.

- Upon information and belief, and without authorization, Ulrich has dusted off Solutions' old private placement memorandum (PPM) to solicit funds from investors *while misrepresenting his ownership of the CRM platform and Technology's business*. *Id.* ¶ 25.

- Upon information and belief, Ulrich has removed access to Technology's website and is directing investors or customers to the old Solutions website or new Innovations websites. *Id.* ¶ 26.

- Ulrich's current actions are causing immediate and irreparable harm to Technology and the CRM Platform by diluting the brand and technology, creating confusion in the marketplace, and interfering with Technology's current and long-term business value proposition to investors and customers. *Id.* ¶ 27.

- Ulrich *has breached his material obligations* under the agreement as described above. *Id.* ¶ 39.

**Damages**

- As a direct and proximate result of Ulrich's breach [described above], Alexander has suffered and will continue to suffer damages in an amount to be proven at trial, plus applicable interest, late fees, and costs of collection. *Id.* ¶ 40.

The basic terms of the Technology contract between Ulrich and Alexander include, among other things, Ulrich's promises (i) to transfer clear title to Solutions' intellectual property to Technology; (ii) to dissolve Smash Solutions; (iii) to indemnify Alexander and Technology from any liability from Solutions creditors, investors, and employees; and (iv) to build his

7

Bitclub Network business to produce adequate sales and production volume to help fund Technology.  *Id.* ¶ 11.  In exchange for these promises, Alexander agreed to fund Technology, which he did, investing approximately $900,000 into the new enterprise.  *Id.*  Moreover, Alexander's investment has paid for Feracode's work to develop the infant intellectual property into a marketable CRM platform.  *Id.* ¶¶ 15-17.

Defendants' Motion is riddled with mischaracterizations regarding Ulrich's and Alexander's agreement.  Defendants argue, perplexingly, that the complaint "does not allege the terms of the contract in sufficient detail to give Defendants' adequate notice of the claim or to allow this Court to enforce the alleged contract."  Motion at 14.  On the contrary, it is difficult to allege the basic terms of Ulrich's and Alexander's agreement more concretely.  Not only does the Complaint provide notice to Defendants of the agreement between Ulrich and Alexander, but it gives the Court specific terms it can enforce, *i.e.*, Ulrich's obligations to transfer clear title of the intellectual property to Technology, to dissolve Smash Solutions, to indemnify Alexander, and to use Technology's funds for development of the CRM platform.  Compl. ¶¶ 11, 15-17.

Defendants argue, erroneously, that the Complaint "does not specify what Alexander did to perform his obligations."  Motion at 14.  They completely ignore that Plaintiffs specifically allege "***Alexander agreed to fund Technology***" and, in fact, "to date, has funded Technology ***with approximately $900,000***." [3]  Compl. ¶¶ 11-12.  Moreover, Alexander and Technology used those funds to pay Feracode to develop the CRM platform for Technology.  *Id.* ¶¶ 15-17.  Thus, Alexander invested substantial sums into Technology in exchange for, and in reliance on, the

---

[3] With ongoing review of records, Alexander invested substantially more money into Technology.

promises made by Ulrich.  By ignoring this simple but substantial performance, Defendants' Motion lacks candor and credibility.

Defendants' Motion is even more elliptical and disingenuous when it argues the Complaint "fails to allege that Solutions was a party to a contract that would legally obligate it to sell or transfer the IP to technology."  Motion at 15.  The reason for this is simple—**Solutions is not a party** to Ulrich's and Alexander's agreement, which is why the breach of contract claim is aimed only at Ulrich.  Compl. ¶¶ 36-40.  Defendants suggest that "Ulrich had no ability, acting on his own, to perform the first term of the alleged contract," *i.e.*, transfer clear title of the intellectual property to Technology.  Motion at 15.  But there are several problems with this argument.  First, it is a factual dispute that the Court does not weigh under 12(b)(6).  *Miller v. Glanz,* 948 F.2d 1562, 1565 (10th Cir. 1991).  Second, Ulrich promised what he promised, and Alexander understood that Ulrich could deliver on his promise—hence the parties' agreement.  Third, if it is true that Ulrich could not deliver as promised, a fact only he would be in possession of at the time he made the deal, then Defendants have likely laid the ground for a potential fraudulent inducement claim.  Regardless, the fact that Solutions was not a party to Ulrich's and Alexander's agreement is immaterial at the 12(b)(6) stage.  *Ogden UT Soleco Return, LLC,* 2015 WL 1034204, at *2.

In the same misleading vein, Defendants argue "the complaint does not allege that Technology was a party to a contract or paid or provided anything of value to Solutions as consideration for the performance of a contract."  *Id.*  Defendants build another straw man, attempting to beat up the Complaint because it has not alleged a contract between Technology and Solutions.  The obvious answer is the same as above—**Technology is not a party** to Ulrich's

9

and Alexander's agreement.  Despite this fact, Defendants argue that "Technology lacks standing to assert a breach of contract claim," failing to acknowledge that the Complaint alleges only that "***Alexander and Ulrich entered into an agreement*** regarding the formation, funding, and operation of Technology."  Motion at 16; Compl. ¶ 37.  If Solutions or Technology were required to be parties to Ulrich's and Alexander's agreement—as Defendants' assert—that is a contractual defense, hotly contested by Plaintiffs, and certainly not a pleading deficiency under any standard, which is why Defendants cite no supporting authority.

        Defendants also argue, unconvincingly, that the alleged agreement lacks consideration.  Motion at 16.  Again, this is a contractual defense, hotly contested by Plaintiffs, and is irrelevant to the Court's 12(b)(6) analysis.  Nevertheless, Defendants suggest that no consideration flowed to Ulrich; "[t]he complaint fails to allege why Ulrich [] would agree to such a one-sided deal."  Id.  As noted above, however, the Complaint states that "Alexander and Ulrich entered into an agreement regarding the formation, funding, and operation of Technology," whereby "Alexander partnered with J.J. Ulrich," intending "to develop Technology into a CRM technology powerhouse by developing the sophisticated and superior CRM Platform that would outpace all competitors in the marketplace."  Compl. ¶¶ 9, 13, 37.  Ulrich's and Alexander's deal was simple—and the kind of deal that is played out everyday in the technology space.  Ulrich would deliver the intellectual property, Alexander would deliver the funds.  *Id.* ¶ 11.  Together, they would benefit as Technology developed the CRM product for the marketplace.  This is, by every legal standard, consideration.  *See Coulter & Smith, Ltd. v. Russell*, 966 P.2d 852, 859 (Utah 1998) ("Consideration is an act or promise, bargained for and given in exchange for a promise.") (quotation marks omitted).

According to Ulrich, he never dissolved Solutions and disputes the transfer of ownership of the intellectual property to Technology. In Defendants' Counterclaim, they allege, among other things, "Ulrich and Solutions own all intellectual property rights to the software," and "neither ownership, licensure, nor any other rights were ever transferred to Technology." Counterclaim (Dkt. 27), ¶¶ 13, 50. Given these new factual allegations, Alexander's claims for breach will certainly include Ulrich's failure to dissolve Solutions and deliver the intellectual property to Technology, essential terms of the agreement alleged in Plaintiffs' Complaint.

Finally, Defendants argue the Complaint "does not identify how Alexander has suffered damages," without citing any support for such a pleading standard. The Complaint does, indeed, allege damages, which is all that is required to meet the elements of breach of contract/breach of good faith. Compl. ¶¶ 40, 46-48; *Global Fitness Holdings, LLC v. Fed. Recovery Acceptance, Inc.*, 127 F. Supp. 2d 1176, 1187 (D. Utah 2015). Moreover, Plaintiffs' have identified specific harms suffered from Ulrich's breach and Defendants' misconduct, including but not limited to the misuse and diversion of substantial funds Alexander invested into Technology per the parties' agreement. Compl. ¶¶ 19-27, 40, 46-48.

## II.   THE COURT SHOULD DENY DEFENDANTS' MOTION TO DISMISS PURSUANT TO RULE 12(B)(7).

Defendants' Rule 12(b)(7) argument is both hypertechnical and nonsensical.[4] Defendants argue that Plaintiffs failed to join Smash Innovations, LLC as an indispensable party, dispensing

---

[4] Rule 12(b)(7) is the sole basis for Defendants' request to dismiss five of Plaintiffs' claims—causes of action Nos. 1 (injunctive relief) and 5-8 (intentional interference, false advertising, unfair competition, and deceptive trade practices). Defendants do not argue that Plaintiffs have failed to sufficiently plead the elements of these claims.

11

with a common-sense approach to Rule 12(b)(7), the John Doe pleading rules, and the plain import of Plaintiffs' allegations.

"Smash Innovations" is already a party to the Complaint because it is identified as John Does 1-3.  Plaintiffs described their use of John Does to stand in for Ulrich's newly-formed entity:

> Upon information and belief, Alexander **has recently discovered that Ulrich has formed a new entity or entities**—John Does 1-3 **and referred to herein as Smash Innovations**—for the purpose of misappropriating Technology's intellectual property and CRM Platform, hi-jacking Technology's development relationship with Feracode, and soliciting new investors and customers outside of Technology.

Compl. ¶ 23.  Plaintiffs further alleged Ulrich's "**as yet unknown entities**—possibly Utah or Wyoming corporations or DBAs—wherein Ulrich **is attempting to operate as Smash Innovations**."  Compl. ¶¶ 4-5.  Defendants argue that Plaintiffs "do not set forth any reason why Innovations was not joined in this action;" however, not only was Smash Innovations joined as John Does 1-3, Plaintiffs clearly state why the "recently discovered" and "as yet unknown entities" formed by Ulrich were identified as John Does.  Motion at 11; Compl. ¶¶ 4-5, 23.

Though Defendants argue that Plaintiffs "did not specifically identify all of the parties that should have been joined pursuant to Rule 19(a)," it is demonstrably false.  Motion at 11. **Plaintiffs discuss Smash Innovations <u>65 times</u>** in its Complaint.  In a rare moment of candor, Defendants even acknowledge that Plaintiffs "say Innovations is one of the entities represented by John Does 1-3 and direct allegations against it throughout the Complaint."  Motion at 3.

When Plaintiffs filed in state court on January 28, 2019, they were uncertain of the new entity or entities Ulrich was using to circumvent his obligations and to hi-jack Technology's

CRM Platform. Thus, without confirmation of the necessary supporting facts and in an abundance of caution, Plaintiffs availed themselves of John Doe pleading—while nevertheless alleging specific misconduct by Ulrich's new entity(ies) "Smash Innovations." To be sure, Plaintiffs—and their counsel—are not in the business of suing entities without substantiation. Accordingly, Plaintiffs styled Ulrich's newly-formed entity "Smash Innovations" as "John Does 1-3," which is not only permissible but responsible pleading. *See Watson v. Unipress, Inc., 733 F.2d 1386, 1389* (10th Cir. 1984) (permitting plaintiff to plead a John Doe defendant and finding that a motion to replace a John Doe with a named party must satisfy Federal Rule of Civil Procedure 15(c)); *see also Wilkins v. Baldwin*, No. 18-CV-471-DRH, 2018 WL 2129784, at *6 (S.D. Ill. May 9, 2018) (finding that plaintiff's claims against John/Jane Does satisfied the basic pleading requirements); *Walters v. Suffolk Cty.*, No. 09-CV-0556 JS/ETB, 2009 WL 1605415, at *3 (E.D.N.Y. June 4, 2009) (same).

Significantly, the Complaint will be simple to amend, especially given Plaintiffs' far-reaching and specific allegations against Ulrich's new "Smash Innovations" entity. To the extent Defendants have positively identified and stipulated to Ulrich's newly-formed entity at issue in this case—Smash Innovations, LLC, a Wyoming corporation—it can be permanently substituted in for John Does 1-3 in the caption of this case, and Plaintiffs will forego needless discovery to confirm as much.

To the extent further discovery is necessary to establish the appropriate Defendant parties, Plaintiffs move the Court to stay its decision until the necessary Defendants are identified and joined into this action. Given Defendants' representations to the Court, this seems

completely unnecessary.  Nevertheless, Plaintiffs move the Court for this relief if Defendants continue to argue their baseless motion under Rule 12(b)(7).

## **CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court deny Defendants' Partial Motion to Dismiss in its entirety.

DATED this 10th day of May, 2019.

                                        HOLLAND & HART LLP

                                      /s/  Darren G. Reid
                                      Darren G. Reid
                                      Brandon T. Christensen

                                      *Attorneys for Plaintiffs*

12397933_v1