MATTHEW C. BARNECK [5249]
ZACHARY E. PETERSON [8502]
KRISTINA H. RUEDAS [14306]
RICHARDS BRANDT MILLER NELSON
*Attorneys for Defendants*
Wells Fargo Center, 15th Floor
299 South Main Street
P.O. Box 2465
Salt Lake City, Utah  84110-2465
Email:   matthew-barneck@rbmn.com
            zachary-peterson@rbmn.com
            kristina-ruedas@rbmn.com
Telephone: (801) 531-2000
Fax No.: (801) 532-5506

### IN THE UNITED STATES DISTRICT COURT

### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SMASH TECHNOLOGY, LLC, a Nevada limited liability company; and MICHAEL ALEXANDER, an individual;<br><br>Plaintiffs,<br><br>vs.<br><br>SMASH SOLUTIONS, LLC, a Delaware limited liability company; JERRY "J.J." ULRICH, an individual; and JOHN DOES 1-3;<br><br>Defendants. | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANTS' PARTIAL MOTION TO DISMISS AND IN OPPOSITION TO MOTION TO STAY**<br><br><br>Civil No. 2:19-cv-00105-TC<br><br>Judge Tena Campbell |

Defendants Smash Solutions, LLC ("**Solutions**") and Jerry Ulrich ("**Ulrich**"), by and through their counsel of record Matthew C. Barneck, Zachary E. Peterson, and Kristina H. Ruedas of the law firm RICHARDS BRANDT MILLER NELSON, and pursuant to Rules 12(b)(6) and 12(b)(7) of the Federal Rules of Civil Procedure, hereby submit this Reply Memorandum in Support of Defendants' Partial Motion to Dismiss.  This Memorandum also opposes Plaintiffs' alternative Motion to Stay (Doc. 30).

## ARGUMENT

### I. Plaintiffs have Failed to Sufficiently Plead the Existence of a Contract between Alexander and Ulrich.

Plaintiffs' Opposition (Doc. 30) clarifies some of the contradictory allegations in their Complaint and asserts that neither Solutions nor Smash Technology, LLC ("**Technology**") is a party to the alleged agreement between Alexander and Ulrich.  Based on this clarification, Defendants have filed a Motion for Partial Summary Judgment on the issue of ownership.

Regardless of the outcome of Defendants' Motion for Partial Summary Judgment, Plaintiffs' second and third causes of action are still subject to dismissal under Rule 12(b)(6) to the extent they are alleged against Ulrich because Alexander has failed to sufficiently plead the existence of a contract between Alexander and Ulrich.  The Opposition fails to adequately address the lack of

definite terms which are capable of enforcement and the lack of consideration in the alleged agreement between Alexander and Ulrich. Their argument glosses over key facts demonstrating that the alleged agreement fails for lack of consideration. (*See* Doc. 30 at 10.)

On the Plaintiff's allegations, the claim for breach of contract and the implied covenant fails for two reasons. First, the Complaint fails to allege Alexander's obligations under the "agreement" with sufficient definiteness to be understood or to be enforceable. The only obligation Alexander allegedly had was to "fund Technology." (Compl. ¶11; Doc. 30 at 7-8.) "'An agreement cannot be enforced if its terms are indefinite ….'" *Nunley v. Westates Casing Serv., Inc., et al.,* 1999 UT 100, ¶22, 989 P.2d 1077 (*quoting Richard Barton Enter., Inc., et al. v. Tsern, et al.,* 928 P.2d 368, 373 (Utah 1996)).[1] Utah courts have refused to enforce an alleged contract where the terms are indefinite or uncertain. *See, Prince, Yeates & Geldzahler,* 2004 UT 26, ¶14, 94 P.3d 179 (refusing to enforce claim "[w]ithout some definite language addressing the amount, timing, or conditions of Young's potential additional compensation"); *Carter v. Sorensen,* 2004 UT 33, ¶7, 90 P.3d. 637 (refusing to enforce option with "no ascertainable

---

[1] Defendants acknowledge that this discussion of indefiniteness expands the arguments in its Motion (Doc. 26), and thus is a new argument. Therefore, Defendants do not object if the Plaintiffs wish to file a sur-reply memorandum to address this point.

3

price term"); *Nunley,* 1999 UT 100, ¶¶22-23 (upholding refusal to enforce stock purchase option where parties could not agree upon critical issue of "how and when and on what terms"); *Tsern,* 928 P.2d at 373-74 (upholding refusal to enforce lease modification agreement where parties did not agree "on a reasonable price or a method for determining one").

The Utah Supreme Court has also held that such an indefinite promise cannot serve as consideration to support an enforceable agreement. The Court stated:

> When there exists only the façade of a promise, i.e., a statement made in such vague or conditional terms that the person making it commits himself to nothing, the alleged "promise" is said to be "illusory." An illusory promise, neither binds the person making it … nor functions as consideration for a return promise.

*Resource Mgmt. Co. v. Weston Ranch & Livestock Company, Inc., et al.,* 706 P.2d 1028, 1036 (Utah 1985) (citation omitted). "[W]here the promisor retains an unlimited right to decide the nature or extent of his performance, the promise is illusory and too indefinite for legal enforcement …." *Resource Mgmt.,* 706 P.2d at 1038.

Here, Alexander's only obligation in the alleged agreement is expressed in such indefinite terms that it does not provide notice to Ulrich as to the terms of the alleged agreement. Further, the promise is illusory and cannot function as

4

consideration for return promises by Ulrich. As Plaintiffs argue, the "agreement" required Ulrich to (i) transfer clear title to the intellectual property to Technology, (ii) dissolve Solutions, (iii) indemnify Alexander and Technology against any liability from Solutions' creditors, investors, and employees, and (iv) build his Bitclub Network business to produce adequate sales and production volume to help fund Technology. (Compl. ¶11; Doc. 30 at 7-8.)

In exchange for these alleged promises, Alexander's sole obligation was "to fund Technology." The terms and conditions of this funding, however, remain undisclosed in the Complaint. (Compl. ¶11; Doc. 30 at 8.) The Complaint contains no allegation about the amount of funding he was to provide, or even a range of amounts. There also is no allegation about whether funding was to be provided by cash investment, by a loan of funds, by facilitating the extension of credit, by in-kind contributions, by providing knowledge and expertise, or by some other means. And there is no allegation about when funding would begin, how long it would last, if it would come in one or more increments, or the size of any such increments. Thus, Alexander "retain[ed] an unlimited right to decide the nature or extent of his performance" in funding Technology. *Resource Mgmt.,* 706 P.2d at 1038. His promise, therefore, is undefined and subject to his whims.

The Complaint does allege that Alexander contributed $900,000 to Technology.  The Complaint does not contain any details about when this funding occurred, how it occurred, or by what means, *i.e.* cash or crypto currency.  The Complaint does not allege if this contribution was the full or partial fulfillment of Alexander's contractual obligation.  It contains no allegations about how this money was to be used.

Next, and more troubling, Alexander's funding obligation is illusory and provides no consideration to Ulrich.  Plaintiffs allege that "Alexander agreed to fund *Technology* …."  (Compl. ¶11 (emphasis added); Doc. 30 at 8.)  They also concede that "Michael Alexander is the sole member and manager of Technology." (Compl. ¶8.)  Utah law requires "that the parties to a contract must supply consideration to each other."  *Gull Lab., Inc. v. Diagnostic Tech., Inc.,* 695 F. Supp. 1151, 1153 (D. Utah 1988).  Long ago the Utah Supreme Court held that for a contract to be valid and binding "each party must be bound to give some legal consideration to the other by conferring a benefit upon him or suffering a legal detriment at his request." *Manwill v. Oyler, et al.,* 11 Utah 2d 433, 361 P.2d 177, 178 (1961); *see also, Gasser, et al. v. Horne, et al.,* 557 P.2d 154, 155 (Utah 1976) (same); *Developers Surety & Indemnity Co. v. Barlow, et al.,* 628 Fed. Appx. 980, 983 (10th Cir. 2015) (unpublished disposition) (same).

Here, Alexander did neither. His alleged agreement to "fund Technology" conferred no benefit upon Ulrich because Alexander was the sole owner of Technology. There is no allegation that the parties agreed Ulrich ever would become a member of Technology. (*See Complaint generally*). Further, Alexander undertook no detriment by agreeing to fund Technology, a company he owned solely. In conjunction with funding his own company, Alexander received the valuable Intellectual Property and indemnity from any claims of Solutions, its investors, or its members. In effect, Alexander simply agreed to pay money to himself and, in exchange, he would receive the valuable Intellectual Property free from any third party claim. In lay terms, the deal was a something for nothing. Even if his agreement to "fund Technology" were sufficiently definite to be enforceable, it is not supported by consideration. Ulrich allegedly promised to do several things that would benefit Alexander or his company Technology, and Alexander only promised to benefit himself. Plaintiffs' 2nd and 3rd causes of action, therefore, fail to state claims upon which relief can be granted.

## II.     Plaintiffs Continue to Disregard the Due Process Rights of Smash Innovations.

Plaintiffs' Opposition does not dispute that Smash Innovations, LLC ("**Innovations**") is a required and indispensable party to their 1st and 5th-8th causes of action. They do not dispute that Innovations can claim an interest in the matter

before the court or that the existing parties cannot adequately represent Innovations' interests.  *Citizen Potawatomi Nation v. Norton, et al.*, 248 F.3d 993, 999 (10th Cir. 2001).  They also do not dispute that disposing of the action in the absence of Innovations may "impair or impede [its] ability to protect [its] interest …." Fed. R. Civ. P. 19(a)(1)(B)(i).  Nor do Plaintiffs address whether joinder of Innovations is "feasible."  (*See* Doc. 30.)  Based thereon, the Court should rule that Innovations is a required party for Plaintiffs' 1st and 5th-8th causes of action and, because they have failed to join Innovations, these causes of action should be dismissed under Rule 12(b)(7) unless Plaintiffs properly add Innovations as a defendant.

Instead, Plaintiffs insist that Defendants' Rule 12(b)(7) Motion is "hypertechnical and nonsensical" and that "Innovations is already a party to the Complaint because it is identified as John Does 1-3."  (Doc. 30 at 11-12.)  This representation is false.  Plaintiffs cannot simply state the name of a non-party in its pleading, call it a John Doe, and assume the party has been properly joined as a defendant.  To do so would circumvent basic due process requirements, especially when Plaintiffs have full knowledge of the identity of the John Doe party.  Naming a John Doe defendant also does not toll the statute of limitations or relieve

Plaintiffs of the requirement to amend their Complaint pursuant to Rule 15(c) or to complete service of process within the time frame specified in Rule 4(m).

After filing a complaint, a plaintiff must cause to be issued a summons that identifies the name of the court, parties, and plaintiff's attorney; states the time within which the defendant must appear and defend; and notify the defendant that a failure to appear and defend will result in a default judgment against the defendant for the relief demanded in the complaint. Fed. R. Civ. P. 4(a). A summons must be personally served upon each defendant along with a copy of the complaint. *Id.* 4(c). "If a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time." *Id.* 4(m) (emphasis added). This service of process is essential to protect a defendant's ability to defend its interests in court and avoid a default judgment.

In a recent case, the District of Utah dismissed the John Does as inappropriate defendants, requiring plaintiffs to "either specifically name or describe with particularity each defendant and link each defendant to [their claims]." *See Fleming v. Turley*, No. 2:09-CV-1038 DAK, 2010 WL 1065514, at *2 (D. Utah Mar. 22, 2010). Other courts have similarly dismissed John Does as

9

named defendants pursuant to Rule 4(m) when the plaintiff failed to identify or serve the John Doe defendant within the required time. *See Santos v. New York City*, 847 F. Supp. 2d 573, 577–78 (S.D.N.Y. 2012).

The cases cited by Plaintiffs in support of their John Doe pleading practices are inapposite here. Plaintiffs cite *Watson v. Unipress, Inc.* for the proposition that naming Innovations as John Does 1-3 is "not only permissible but responsible pleading." Rather, the 10th Circuit in *Watson* found that "no federal statute or rule specifically countenances the naming of fictitious parties in a lawsuit." *Watson*, 733 F.2d 1386, 1388 (10th Cir. 1984); *see* Doc. 30 at 13. The court also held that naming John Does did not toll the statute of limitations against those defendants if they were later joined, and that any substitution of a named party for a John Doe must comply with Rule 15(c). *See id.* at 1389. In *Wilkins v. Baldwin*, the court found that the plaintiff had met the basic pleading requirements only when it described each class of the unknown defendants with particularity. *See* No. 18-CV-471-DRH, 2018 WL 2129784, at *6 (S.D. Ill. May 9, 2018). Unlike the present case, however, the prisoner plaintiff in *Wilkins* had not yet discovered the identity of the unknown defendants.

In contrast, Innovations is not an "unknown defendant." The Complaint itself identifies John Does 1-3 as "Smash Innovations," which Plaintiffs say are

10

"possibly Utah or Wyoming corporations or DBAs." (Compl. ¶5.) A simple search of those states' Division of Corporation records before filing the Complaint would have revealed the registered agent for Smash Innovations. By the time Defendants raised this issue in their Motion to Dismiss, Plaintiffs certainly had all the information they needed to seek leave to amend their Complaint and properly join and serve Innovations.[2] Instead, Defendants made no effort in the 90 days after they filed their Complaint to properly identify the John Doe defendants, amend their Complaint, or serve Innovations. The Court should not permit Plaintiffs to proceed with claims against Innovations until they comply with Rules 15 and 4 of the Federal Rules of Civil Procedure.

### III.   There is No Justification for a Stay of the Case.

In the alternative, Plaintiffs move the Court "to stay its decision [on this Motion] until the necessary Defendants are identified and joined into this action." (Doc. 30 at 13.)[3] Plaintiffs cite no legal authority for such a stay. Nor do they argue any valid factual basis for a stay. It is clear they know about Innovations because, as their Opposition states: "***Plaintiffs discuss Smash Innovations 65***

---

[2] If this Court grants Solutions' motion for partial summary judgment, however, the joinder of Innovations may become moot.

[3] Defendants also note that the Motion to Stay is procedurally improper. The Local Rules provide: "No motion, including but not limited to cross-motions and motions pursuant to Fed. R. Civ. P. 56(d), may be included in a response or reply memorandum. Such motions must be made in a separate document." DUCivR 7-1(b)(1)(A). Plaintiffs' Motion to Stay was included in their Opposition (Doc. 30) and not in a separate document.

*times* in its Complaint." (Doc. 30 at 12 (emphasis original).) There is no need for "further discovery" (Doc. 30 at 13) to identify Innovations, and Plaintiffs have not alleged that there are other persons or entities not yet identified for which further discovery is necessary. Nothing in Rule 15 mandates or suggests a stay of proceedings while a plaintiff seeks to amend its Complaint and add Innovations. Indeed, Plaintiffs say "the Complaint will be simple to amend" (Doc. 30 at 13), which contradicts any suggestion of a need for more time.

It is unclear whether Plaintiffs' request for a stay extends to a decision on Defendants' arguments under Rule 12(b)(6), discovery on Plaintiffs' claims and Defendants' counter-claims, or all other decisions before the Court (including a decision on Defendants' Motion for Partial Summary Judgment filed concurrently). Defendants would be prejudiced under any of these scenarios, particularly when Innovations is only a required and indispensable party to some of Plaintiffs' claims. The Court does not need to wait for Innovations to be properly added as a defendant to decide this Motion to Dismiss or the Motion for Partial Summary Judgment. Defendants also should not be restrained from conducting discovery or otherwise moving this case forward while Technology and Alexander continue to harm Solutions' reputation and business as alleged in the Counterclaim. To secure the "just, speedy and inexpensive determination" of this

action, this Court should decline Plaintiffs' request for a stay.  *See* Fed. R. Civ. P. 1.

## **CONCLUSION**

For the foregoing reasons, Defendants request this Court to dismiss Plaintiffs' 1st-3rd and 5th-8th causes of action.  The Court should also deny Plaintiffs' alternative Motion to Stay.

DATED this 24th day of May, 2019.

RICHARDS BRANDT MILLER NELSON

*s/ Zachary E. Peterson*
MATTHEW C. BARNECK
ZACHARY E. PETERSON
KRISTINA H. RUEDAS
*Attorneys for Defendants*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on the 24th day of May, 2019, I electronically filed the foregoing **DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO STAY** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

> Darren G. Reid
> Brandon T. Christensen
> Holland & Hart LLP
> 222 South Main Street, Suite 2200
> Salt Lake City, UT 84101
> dgreid@hollandhart.com
> btchristensen@hollandhart.com
> *Attorneys for Plaintiffs*

                                          */s/ Zachary E. Peterson*

G:\EDSI\DOCS\21981\0002\1933609.DOC