MATTHEW C. BARNECK [5249]
ZACHARY E. PETERSON [8502]
KRISTINA H. RUEDAS [14306]
RICHARDS BRANDT MILLER NELSON
*Attorneys for Defendants*
Wells Fargo Center, 15th Floor
299 South Main Street
P.O. Box 2465
Salt Lake City, Utah  84110-2465
Email:  matthew-barneck@rbmn.com
        zachary-peterson@rbmn.com
        kristina-ruedas@rbmn.com
Telephone: (801) 531-2000
Fax No.: (801) 532-5506

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SMASH TECHNOLOGY, LLC, a Nevada limited liability company; and MICHAEL ALEXANDER, an individual; <br><br> Plaintiffs, <br><br> vs. <br><br> SMASH SOLUTIONS, LLC, a Delaware limited liability company; JERRY "J.J." ULRICH, an individual; and JOHN DOES 1-3; <br><br> Defendants. | **DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** <br><br><br> Civil No. 2:19-cv-00105-TC <br><br> Judge Tena Campbell |

Defendants Smash Solutions, LLC ("**Solutions**") and Jerry Ulrich

("**Ulrich**"), by and through their counsel of record Matthew C. Barneck, Zachary

E. Peterson, and Kristina H. Ruedas of the law firm RICHARDS BRANDT MILLER

NELSON, respectfully submit the following Motion for Partial Summary Judgment.

## STATEMENT OF RELIEF SOUGHT

Solutions files this Motion for Partial Summary Judgment and requests this

Court to rule as a matter of law that it owns the intellectual property rights (the

"**Intellectual Property**") at issue in this case.  This Motion is supported by

undisputed facts regarding whether Ulrich or Solutions actually transferred the

Intellectual Property to Plaintiff Smash Technology, LLC ("**Technology**").  In

light of the representations that plaintiffs have made to this Court at hearings and

in opposition to the pending Motion to Dismiss, and based on the evidence before

the Court, Solutions is entitled to summary judgment on this narrow issue of

ownership of the Intellectual Property as a matter of law.

Plaintiffs' Complaint starts from the premise that Technology is the owner

of the Intellectual Property and asserts various claims alleging that Defendants are

infringing upon its ownership interest.  The Complaint also alleges that Solutions

initially owned and was developing the same Intellectual Property before it was

supposedly transferred to Technology.  Notably absent from the allegations in the

Complaint, however, is any allegation which provides any detail as to how ownership of the Intellectual Property went from Solutions to Technology.

The closest the Complaint comes to solving this mystery is the allegation that Ulrich and Plaintiff Michael Alexander ("**Alexander**") had an agreement that Ulrich would transfer "Solutions' intellectual property" to Technology in exchange for Alexander funding Technology's development of the Intellectual Property. Pursuant to this agreement, which appears to be an oral agreement, the Complaint alleges that Ulrich represented to Alexander that he had transferred the Intellectual Property to Technology.  The Complaint makes no allegations that either Solutions or Technology was a party to the Ulrich-Alexander agreement.

As the evidence that supports this Motion demonstrates, the Intellectual Property was never transferred from Solutions to Technology.  At all times, Solutions has possessed the Intellectual Property and continues to develop it. Indeed, Solutions' continued possession and development of the Intellectual Property were the grounds on which plaintiffs urged this Court to lift the initial stay of this case due to Ulrich's illness.

In order to understand the basis for Technology's ownership claim, Defendants filed a Motion to Dismiss because the Complaint did not allege any contract to which Solutions was a party.  In addition, the Complaint failed to allege

any specific details of an agreement that would be enforceable as a matter of law. Thus, Defendants sought dismissal of Alexander's breach of contract claim on two grounds: (1) Solutions was not a party to the agreement, and (2) the terms of the agreement were undefined and unenforceable.  Rather than amending the Complaint to allege that Solutions was a party to the agreement, Plaintiffs have doubled down on the allegations in the Complaint.  They emphatically state that Solutions is not a party to any contract with Defendants that would obligate Solutions to transfer the Intellectual Property.  Rather, Ulrich is the only party to the agreement, and Ulrich agreed to transfer "Solutions' intellectual property" to Technology.  Moreover, if Ulrich did not have the ability to make good on the agreement, Plaintiffs now threaten to amend to assert a fraud claim against Ulrich.

Plaintiffs can threaten fraud or whatever other claim they would like to assert against Ulrich, but it does not alter the inescapable fact that neither Plaintiff was in privity of contract with Solutions – the entity that owns the Intellectual Property.  Solutions remains in possession of the Intellectual Property, and neither Plaintiff is alleging that any contract exists that would obligate Solutions to transfer the property to Technology.  Accordingly, Solutions seeks summary judgment on the issue of ownership of the Intellectual Property which is asserted in the counter-claim for declaratory relief.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      Solutions was formed in 2012.  (*See* Articles of Organization, attached as *Ex. 1*.)

2.      When Solutions was formed, Ulrich was the sole member and manager.  As of today's date, Ulrich is still the primary manager of Solutions. (Declaration of Jerry J. Ulrich, ¶2.)

3.      By April 2014, several other persons had become members of Solutions, including Samuel Potter ("**Potter**").  (Ulrich Decl., ¶3.)

4.      The current officers of Solutions are Ulrich as Chairman, Kevin C. Kern ("**Kern**") as President, and Sarah A. Ulrich ("**Sarah**") as Vice President. (Ulrich Decl., ¶4.)

5.      Ulrich invented the technology and infrastructure for the business software suite.  His experience working with big data aggregation and data collection created the initial system that Solutions is developing, with the intent to market it commercially.  (Ulrich Decl., ¶5.)

6.      The software is a data collection platform that has CRM (Customer Relationship Management) capabilities.  (Ulrich Decl., ¶6.)

7.      Solutions owns all intellectual property rights to the software.  (Ulrich Decl., ¶7.)

8.      Solutions began developing this software in 2012 in Salt Lake City,

and later in India and Brazil, long before Alexander became affiliated with

Solutions.  (Ulrich Decl., ¶8.)

9.      Beginning in 2012, Solutions began preparing a "**Build Plan**" and

completed it in 2014.  The Build Plan consists of nearly 6,000 pages.  (Ulrich

Decl., ¶9.)

10.     The build plan was not shared with Alexander.  (Ulrich Decl., ¶10.)

11.     To develop the Intellectual Property into a finished software product

that can be marketed commercially, Solutions signed a contract with Feracode

USA ("**Feracode**") on January 29, 2018 (the "**Feracode-Solutions Agreement**").

(*Ex. 2.*)

12.     This Agreement provided that Feracode would write the code for the

Software.  (*See Ex. 2.*)

13.     This Agreement has never been canceled and remains in force.

(Ulrich Decl., ¶11.)

14.     Solutions provided its Build Plan to Feracode when it was complete,

and Feracode has been executing it.  (Ulrich Decl., ¶12.)

15.     Feracode continues to write code and perform according to the

Feracode-Solutions Agreement.  (Ulrich Decl., ¶13.)

16.     Solutions and Ulrich continue to make payments according to the Agreement.  (Ulrich Decl., ¶14.)

17.     Technology was formed as a Nevada limited liability company on February 28, 2018.  (*Ex. 3.*)

18.     Alexander was the organizer, the sole manager, and the only member. (*See Ex. 3.*)  In fact, the Operating Agreement for Technology states the company is a "Single Member limited liability company."  (*Ex. 4* at 1.)

19.     An agreement was entered between Feracode and Technology on or about March 12, 2018 (the "**Feracode-Technology Agreement**").  (*See Ex. 5.*)

20.     On January 25, 2019, Feracode gave notice to Technology that the Feracode-Technology Agreement was terminated pursuant to its terms.  (*See Ex. 6.*)  Feracode's stated reasons were the "serious delinquency of the payments and final transfer of the Intellectual Property not being completed from Jerry Ulrich and Smash Solutions …."  (*Id.*)

21.     Solutions continues to perform under the Feracode-Solutions Agreement, which predated the Feracode-Technology Agreement.  (Ulrich Decl., ¶15.)

22.     Solutions remains in possession of the Intellectual Property, and it has never transferred it to Technology.  (Ulrich Decl., ¶16.)

23.     Plaintiffs' Complaint alleges that, prior to the alleged transfer agreement between Alexander and Ulrich, Solutions owned the "intellectual property."  Specifically, Plaintiffs maintain that "Ulrich agreed to transfer clear title to Solutions' infant intellectual property to Technology …." (Compl. ¶11; *see also* Compl. ¶12 ("Solutions' intellectual property"); Compl. ¶84 ("Solutions' intellectual property").)

24.     Solutions has never entered into any contract with Alexander or Technology.  (Ulrich Decl., ¶17.)

25.     Plaintiffs Alexander and Technology contend there was an agreement to transfer the Intellectual Property containing five (5) basic terms, and that it was entered only between Alexander and Ulrich.  (Doc. 30 at 7-8.)  They assert: "***Solutions is not a party*** to Ulrich's and Alexander's agreement, which is why the breach of contract claim is aimed only at Ulrich."  (*See* Doc. 30 at 9 (emphasis original); *see also* Compl. ¶¶36-40.)

26.     While initial steps were taken toward dissolving Solutions, no articles of dissolution have been signed or filed with the Utah Department of Commerce and a winding up of its affairs has not occurred.  (Ulrich Decl., ¶18.)

## STANDARD FOR RULE 56 MOTION FOR SUMMARY JUDGMENT

Under Rule 56, the moving party decides what issues to present to the Court for adjudication, and that party may move for summary judgment on all or less than all of the issues raised by the Complaint and Answer.  *See, e.g., Timm v. Dewsnup,* 851 P.2d 1178, 1181 (Utah 1993).  "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  The Court should view the facts, and the inferences to be drawn from those facts, in the light most favorable to the non-moving party.  *See, e.g., Ellis, et al. v. J.R.'s Country Stores, Inc.,* 779 F.3d 1184, 1192 (10th Cir. 2016); *see also Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990).  However, the nonmoving party may not rest on its pleadings but must set forth specific facts showing that there is a genuine issue for trial as to those dispositive matters for which it carries the burden of proof.  *Applied Genetics*, 912 F.2d at 1241 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

## ARGUMENT

## POINT I

## SOLUTIONS OWNS THE INTELLECTUAL PROPERTY.

Undisputed facts in the record support a ruling as a matter of law that

Solutions owns the Intellectual Property at issue in this action, and it has no

contractual obligation to transfer its interests in the Intellectual Property to either

plaintiff.  Plaintiffs' complaint makes confusing allegations regarding ownership,

but in recent briefing on a separate motion Plaintiffs have clarified their position in

such a way that the Court may now enter summary judgment declaring that

Solutions is the owner.  Specifically, the Court should enter an order granting

summary judgment against the Plaintiffs and in favor of Solutions on the counter-

claim for declaratory relief.

### A.   No Breach of Contract or Breach of Implied Covenant.

Absent a contract, Plaintiffs have no legal basis to allege a transfer of the

Intellectual Property and no basis to compel Solutions to transfer the Intellectual

Property to Technology as a form of relief in this action.

Plaintiffs' claims for breach of contract and breach of implied covenant are

nominally pleaded against Ulrich only.  However, the Complaint elsewhere

contends that Technology owns the Intellectual Property, and that it acquired such

10

ownership by virtue of the "agreement" between Alexander and Ulrich. Therefore, it is necessary to begin by briefly addressing the Plaintiffs' second and third causes of action.

In Utah, a breach of contract claim requires proof of the following elements: "(1) a contract, (2) performance by the party seeking recovery, (3) breach of the contract by the other party, and (4) damages." *America West Bank Members, L.C. v. State of Utah, et al.,* 2014 UT 49, ¶15, 342 P.3d 224; *see also, Carmichael, et al. v. Higginson, et al.,* 2017 UT App 139, ¶10 n.5, 402 P.3d 146 (same); *Houweling's Nurseries Oxnard, Inc., et al. v. Robertson, et al.,* 276 F. Supp. 3d 1239, 1246 (D. Utah 2017). "One of the established principles of contract law is that, absent an exception, "a contract cannot bind a nonparty." *Ayres v. AG Processing Inc.*, 345 F. Supp. 2d 1200, 1215 (D. Kan. 2004) (holding minority members' claim for breach of contract against members/officers of company failed because only the company was a party to the agreement alleged to have been breached); *Lockyer, et al. v. AXA Advisors, LLC, et al.,* 2010 WL 4612040, *5 (D. Utah 2010) ("A cause of action for breach of contract may only be asserted against a party to the contract itself.") (unpublished disposition) (*citing Horman v. Gordon,* 740 P.2d 1346, 1351 (Utah Ct. App. 1987)).

Similarly, "[a] claim for breach of the implied covenant of good faith and fair dealing … is based on judicially recognized duties not found within the four corners of the contract." *Christiansen, et al. v. Farmers Ins. Exch.,* 2005 UT 21, ¶10, 116 P.3d 259.  The "duties of good faith and fair dealing arise out of the relationship between the parties created by the contract and have no independent existence outside of the contract …." *Peterson & Simpson, et al. v. IHC Health Services, Inc.,* 2009 UT 54, ¶21, 217 P.3d 716.  The "covenant cannot be read to establish new, independent rights or duties to which the parties did not agree …." *Oakwood Village, LLC v. Albertsons, Inc., et al.,* 2004 UT 101, ¶45, 104 P.3d 1226.

Accordingly, Plaintiffs' claims for breach of contract and breach of the implied covenant cannot be the basis for establishing Technology's ownership of the Intellectual Property, and, to the extent either is alleged against Solutions, either claim must fail as a matter of law. As Plaintiffs have argued emphatically, the Complaint does not allege that Solutions was a party to the agreement alleged between Alexander and Ulrich.  "… ***Solutions is not a party*** to Ulrich's and Alexander's agreement, which is why the breach of contract claim is aimed only at Ulrich.  Compl. ¶¶36-40." (*See* Doc. 30 at 9 (emphasis original).)  Because Solutions is not a party to the alleged agreement, Plaintiffs cannot sustain a breach

of contract claim against it.  Specifically, as a matter of law Plaintiffs cannot prove

"a contract" to which Solutions was a party, and accordingly, they also cannot

show that Solutions breached a contract.  *See America West,* 2014 UT 49, ¶15.

Similarly, as a matter of law, Plaintiffs cannot sustain a claim for breach of the

implied covenant of good faith and fair dealing against Solutions.  Because the

implied covenant arises out of the contractual relationship and has "no independent

existence outside of the contract," *Peterson & Simpson,* 2009 UT 54, ¶21, there

can be no claim against Solutions for breach of the implied covenant.

### B.    Specific Performance is Not Available.

Further, Plaintiffs are not entitled to specific performance of the alleged

agreement between Ulrich and Alexander whereby Ulrich agreed to transfer

Solutions' Intellectual Property to Technology.  The right to "[s]pecific

enforcement of a contract depends on whether the obligations of the parties are set

forth with sufficient clarity and definiteness that the contract can be performed

according to its terms."  *Eliason, et al. v. Watts, et al.*, 615 P.2d 427, 429 (Utah

1980); *see also Barnard v. Barnard, et al.*, 700 P.2d 1113, 1114 (Utah 1985)

("Specific enforcement may be granted only if the parties' intent as to the essential

terms of the agreement is clear").  Plaintiffs have not alleged specific performance

as a desired remedy for any of their causes of action, but even if they did, it could

13

not be ordered under Utah law because Solutions is not a party to the agreement. "Generally, a contract binds no one but the parties to it, and an action on a contract cannot be maintained against a person who is not a party to the contract." *See Ayres*, 345 F. Supp. 2d at 1215.

The record shows that Plaintiffs concede the Intellectual Property belonged to Solutions before the alleged "agreement" was entered. Specifically, the Complaint alleges that "Ulrich agreed to transfer clear title to Solutions' infant intellectual property to Technology …." (Compl. ¶11.) It further alleges Ulrich represented he "transferred Solutions' Intellectual Property to Technology …." (Compl. ¶12.)[1] Then Plaintiffs allege a controversy exists "regarding the ownership and control of Solutions' intellectual property …." (Compl. ¶84.) Thus, the undisputed facts demonstrate that the Intellectual Property was owned by Solutions. Absent a transfer of ownership, Solutions still owns and controls the Intellectual Property. Absent a contract to which Solutions was a party, Plaintiffs have no legal basis to assert ownership of the Intellectual Property. Because the undisputed evidence is that the Intellectual Property was not transferred to Technology, Solutions is entitled to relief on its claim for Declaratory Judgment that it is the owner of the Intellectual Property.

---

[1] To be clear, Defendants do not agree that Ulrich made any such representation, and preserve their right to contest this allegation to the extent necessary.

The only agreement Plaintiffs assert concerning a transfer of ownership is the unwritten agreement allegedly entered between Alexander and Ulrich. Plaintiffs maintain categorically that Solutions was not a party to this agreement; only Ulrich and Alexander were parties. (Doc. 30 at 9; *see also* Compl. ¶¶36-40.) Therefore, even if the "agreement" had been performed as Plaintiffs claim Alexander and Ulrich intended, or even if specific performance could be ordered, such performance would not result in a transfer of the Intellectual Property to Technology or otherwise affect Solutions' ownership. Plaintiffs disclaim any suggestion that Ulrich was acting on behalf of Solutions when entering the alleged agreement, but plainly contend Ulrich was acting only in his individual capacity. (Doc. 30 at 9.)

Finally, no contract of sale was ever written or signed. Plaintiffs recently produced 680 pages of documents in connection with their Rule 26(a) initial disclosures, but these documents do not include any writing that purports to effect a transfer of the Intellectual Property from Solutions to Technology. There is no purchase and sale agreement, no license, no assignment of interests, no bill of sale, and no other instrument in writing purporting to effect a transfer to Technology of any rights in the Intellectual Property. (Decl. of Matthew C. Barneck, ¶¶2-3.) The Lanham Act declares that an assignment of rights relating to a trademark "shall be

by instruments in writing duly executed." 15 U.S.C. §1060(3).  It further directs

the United States Patent and Trademark Office to "maintain a record of

information on assignments, in such form as may be prescribed by the Director."

15 U.S.C. §1060(5).  Similarly, the Copyright Act states that a "transfer of

copyright ownership, other than by operation of law, is not valid unless an

instrument of conveyance, or a note or memorandum of the transfer, is in writing

and signed by the owner of the rights conveyed or such owner's duly authorized

agent."  17 U.S.C. §204(a).

The Second Circuit has held as follows regarding this writing requirement:

"Although it may seem formalistic, the 'writing requirement' is rooted in real

policy concerns.  [It] serves the ends of (1) ensuring that the owner of the

intellectual property will not assign it inadvertently; (2) forcing parties to

determine the precise rights being transferred; and (3) enhancing predictability and

certainty of ownership."  *Federal Treasury Enterprise Sojuzplodoimport, et al., v.*

*SPI Spirits Limited, et al.,* 726 F.3d 62, 74 (2ⁿᵈ Cir. 2013) (*citing Effects Assoc.,*

*Inc. v. Cohen, et al.,* 908 F.2d 555, 557 (9ᵗʰ Cir. 1990)).  The Second Circuit found

"no such writing in the record before us, nor is such a writing adequately alleged in

the Complaint."  *SPI Spirits,* 726 F.3d at 74.  Further, the RESTATEMENT (SECOND)

OF CONTRACTS states:  "It is essential to an assignment of a right that the obligee

16

manifest an intention to transfer the right to another person without further action

or manifestation of intention by the obligee." RESTATEMENT (SECOND) OF

CONTRACTS, §324 (1981).

The policy concerns the Second Circuit identified illustrate the reasons why

the Court should be disinclined to accept an alleged verbal agreement for the

transfer of the Intellectual Property in this action.  In particular, an important

purpose served by an instrument in writing is to enhance the "predicability and

certainty of ownership." *SPI Spirits,* 726 F.3d at 74.  "A clear writing effecting an

assignment signals to the parties and the world that the assign is the party that

owns the mark and is authorized to exclude others from use." *Id.*  Plaintiffs have

neither alleged nor produced any such instrument in writing, and the Defendants

agree no writing was prepared or signed.  Yet Plaintiffs make claims in this case

that undermine the "predicability and certainty of ownership" of the Intellectual

Property and the Software.  This policy urges the Court to strictly construe the

unwritten agreement alleged in this action.  Although Plaintiffs do not allege per se

the transfer of a trademark or a copyright in this case,[2] they make the very similar

---

[2]  Plaintiffs do assert two causes of action under the Lanham Act.  Their sixth cause of action is titled "False Advertising and False Designation of Origin" and is based upon 15 U.S.C. §1125(a)(1)(B).  (Compl. at 11.)  Their seventh cause of action is titled "Unfair Competition" and is based upon 15 U.S.C. §1125(a)(1)(A).  (Compl. at 12.) Both causes of action are based upon provisions of the Lanham Act.

contention that ownership of the Intellectual Property was transferred to

Technology without any instrument in writing.

## **CONCLUSION**

For all of the reasons presented above, the Court should rule as a matter of

law that Solutions owns the Intellectual Property at issue in this case, and that

Technology has no ownership interest.  Accordingly, the Court should grant

summary judgment on Solutions counter claim for declaratory relief.

DATED this 24th day of May, 2019.

RICHARDS BRANDT MILLER NELSON


*s/ Zachary E. Peterson*
MATTHEW C. BARNECK
ZACHARY E. PETERSON
KRISTINA H. RUEDAS
*Attorneys for Defendants*

18

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 24th day of May, 2019, I electronically filed the foregoing **DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

> Darren G. Reid
> Brandon T. Christensen
> Holland & Hart LLP
> 222 South Main Street, Suite 2200
> Salt Lake City, UT 84101
> dgreid@hollandhart.com
> btchristensen@hollandhart.com
> *Attorneys for Plaintiffs*

*/s/ Zachary E. Peterson*

G:\EDSI\DOCS\21981\0002\1936060.DOC

19