# Exhibit 4

## OPERATING AGREEMENT

## OF

## SMASH TECHNOLOGY, LLC

The undersigned, all of the initial members of SMASH TECHNOLOGY, LLC, a Nevada Single Member limited liability company. Such new limited liability company shall be governed as follows:

### ARTICLE 1 - OFFICES

Section 1.1. Principal Office. The principal office and place of business of the company shall be 2450 St. Rose Pkwy., Suite 120, Henderson, NV 89074.

Section 1.2 Registered Agent. The registered agent of the company shall be the Law Offices of P. Sterling Kerr, 2450 St. Rose Pkwy., Suite 120, Henderson, NV 89074.

### ARTICLE 2 - MEMBERS

Section 2.1 Initial Members. The initial members of the company, their contributions to the company and their interests in the company are set forth below:

| MEMBER | INTEREST |
|--------|----------|
| **MICHAEL ALEXANDER** | **100%** |

Section 2.2 Admission of New Members. A person, or any other legal entity in accordance with the Nevada Limited Liability Company Act ("Act"), may be admitted as a new member only upon the written consent of all members.

Section 2.3 Substituted Members. The interest of each member may be transferred or assigned; however, except as expressly provided otherwise in the Act, the transferee of a member's interest shall have no right to become a member of the company unless all of the other members of the company (other than the member proposing to dispose of his, her or its interest), by their unanimous written consent, approve of the proposed transfer or assignment and agree to admit the transferee as a substituted member of the company. A substituted member shall have all the rights and powers, and shall be subject to all the restrictions and liabilities of the transferor. The substitution of the transferee shall not release the transferor from any liability to the company.

Section 2.4 Transferee Not Admitted. If the transferee of the member's interest is not admitted as a substituted member, the transferee shall have no right to participate in the management of the business and affairs of the company, and shall only be entitled to receive the share of profits or other compensation by way of income and the return of contributions to which the transferor would have been entitled if the transfer had not occurred.

Section 2.5 Annual Meeting. The annual meetings of the members for the election of mangers and for the transaction of such other business as may properly come before the meetings shall be held on August 1 of each year. If the election of managers shall not be held on the day designated herein for any annual meeting of the members, or at any adjournment thereof, the managers shall cause the election to be held at a special meeting of the members as soon thereafter as may be convenient.

-1-

ALEX000507

Section 2.6    Special Meetings. Special meetings of the members for any purpose, unless otherwise prescribed by statute, may be called by any manager or by the holders of not less than one-half (1/2) of the interests of the company entitled to vote at the meetings.

Section 2.7    Place of Meeting. Meetings shall be held at any office of the company designated by the managers or at such other place designated by the managers, either within or outside the State of Nevada, as the place for such meeting.

Section 2.8    Notice of Meeting. Written notice stating the place, day and hour of the meeting, and, in case of a special meeting, the purpose for which the meeting is called, shall be delivered not less than ten (10) nor more than fifty (50) days before the date of the meeting, either personally or by mail, by or at the direction of any manager or the person calling the meeting to each member of record entitled at vote at such meeting. If mailed, such notice shall be deemed delivered as to any member when deposited in the United States mail, addressed to the member with postage prepaid. If requested by the manager or persons lawfully calling a special meeting, the managers shall give notice thereof, at company expense.

Section 2.9    Waiver of Notice. A waiver of notice of any meeting signed by the person entitled to such notice, whether before, at or after the time stated therein, shall be equivalent to the giving of such notice. By attending a meeting, a member:

(a)    Waives objection to lack of notice or defective notice of such meeting unless the member, at the beginning of the meeting, objects to the holding of the meeting or the transaction of business at the meeting; and

(b)    Waives objection to consideration at such meeting of a particular matter not within the purpose or purposes described in the meeting notice unless the member objects to considering the matter when it is presented.

Section 2.10    Quorum. A majority of interest of the members entitled to vote, represented in person or by proxy, shall constitute a quorum at any meeting of members. In the absence of a quorum at any such meeting, a majority in interest so represented may adjourn the meeting from time to time for a period not to exceed sixty (60) days without further notice. At such adjourned meeting at which a quorum shall be present or represented, any business may be transacted which might have been transacted at the meeting as originally noticed.

Section 2.11    Manner of Acting. If a quorum is present, the affirmative vote of the majority in interest represented at the meeting and entitled to vote on the subject matter shall be the act of the members, unless the vote of a greater proportion or number or voting by classes is required by law, the Articles of Organization, this Operating Agreement, or amendments thereto. Cumulative voting for managers is not permitted.

Section 2.12    Proxies. At all meetings of members, a member may vote by proxy executed in writing by the member or by his or her duly authorized attorney in fact. Such proxy shall be filed with the managers before or at the time of the meeting. No proxy shall be valid after eleven (11) months from the date of its execution, unless otherwise provided in the proxy.

Section 2.13    Action by Members Without a Meeting. Any action required or permitted to be taken at a meeting of the members may be taken without a meeting if each member entitled to vote with respect to the subject matter thereof has executed a written consent describing the action taken.

-2-

ALEX000508

Section 2.14    Telephonic Meeting.    Members of the company may participate in any meeting of the members by means of conference telephone or similar communication, if all persons participating in such meeting can hear one another for the entire discussion of the matters to be voted upon. Participating in a meeting pursuant to this Section shall constitute presence in person at such meeting.

Section 2.15    Voting by Ballot.    Voting on any question or in any election may be by voice vote unless the presiding manager shall order, or any member shall demand, that voting be by ballot.

Section 2.16    Information and Accounting.    A member shall have the right to:

(a)    Inspect and copy company records required to be kept under Section 3.7 below;

(b)    Have a formal accounting of the company affairs whenever circumstances render it just and reasonable;

(c)    Obtain from the managers, from time to time, subject to reasonable demand for any purpose reasonably related to the member's interest as a member;

(i)    True and full information regarding the state of business and financial condition of the company and any other information regarding the affairs of the company; and

(ii)    Promptly after becoming available a copy of the company's federal, state and local income tax returns for each year.

Section 2.17    Resignation.    A member may resign at any time by written notice to the other members but such resignation shall not entitle the resigning member to receive the fair value of his or her member interest in the company. After resignation, the resigning member shall have only the rights of a transferee not admitted as a member.

## ARTICLE 3 - MANAGEMENT

Section 3.1    Managers.    Management of the company's business and affairs shall be vested in the manager, except as otherwise provided herein or as provided by law, or the Articles of Organization. The single manager shall be Michael Alexander.

Section 3.2    Removal of Managers.    At a meeting expressly called for that purpose, all managers or a lesser number may be removed, with or without cause, by a vote of a majority in interest of members then entitled to vote at an election of managers.

Section 3.3    Resignation of Manager.    Any manager may resign at any time by giving written notice to the other manager or managers then holding office. Such resignation shall take effect upon receipt of notice thereof or at such later time as shall be specified in such notice; and unless otherwise specified therein, the acceptance of such resignation shall not be necessary to make it effective. When one or more managers then holding office, including those who have so resigned, shall have power to fill such vacancy or vacancies, the vote thereon to take effect when such resignation(s) shall become effective.

Section 3.4    Vacancies.    Any vacancy occurring in the group of managers may be filled by written agreement of a majority of the remaining managers. A manager chosen to fill a vacancy shall serve the unexpired term of his or her predecessor in office. Any manager's

-3-

ALEX000509

position to be filled by reason of an increase in the number of managers shall be filled by election at an annual meeting or at a special meeting of members called for that purpose. A manager chosen to fill a position resulting from an increase in the number of managers shall hold office until the next annual meeting of members and until his successor has been elected and qualified.

Section 3.5   <u>Powers and Duties of Managers.</u>  Each manager is an agent of the company for the purpose of its business and the act of one manager shall bind the company. No debt shall be contracted or liability incurred by, or on behalf of, the company, except by one or more of its managers. A manager shall perform his or her duties in good faith, in a manner he or she reasonably believes to be in the best interests of the company and with such care as an ordinarily prudent person in like position would use under similar circumstances. A person who so performs his or her duties shall not have any liability by reason of being of having been a manager of the company.

Section 3.6   <u>Management Services.</u>  For their services as managers in managing the initial and ongoing affairs of the company, the managers shall be paid a management fee out of the preferred capital for their initial five-year term as managers, commensurate to the reasonable value of the service rendered by them to the Company.

Section 3.7   <u>Records.</u>  The managers shall keep, at the principal office of the company, which are subject to inspection and copying at the reasonable request and at the expense of any member during ordinary business hours:

(a)     A current list of the full name and last known address of each member and manager, both past and present;

(b)     A copy of the Articles of Organization, and all amendments thereof, together with executed copies of any powers of attorney pursuant to which any amendment has been executed;

(c)     Copies of the company's federal, state and local income tax returns and reports for the three most recent years;

(d)     Copies of any currently effective operating agreements, copies of any writings permitted or required under Section 7-80-502 of the Act (regarding members' obligations to contribute cash or property, or perform services) and copies of any financial statements of the company for the three most recent years;

(e)     Minutes of every annual and special meeting of members and any meeting ordered by a court pursuant to Section 7-80-707 of the Act and any written consents obtained from members.

(f)     Unless otherwise contained herein or in a writing permitted or required under Section 7-80-502 of the Act, a statement prepared and certified as accurate by a manager of the company which describes:

(i)     The amount of cash and a description and statement of the agreed value of the other property or services contributed by each member and which each member has agreed to contribute in the future;

-4-

ALEX000510

(ii)  The terms at which or events on the happening of which any additional contributions agreed to be made by each member are to be made.

(iii)  If agreed upon, the terms at which or events on the happening of which a member may terminate his membership in the company and the amount of, or method of determining, the distribution to which he or she may be entitled respecting his or her membership interest and the terms and conditions of the termination and distribution; and

(iv)  Any right of a member to receive distributions which include a return of all of any part of a member's contribution.

### ARTICLE 4 - FINANCE

Section 4.1  <u>Liability of Members and Managers.</u>  Members and managers are not liable, in any manner, for a debt, obligations or liability of the company.

Section 4.2  <u>Capital Contributions.</u>  The members have made the contributions set forth above in cash or property. The members have not agreed to make any additional contributions. No additional contributions shall be required unless all members agree in writing to make such additional contributions.

Section 4.3  <u>Preferred Capital Contributions.</u>  One or more of the members have made contributions to the operating capital of the company, as set forth above in Section 2.1. These contributions shall be treated as preferred contributions of the contributing party and shall entitle the contributing party to preferred guaranteed payments from the profits of the company as hereinafter provided.

Section 4.4  <u>Sharing of Profits and Losses.</u>  The profits and losses, together with all other income, gain, loss or deduction (or item thereof) shall be allocated as follows:

(a)  The profits of the company shall be allocated among the members in proportion to their interests in the company.

(b)  The losses of the company, if any, shall be allocated pro rata among the members in proportion to their positive capital accounts.

(c)  Any federal, state or local tax credits shall be allocated to the members who were, or will be, charged with the expenses or deductions that generated the credit.

(d)  In the event any member contributes real or personal property to the company, the member's distributive shares of income, gain, loss and deduction shall be determined so as to take account of the variation between the adjusted tax basis and the fair market value of such property as required by Treasury Regulations.

(e)  In no event shall losses be allocated in a manner other than as allowed by applicable Treasury Regulations.

Section 4.5  <u>Capital Accounts.</u>  A separate capital account shall be maintained for each member in accordance with Treasury Regulations.

Section 4.6  <u>Distributions.</u>  After making reasonable reserves as determined by the managers, at least annually, all available funds shall be distributed to members as follows:

-5-

ALEX000511

(a)     To the extent that any members have made preferred capital contributions to the company, the distributions to the company members shall first be made to the preferred capital holders in an amount not to exceed the total amount of the preferred capital contributions on a pro rata basis to retire or redeem the preferred capital interests.

(b)     Thereafter, in proportion to and to the extent of each member's ownership interest in the company.

Section 4.7     (Reserved)

Section 4.8     Distribution Upon Dissolution. After dissolution and satisfaction of the company's liabilities, the assets of the company shall be distributed first to the holders of preferred capital interests to the extent that there are preferred capital interests which have not been retired and second to members in proportion to, and to the extent of, their capital accounts. In the event assets are to be distributed which exceed members' capital accounts, the excess shall be distributed to members in proportion to their interests in the company.

Section 4.9     Limitations on Distribution. A member may not receive a distribution from the company to the extent that, after giving effect to the distribution, all liabilities of the company, other than liabilities to members on account of their membership interests, would exceed the fair value of the company assets. Furthermore, if a member receives a return on any part of his contribution, the Act makes the member liable, under certain circumstances, to the company for such returned contribution.

Section 4.10     Business Transactions With the Company. Any member or manager may lend money to, act as surety for, and transact business with the company and has the same rights and obligations with respect thereto as a person who is not a member or manager; except this Section shall not be construed to relieve a manager from any of his or her duties as specified above.

Section 4.11     Company Property. Real and personal property owned or purchased by the company shall be held and owned in the company name.

Section 4.12     Indemnification. The company shall indemnify to the extent allowed by the Act, against liability incurred in any proceeding an individual made a party to the proceeding because he or she is or was a manager.

Section 4.13     Fiscal Year. The fiscal year of the corporation shall be the calendar year.

## **ARTICLE 5 - DISSOLUTION**

Section 5.1     Events Causing Dissolution. The company shall be dissolved upon the occurrence of any of the following events:

(a)     When the period fixed in the Articles of Organization for the duration of the company expires;

(b)     By the unanimous written agreement of the members; or

(c)     Upon the death, retirement, resignation, expulsion, bankruptcy or dissolution of a member, or the occurrence of any other event which terminates the continued membership of a member in the company, unless there are at least two remaining members and

-6-

ALEX000512

the business of the company is continued by the written consent of all the remaining members within ninety (90) days after the termination.

Section 5.2    Effect of Dissolution. As soon as possible following the occurrence of any event causing the dissolution of the company, managers shall execute a statement of intent to dissolve and file it with the Nevada Secretary of State. The filing of the statement shall not affect the limited liability of members. Upon such filing, the company shall cease to carry on its business, except insofar as may be necessary for the winding up of its business, but its separate existence shall continue until the articles of dissolution have been filed with the Nevada Secretary of State.

## ARTICLE 6 - AMENDMENTS, REFERENCES

Section 6.1    Amendments. This Operating Agreement may be amended only by the affirmative vote of two-thirds (2/3) of the members.

Section 6.2    References. All references herein to the "Act" are to the Nevada Limited Liability Company Act.

## ARTICLE 7 - LOANS

Section 7.1    Borrowings Authorized. Borrowings by the company may be made from any source, including members and affiliated persons of members; provided, however, that such borrowings will be approved by the unanimous consent of the managers.

Section 7.2    Amounts Prior to Date of Agreement All payments made to the company prior to the date of this Agreement, whether designated or in fact made as advances or loans to the company, or in any other similar manner, shall not be treated as or deemed, for any purpose of this Agreement or otherwise, to be an advance or a loan to or debt of the company, but all such payments shall be treated as and shall be deemed, for all purposes of this Agreement and otherwise, to be payments of capital contributions or preferred capital contributions by the members, notwithstanding any prior agreements, promises or understandings and not withstanding any instrument or document evidencing any such payments.

Section 7.3    Loans After the Date of this Agreement. After the date of this Agreement, if any member shall loan any monies to the company, such amount shall be clearly designated as a loan and shall be approved by the unanimous consent of the managers and the managers shall sign a note or other evidence of the loaned money. The amount of any such loan which has been clearly designated as a loan shall not be considered an increase of any member's capital contribution or treated as a preferred capital contribution, or affect, in any way, any member's share of the profits, losses or distributions of the company. The amount and terms of any such loan, as determined in the sole discretion of the managers, shall be an obligation of the company to such member or the affiliated person of such member.

This Operating Agreement is signed by each initial member effective on May $\cancel{\mathcal{Q}^{h}}$ 2018.

SMASH TECHNOLOGY, LLC

Michael Alexander

-7-

ALEX000513

Michael Alexander, Manager

-8-

ALEX000514