MATTHEW C. BARNECK [5249]
ZACHARY E. PETERSON [8502]
KRISTINA H. RUEDAS [14306]
RICHARDS BRANDT MILLER NELSON
*Attorneys for Defendants and Counterclaim Plaintiffs*
Wells Fargo Center, 15th Floor
299 South Main Street
P.O. Box 2465
Salt Lake City, Utah  84110-2465
Email: matthew-barneck@rbmn.com
　　　　zachary-peterson@rbmn.com
　　　　kristina-ruedas@rbmn.com
Telephone: (801) 531-2000
Fax No.: (801) 532-5506

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SMASH TECHNOLOGY, LLC, a Nevada limited liability company; and MICHAEL ALEXANDER, an individual;<br><br>　　Plaintiffs,<br>vs.<br><br>SMASH SOLUTIONS, LLC, a Delaware limited liability company; JERRY "J.J." ULRICH, an individual; and JOHN DOES 1-3;<br><br>　　Defendants. | **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** |
| SMASH SOLUTIONS, LLC, a Delaware limited liability company; JERRY "J.J." ULRICH, an individual; and JOHN DOES 1-3;<br><br>　　Counterclaim Plaintiffs,<br>vs.<br><br>SMASH TECHNOLOGY, LLC, a Nevada limited liability company; and MICHAEL ALEXANDER, an individual;<br><br>　　Counterclaim Defendants. | Civil No. 2:19-cv-00105-TC<br><br>Judge Tena Campbell |

Defendant Smash Solutions, LLC ("**Solutions**"), through its counsel of record Matthew C. Barneck, Zachary E. Peterson, and Kristina H. Ruedas of RICHARDS BRANDT MILLER NELSON, respectfully submit the following Reply Memorandum in support of its Motion for Partial Summary Judgment filed May 24, 2019 (Doc. 32).

## PRELIMINARY STATEMENT

In opposing Solutions' Motion, Plaintiffs have misconstrued the relief it seeks. The Motion was filed by Solutions and seeks a determination, as a matter of law, that it never transferred the intellectual property at issue (the "**Intellectual Property**") to Smash Technology, LLC ("**Technology**"). Plaintiffs offer no evidence to dispute the assertion that the transfer never occurred. Instead, Plaintiffs opposition focuses on two concepts: (1) alleged contributions, largely financial, that Plaintiff Michael Alexander ("**Alexander**") made to either Solutions or Technology, and (2) negotiations between Alexander and Defendant Jerry J. Ulrich ("**Ulrich**") concerning a joint business venture. Neither point, however, controverts the narrow bases for Solutions' Motion or otherwise establishes a genuine dispute of material fact.

First, Alexander may have acquired some kind of "interest," such as an ownership interest in Solutions as an entity, or he may be entitled to damages or other relief against Solutions or Ulrich if he prevails. Solutions' Motion, however, does not seek a decision about the nature or the extent of Alexander's financial or non-monetary contributions to the development of the Intellectual Property, or the claims or interest he may be entitled to pursue because of his contributions or work. Any interest he might claim could only be an interest in Solutions as an entity. The possibility of such an interest is not evidence that the Intellectual Property was transferred to Technology.

Second, Plaintiffs do not allege or assert that Solutions or Technology are parties to any agreement obligating Solutions to transfer the Intellectual Property to Technology. Instead, the allegations in Plaintiffs' pleadings and their Opposition (Doc. 37) only allege an agreement between Alexander and Ulrich. Therefore, Technology's claim of ownership must fail. As a matter of law, no agreement exists which, if enforceable, would require Solutions to transfer the Intellectual Property.[1] For these reasons, Solutions is entitled to the relief sought in its Motion for Partial Summary Judgment.

## STATEMENT OF FACTS

Plaintiffs try to dispute some of the statements of facts in Solutions' Motion. As shown below, however, they have failed to establish a genuine issue of material fact regarding the narrow issues of whether Solutions transferred its Intellectual Property to Technology or whether an enforceable agreement exists requiring it to be transferred. Instead, each attempt to create an issue of fact goes to whether Alexander or Technology may have a claim for breach of contract, a claim of unjust enrichment, or some enforceable right or interest in Solutions as an entity. None of Plaintiffs' responses identify a genuine dispute of material fact that would preclude Solutions' Motion for Partial Summary Judgment. Pursuant to DUCivR 56-1, Solutions includes a brief response below regarding the statements of fact challenged in Plaintiffs' Opposition:

5. Plaintiffs' response demonstrates that Alexander and/or Technology may have made financial contributions toward the development of the Intellectual Property. The evidence they attach, however, does not raise a genuine factual issue about whether the Intellectual

---

[1] The Opposition also does not challenge Defendants' argument that specific performance is not available as a remedy to the Plaintiffs. (Doc. 32 at 13-14; *see generally* Doc. 37.)

3

Property was transferred to Technology or whether an enforceable agreement exists requiring Solutions to transfer it.

7. Part 1 of Plaintiffs' response to this paragraph demonstrates that Alexander and Ulrich had business dealings, and asserts there was an agreement between them. Solutions, however, was not a party to this agreement, as Plaintiffs have argued emphatically. Ironically, in addressing the nature of the alleged agreement between Ulrich and Alexander, Plaintiffs for the first time in this case assert that Ulrich and Alexander would be "equal partners" in Technology. Yet Plaintiffs' own pleadings, argument, and evidence demonstrate without question that Alexander is the sole member and manager of Technology. (*See* Doc. 32-4 at 1; Doc. 36-1, ¶9.) Defendants concede that Ulrich and Alexander had business dealings together, and for purposes of this Motion agree that such dealings may support a claim against or some sort of interest in Solutions as an entity. Regardless, the alleged agreement between Ulrich and Alexander is not binding on either Solutions or Technology as neither entity was a party to it.

With respect to Part 2, a monetary contribution may create some sort of claim against or interest in Solutions. But this Motion does not seek to adjudicate the nature or extent of any such claim or interest. A monetary contribution is not evidence that the Intellectual Property was transferred or that an agreement exists requiring Solutions to transfer it.

The evidence referenced in Part 3 does not show that Solutions was a party to the agreement between Technology and Feracode. Accordingly, this evidence also does not demonstrate that the Intellectual Property was transferred to Technology or that an agreement exists requiring Solutions to transfer it.

Regarding Part 4, this Motion does not seek to adjudicate the nature or extent of Alexander's financial contributions or to whom they were made. This evidence does not establish that the Intellectual Property was transferred to Technology or that Solutions was party to an agreement requiring it to transfer it.

8. This statement of fact merely asserts that Ulrich and Solutions started work on the Intellectual Property before Alexander became involved and before Technology was created. None of Plaintiffs' cited evidence disputes this statement of fact.

21. *See* Responses to paragraphs 5, 7, and 8.

18. *See* Response to paragraph 7, Part 1.

20. Alexander lacks personal knowledge to contest the stated grounds for Feracode's termination of the Technology-Feracode agreement. Solutions objects to this Response in that it is not admissible evidence. *See* Fed. R. Civ. P. 56(c)(2). Regardless, the nature of the relationship between Technology and Feracode does not establish that Solutions transferred the Intellectual Property to Technology or that Solutions was party to an agreement requiring it to do so.

22. Plaintiffs offer no evidence to contradict Defendants' assertion that Solutions did not transfer the Intellectual Property to Technology. Further, Plaintiffs offer no evidence to demonstrate an agreement exists that would require Solutions to transfer it.

In summary, Solutions' Motion does not ask the Court to decide whether Alexander or Technology have a claim against or some sort of interest in Solutions as an entity, and Plaintiffs have failed to offer evidence precluding the relief sought in this Motion.

## ARGUMENT

### POINT I

### ADDITIONAL SUMMARY JUDGMENT STANDARDS.

The law of the Tenth Circuit holds that "conclusory allegations are insufficient to defeat [an] adequately supported motion" for summary judgment. *Milton v. Scrivner, Inc., et al.,* 53 F.3d 1118, 1125 (10th Cir. 1995). "We do not consider conclusory and self-serving affidavits." *Ellis, et al. v. J.R.'s Country Stores, Inc.,* 779 F.3d 1184, 1201 (10th Cir. 2015); *see also Garrett v. Hewlett-Packard Co.,* 305 F.3d 1210, 1212 (10th Cir. 2002); Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated").

A related principle holds that "if the nonmovant bears the burden of persuasion on a claim at trial, summary judgment may be warranted if the movant points out a lack of evidence to support an essential element of that claim and the nonmovant cannot identify specific facts that would create a genuine issue." *Water Pik, Inc. v. Med-Systems, Inc.,* 726 F.3d 1136, 1143-44 (10th Cir. 2013). In *Water Pik,* the Court concluded that Med-Systems, as the party alleging infringement and unfair competition, "bears the burden of proving a likelihood of confusion at trial." *Id.* at 1144. Because Med-Systems "failed to raise a genuine factual issue," the Tenth Circuit affirmed summary judgment against it. *Id.* at 1160.

As shown below, Plaintiffs rely heavily upon conclusory statements in the Declaration of Michael Alexander that Technology owns or has some interest in the Intellectual Property at issue. Technology bears the burden of persuasion at trial as to any ownership of or enforceable

rights in the Intellectual Property, because such rights are a prerequisite to Plaintiffs' Lanham Act causes of action, among others. (*See* Complaint, Sixth and Seventh Causes of Action). The facts and law set forth in the Motion (Doc. 32) and in this Reply show "that the materials cited do not establish the … presence of a genuine dispute," Fed. R. Civ. P. 56(c)(1)(B), and therefore summary judgment should be granted.

## POINT II

### PLAINTIFFS PRESENT NO ADMISSIBLE EVIDENCE OF AN INSTRUMENT IN WRITING THAT TRANSFERRED OWNERSHIP.

Solutions' Motion (Doc. 32) is properly supported by evidence showing that Solutions did not transfer the Intellectual Property at issue. In addition, the evidence demonstrates that no written agreement or instrument exists that would legally obligate Solutions to transfer the Intellectual Property to Technology. In response, Plaintiffs fail to "set out facts that would be admissible in evidence" to show the presence of a genuine dispute. Fed. R. Civ. P. 56(c)(4). They do not dispute that Solutions owned the Intellectual Property originally. (*See* Complaint, ¶¶11, 12, 84.) They simply contend ownership was later transferred to Technology. Yet Plaintiffs point to no evidence showing the Intellectual Property was actually transferred. They do not cite to a purchase and sale agreement, a license, an assignment of interests, a bill of sale, or any other instrument in writing that purports to transfer ownership. Plaintiffs do not even contend that such a document exists. (*See generally,* Doc. 38.)

     A.    **Plaintiffs Do Not Satisfy The Writing Requirement.**

In support of its Motion for Partial Summary Judgment, Solutions cites to a "writing requirement" for the transfer of intellectual property such as a trademark or a copyright. (*See*

Doc. 32 at 15-17.)  Specifically, the Lanham Act declares that an assignment of rights relating to a trademark "*shall be by instruments in writing duly executed*."  15 U.S.C. §1060(3) (emphasis added).  One important purpose of the writing requirement is to enhance the "predicability and certainty of ownership."  *Federal Treasury Enterprise Sojuzplodoimport, et al., v. SPI Spirits Limited, et al.*, 726 F.3d 62, 74 (2nd Cir. 2013).  In *SPI Spirits*, the Second Circuit found "no such writing in the record before us, nor is such a writing adequately alleged in the Complaint."  *Id.*  So it concluded the plaintiff was not an assign under the requirements of the Lanham Act and affirmed dismissal of the complaint.  *Id.* at 85.

Plaintiffs' Opposition does not even acknowledge these legal authorities, much less try to dispute or distinguish them.  Because they assert Lanham Act claims, however, the Act's writing requirement applies.  It is undisputed that Solutions began developing the Intellectual Property before Alexander's business dealings with Ulrich and before Technology was formed.  As such, it is undisputed that Solutions was the original owner of the Intellectual Property.  To assert a claim against Solutions under the Lanham Act, Plaintiffs must comply with the Act's requirements, one of which is a written instrument establishing ownership.

Plaintiffs do not cite to any evidence of such a writing.  The Court should accept and apply the writing requirement in this case and should conclude as a matter of law that there is no written instrument.  Therefore, the Court should rule as a matter of law that ownership of the Intellectual Property was never transferred to Technology but remains with Solutions.

**B.     Plaintiffs Bear the Burden to Prove Ownership or Another Interest.**

Plaintiffs bear the burden to prove ownership or other protectable rights in the Intellectual Property, and each of their Lanham Act claims is based upon allegations that Technology is the

8

owner.[2] They allege false advertising and false designation of origin under 15 U.S.C. §1125(a)(1)(B) (*see* Complaint, Sixth Cause of Action) and also unfair competition under 15 U.S.C. §1125(a)(1)(A). (*See* Complaint, Seventh Cause of Action.) "False advertising claims arising under 15 U.S.C. §1125(a)(1)(B) must show that the holder of a valid trademark has sustained a competitive injury from a defendant's illicit use of the trademark in advertising that misrepresents plaintiff's goods." *Jurin v. Google, Inc.*, 768 F. Supp.2d 1064, 1072 (E.D. Cal. 2011). When a plaintiff cannot prove ownership or "an enforceable trademark right," the claim of false advertising fails. *Black Diamond Land Management LLC v. Twin Pines Coal Inc., et al.*, 707 Fed. Appx. 576, 579-81 (11th Cir. 2017) (unpublished disposition).

A false designation of origin claim under 15 U.S.C. §1125(a)(1)(B) also "require[s] a trademark owner to prove that it has ownership or rights in the trademark." *Community of Christ Copyright Corp., et al. v. Devon Park Restoration Branch of Jesus Christ's Church, et al.*, 634 F.3d 1005, 1008 (8th Cir. 2011); *see also Military Certified Residential Specialist, LLC, et al. v. Fairway Independent Mortgage Corp.*, 251 F. Supp.3d 750, 756 (D. Del. 2017) ("a plaintiff must demonstrate that … plaintiff owns the mark"). Likewise, to prove a claim of unfair competition under Section 1125(a)(1)(A), a plaintiff must demonstrate that it "owns … the mark." *Checkpoint Systems, Inc. v. Check Point Software Technologies, Inc.*, 269 F.3d 270, 279 (3rd Cir. 2001); *Military Certified Residential Specialist*, 251 F. Supp.3d at 756 (same).

---

[2] Plaintiffs have since moved to amend their complaint (*see* Docs. 36 and 36-1), and the proposed amended pleading still alleges that Technology owns or has other rights in the Intellectual Property. For example, the proposed new Lanham Act claims allege the unauthorized use of "descriptions and images that pertain solely to <u>Technology's CRM Platform</u>" (<u>Doc. 36-1</u>, ¶65 (emphasis added)); "… lost sales and dilution of <u>Technology's brand and technology</u>" (<u>Doc. 36-1</u>, ¶66 (emphasis added)); false or misleading advertising that implies Solutions or Innovations "is the owner and operator of <u>the CRM Platform and related intellectual property that is actually associated with Technology</u>." (<u>Doc. 36-1</u>, ¶67 (emphasis added)); and "products and services <u>wholly owned by Technology</u> …." (<u>Doc. 36-1</u>, ¶71 (emphasis added).)

In *Water Pik*, the Tenth Circuit affirmed summary judgment against a party alleging trademark infringement and unfair competition who bore "the burden of proving a likelihood of confusion at trial," *Water Pik*, 726 F.3d at 1143-44, because it "failed to raise a genuine factual issue …." *Id.* at 1160.  Similarly, the Plaintiffs in this case have failed to raise a genuine factual issue as to ownership or other rights in the Intellectual Property, *i.e.* they have failed "to establish the … presence of a genuine dispute …." Fed. R. Civ. P. 56(c)(1)(B).  Summary judgment should be granted against the Plaintiffs on the narrow issue of ownership.

## POINT III

**PLAINTIFFS CONCEDE THAT SOLUTIONS ORIGINALLY OWNED THE INTELLECTUAL PROPERTY, AND FAIL TO DEMONSTRATE THAT OWNERSHIP WAS TRANSFERRED TO TECHNOLOGY.**

This Motion presents a narrow two-part issue for decision: whether Solutions transferred the Intellectual Property to Technology and whether Solutions was legally obligated to transfer it.  Plaintiffs concede that "Solutions developed a limited beta model" of the software.  (Doc. 37 at 7, 16, 23, and 25.)  Although Defendants disagree with this characterization of the degree of development, Plaintiffs' concession nevertheless establishes that Solutions owned the Intellectual Property in the beginning.  And unless there is viable evidence of a transfer, Solutions still owns it.  The Motion asserts with proper factual support that ownership of the Intellectual Property was never transferred to Technology.  (*See* Declaration of Jerry J. Ulrich (Doc. 33), ¶¶7, 16 ("Solutions owns all intellectual property rights … to the software … and it has never transferred the [Intellectual Property] to Technology"); *see also* Declaration of Matthew C. Barneck (Doc. 34), ¶3 (the documents Plaintiffs have produced include "no purchase and sale agreement, no license, no assignment of interests, no bill of sale, and no other instrument in writing

10

purporting to effect a transfer to Technology of any rights in the Intellectual Property at issue in this case").)

The Opposition fails to controvert this narrow point.  In fact, Plaintiffs concede there is no writing "duly executed" that evidences a transfer of ownership.  About a month before this action was filed, on December 19, 2018, Alexander told Ulrich that "Sterling [Kerr] has the formal agreement for the Intellectual Property and has for some time.  You just need to give him the complete list and everything else he requested to be incorporated into it *so he can finalize it*."  (Doc. 38-23 at 2 (emphasis added); *see also* Doc. 38-1, ¶73.)  It is significant that Plaintiffs did not attach this supposed draft agreement to their Opposition (*see* Doc. 38); nor have they produced a copy to the Defendants.  (*See* Barneck Decl. (Doc. 34), ¶3.)

Plaintiffs' Opposition indirectly responds to the Motion with arguments that rely heavily upon the Alexander Declaration, which repeatedly asserts in conclusory fashion that Technology owns or has an interest in the Intellectual Property.  (*See generally,* Doc. 38-1.)  For example, the Opposition argues over and over that Plaintiffs "have rights, interests, and ownership in, and/or control of" the Intellectual Property (Doc. 37 at 4, 6, 8, 17, 22, 25, 29, 31, and 36), but they present no documentary evidence of an ownership interest.  Rather, the alleged financial contributions might create a claim against or an interest (ownership or otherwise) in Solutions as an entity, which in turn owns and possesses the Intellectual Property.  Mainly, the Opposition addresses Alexander's alleged financial investments and the statements of Alexander and Ulrich about a "partnership" or other business venture.  These arguments might support Alexander's claim for damages or some other remedy for the money he expended.  But evidence of such payments – even if they *were* made to Technology – do not indicate a transfer of the Intellectual

11

Property to Technology.[3]  Such evidence also does not create an enforceable agreement that would legally require Solutions to transfer the Intellectual Property to Technology.  And these two points are the focus of Solutions' Motion.

Defendants do not concede that Alexander or Technology have any ownership interest in Solutions but reserve that issue for later determination.  Yet even assuming for the sake of argument that one or both of them were members, they would have no claim to direct ownership of Solutions' assets.  It is fundamental that the "property of the corporation is its property and not that of the shareholders as owners …."  1 FLETCHER CYC. CORP. §31; *see also Cohen v. State ex. rel. Stewart, et al.*, 89 A.3d 65, 95 (Del. 2014) (stockholder has no "claim over any specific asset of" corporation);[4] *Dansie, et al. v. City of Herriman, et al.*, 2006 UT 23, ¶¶3-8, 134 P.3d 1139 (shareholders do not own assets of corporation).  The same principle applies to members of limited liability companies.  "[T]he interest of a member in the LLC is analogous to shareholders of a corporation.  A member usually contributes personal property and has no interest in specific assets owned by the LLC."  *Poore v. Fox Hollow Enterprises*, 1994 WL 150872, *2 (Del. 1994) (unpublished disposition); *see also* DEL. CODE ANN. §18-701 (a "member has no interest in

---

[3] Alexander's evidence of financial investment is far from clear.  The only record of an actual deposit in a bank account is Plaintiffs' Exhibit F, which shows a $60,000 wire transfer from an individual in Jakarta to the account of *Solutions*, not Technology, at America First Credit Union in South Jordan, Utah.  (*See* Doc. 38-7.)  Plaintiffs do not identify the sender – Prayektis Hartati – or his/her connection, if any, to Alexander.  This deposit was made on February 6, 2018 (*id.*; Doc. 38-1, ¶30), before Technology was even formed (*see* Doc. 32-3), so it could not have been a transfer to Technology.  Then, Alexander attaches several wire transfers to Feracode made by *Ulrich* (*see* Doc. 38-27), not Alexander, and one unreadable Wells Fargo transaction receipt.  (*See* Doc. 38-26.)  The declaration also says there were "two cash wires in the amount of $100,000" with no indication of when or to whom they were made, and no documentation to support them.  (Doc. 38-1, ¶12.)  Finally, Alexander proffers several invoices purportedly sent to Technology with no evidence of who paid them, or if they were paid at all.  (*See* Docs. 38-28 and 38-29.)

[4] Solutions was formed as a Utah limited liability company and later converted to a Delaware limited liability company.  (Doc. 27 at 14.)

specific limited liability company property"). Moreover, Solutions' Operating Agreement states: "Legal title to all property of the Company shall be held and vested and conveyed in the name of the Company, and no real or other property of the Company shall be deemed to be owned by any Member individually unless otherwise agreed by the Members or as the actual situation requires." (*See Ex. 7*, at Section 2.10.)[5]

Defendants agree there were discussions between Ulrich and Alexander about forming a business venture together and that steps were taken on both sides to pursue that goal. But for several reasons, the venture did not materialize and ownership of the Intellectual Property was not transferred. Two of those reasons are these. First, Technology was never formed as a *joint* business venture but only as a "Single Member limited liability company …." (*See* Doc. 32-4 at 1.) To this day Alexander is the only member. (*See* Doc. 36-1 (proposed Amended Complaint), ¶9 ("Michael Alexander is currently the sole member and manager of Technology").) When Alexander formed Technology in that manner, he eliminated any agreed consideration to Ulrich or Solutions, who received no ownership interest in the venture. Solutions would have been unwise indeed to transfer ownership of the Intellectual Property to an entity solely owned by Alexander, in exchange for Alexander's illusory agreement to fund his own entity.

Second, Technology never established a bank account. Alexander was supposed to fund Technology, but there could be no such funding, and no reliable record of funding, if Technology

---

[5] This exhibit is numbered sequentially following *Exs. 1-6* attached to the Motion.

did not have a bank account to receive the funds. Hence, Plaintiffs identify no documentary evidence of any payment or transfer of funds actually made to Technology.[6]

If the Court were being asked to decide Alexander's claim for damages, an ownership or other interest in Solutions itself, or some other remedy for his financial investment, Defendants agree that issues of fact would preclude summary judgment. But this Motion does not seek adjudication of those issues, only a ruling on the question of who owns the Intellectual Property, and on that narrow issue the facts are undisputed.

Plaintiffs also try to draw a distinction between a "limited beta model" of the software, as they call it (Doc. 37 at 7, 16, 23, and 25), and the supposed "new" or "developed CRM platform" (*id.* at 7, 9, 12, 17) in which they claim "rights, interests, and ownership in, and/or control …." (*Id.* at 4, 6, 8, 17, 22, 25, 29, 31, and 36.) This contention illogically assumes that further work by Feracode somehow effected a transfer of the Intellectual Property to Technology, even though Plaintiffs concede there is no "instrument[] in writing duly executed." 15 U.S.C. §1060(3). Their argument might relate to Alexander's claims for damages or unjust enrichment for the

---

[6] Another reason the venture did not materialize is Alexander's failure to provide sufficient funding to service the Feracode contract or to support business operations. Plaintiffs' own Exhibit W shows that in text messages during much of 2018, Ulrich repeatedly asked and even begged Alexander to help with Feracode payments and operational expenses. (*See* Doc. 38-24 at 4 (6/15/18 – "I had to pay the other payment for [F]eracode"); Doc. 38-24 at 6 (7/6/18 – "I have been using everything I have had to cover obligations and to cover the payment I sent [last] time"); Doc. 38-24 at 7 (8/14/18 – "Fera code [sic] has been 20k a week"); Doc. 38-24 at 8 (8/14/18 – "Michael we are doing this entire process without even paying most of these [employees]. They are paid by shares of Smash. I have no accounting firm, I have limited resources and I navigate everything that is happening with 4 people"); Doc. 38-24 at 15 (9/15/18 – "I have put off [F]eracode as long as I can. … I have been making the payments I can with all the money I have access to"); Doc. 38-24 at 16 (11/5/18 – "They pushed back Smash development because of missed payments"); Doc. 38-24 at 17 (11/23/18 – "I made another 29k payment to [F]eracode which got them through this week but we need to use an alternate solutions [sic] or send out the ppm we did"); Doc. 38-24 at 23 (12/10/18 – "Michael are you in a position to support on the final payment to Feracode?"). Alexander's response on December 11, 2018 to the last request was: "Of course I can cover it, but first we have things to address." This included "an accounting firm to audit and provide a [sic] verified and certified financials." (Doc. 38-24 at 23.)

money expended, or it might suggest he is entitled to some kind of interest in Solutions as an entity. But it cannot establish ownership of the Intellectual Property.

Alexander's declaration also says Ulrich told him that the Intellectual Property had been transferred to Technology, and based on that representation he signed the Feracode-Technology agreement on March 13, 2018. (Doc. 38-1, ¶7.) The premise of this allegation is illogical – if the Intellectual Property had been transferred to Technology, a company wholly owned by Alexander, then he would know of the transfer independently and would have no need to rely upon a supposed "representation" from Ulrich. The argument is an implicit admission that Plaintiffs are not aware of any instrument in writing reflecting a transfer of ownership. This contention may be relevant to Plaintiffs' breach of contract claim, but it cannot defeat Solutions' Motion for Partial Summary Judgment on the issue of ownership of the Intellectual Property.

Plaintiffs next say they did not receive "notice of Feracode's purported termination of its agreement with Smash Technology in January 2019 and disputes [sic] any alleged reasons for such termination …." (Doc. 37 at 26.) Feracode's stated reasons were the "serious delinquency of the payments and final transfer of the Intellectual Property not being completed from Jerry Ulrich and Smash Solutions …." (Doc. 32-6 at 1.) Yet Plaintiffs do not state any support for their dispute of these grounds for termination; they simply say neither Alexander nor Technology received the notice from Feracode. They fail to "identify specific facts that would create a genuine issue." *Water Pik*, 726 F.3d at 1143-44. As a result, their unsupported "dispute" cannot defeat summary judgment. *See* Fed. R. Civ. P. 56(c)(1)(B).

Plaintiffs also do not raise a genuine factual issue regarding the assertions that Solutions entered an agreement with Feracode in January 2018 (Doc. 32, *Ex. 2*) that has never been

cancelled and remains in force, or that Solutions continues to make payments to Feracode pursuant to that agreement. (Doc. 32 at 6; *see* Doc. 37 at 21-23.)

For all of these reasons, the Court should conclude that Plaintiffs have failed to raise a genuine issue of material fact regarding the narrow grounds for Solutions' Motion for Partial Summary Judgment, and should rule that Solutions still owns the Intellectual Property.

## POINT IV

### PLAINTIFFS' RULE 56(d) REQUEST IS IMPROPER AND UNSUPPORTED.

In the alternative, Plaintiffs make a Rule 56(d) request that the Court deny Solutions' Motion for Partial Summary Judgment until further discovery is completed. This request should be rejected for two reasons.

First, the 56(d) request is procedurally improper under the Local Rules. Rule 7-1(b)(1)(a) states: "No motion, including but not limited to cross-motions and *motions pursuant to Fed. R. Civ. P. 56(d)*, may be included in a response or reply memorandum. Such motions must be made in a separate document." DUCivR 7-1(b)(1)(a) (emphasis added). Plaintiffs state their request in the Opposition (Doc. 37 at 37), with no separate motion to which a separate response can be filed. Thus, Plaintiffs' 56(d) request is procedurally improper and should be rejected as such.

Second, the request fails substantively because it does not identify how Plaintiffs' pending or future discovery will rebut the narrow issue presented in Solutions' Motion. Rule 56(d) "requires that the party seeking to invoke its protection *state with specificity* how the additional material will rebut the summary judgment motion. A party may not invoke [Rule 56(d)] by merely asserting that discovery is incomplete or that specific facts necessary to oppose summary judgment are unavailable. Rather, the party *must demonstrate precisely* how additional

16

discovery will lead to a genuine issue of material fact." *Ben Ezra, Weinstein, and Co., Inc. v. America Online Inc.*, 206 F.3d 980, 987 (10th Cir. 2000) (emphasis added).

Here, the Declaration of G. Darren Reid (Doc. 38-30) states the Plaintiffs have requested "documents relating to Ulrich's personal and business financial records, Ulrich's use of Alexander's cash and Bitcoin, Ulrich's communications with Feracode, and Ulrich's transactions with Feracode." (Doc. 38-30, ¶3.)[7] Plaintiffs do not "state with specificity how" these requested documents "will rebut the summary judgment motion," *i.e.* how they will show that Solutions transferred the Intellectual Property. The Reid Declaration does not say Plaintiffs need discovery to identify a purchase and sale agreement, a license, an assignment of interests, a bill of sale, or another instrument in writing that purports to transfer ownership of the Intellectual Property to Technology. (*See* Doc. 38-30.) Indeed, if such a document existed, Technology and Alexander would already have it in their possession. Instead, the discovery apparently relates to Plaintiffs' claims for breach of contract, unjust enrichment, or some interest in Solutions as an entity, rather than the narrow issue of ownership presented in Solutions' Motion.

This deficiency is material in light of the uncontested authorities presented in the Motion requiring an "instrument in writing" to convey an interest in a trademark. The documents Plaintiffs seek might support Alexander's claim for damages or some other remedy for funds expended, but Plaintiffs do not demonstrate how they will show that Technology has a viable claim to an ownership or other interest in the Intellectual Property.

Under Tenth Circuit law, therefore, this Court should exercise its discretion to deny the Rule 56(d) request.

---

[7] The deadline for Defendants to respond to these requests is July 26, 2019. (Doc. 42, ¶4.)

## CONCLUSION

This Motion presents the narrow two-part issue of whether Solutions transferred its Intellectual Property to Technology and whether an enforceable agreement exists that would require a transfer. Neither the Alexander Declaration nor other materials Plaintiffs cite establish a genuine dispute. Plaintiffs do not identify any written instrument "duly executed" reflecting a transfer of ownership or other rights in the Intellectual Property, and do not even contend that such a document exists. Alexander's alleged financial contributions might create a claim against or some kind of interest in Solutions as an entity, but do not suggest the Intellectual Property was transferred to Technology.

Plaintiffs' Rule 56(d) request, aside from being procedurally improper, also fails because it does not "state with specificity how the additional material will rebut the summary judgment motion" or "demonstrate precisely how additional discovery will lead to a genuine issue of material fact."

The Court should rule that there is no genuine issue of material fact and that Solutions is entitled to judgment as a matter of law declaring that it did not transfer the Intellectual Property to Technology and that no agreement exists that would legally require it to do so.

DATED this 19th day of July, 2019.

RICHARDS BRANDT MILLER NELSON

/s/ Matthew C. Barneck
MATTHEW C. BARNECK
ZACHARY E. PETERSON
KRISTINA H. RUEDAS
*Attorneys for Defendants and Counterclaim Plaintiffs*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of July, 2019, I electronically filed the foregoing **REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT** with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

> Darren G. Reid
> Brandon T. Christensen
> HOLLAND & HART LLP
> 222 South Main Street, Suite 2200
> Salt Lake City, UT 84101
> dgreid@hollandhart.com
> btchristensen@hollandhart.com
> *Attorneys for Plaintiffs and*
> *Counterclaim Defendants*

/s/ Matthew C. Barneck

G:\EDSI\DOCS\21981\0002\19B7590.DOC