MATTHEW C. BARNECK [5249]
ZACHARY E. PETERSON [8502]
KRISTINA H. RUEDAS [14306]
RICHARDS BRANDT MILLER NELSON
*Attorneys for Smash Solutions, LLC, Jerry J. Ulrich,*
  *and Smash Innovations, LLC*
Wells Fargo Center, 15th Floor
299 South Main Street
P.O. Box 2465
Salt Lake City, Utah  84110-2465
Email: matthew-barneck@rbmn.com
         zachary-peterson@rbmn.com
         kristina-ruedas@rbmn.com
Telephone: (801) 531-2000
Fax No.: (801) 532-5506

---

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SMASH TECHNOLOGY, LLC, a Nevada limited liability company; and MICHAEL ALEXANDER, an individual, | **SMASH SOLUTIONS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT AND AMENDED COUNTERCLAIM** |
| Plaintiffs, | |
| vs. | |
| SMASH SOLUTIONS, LLC, a Delaware limited liability company; JERRY "J.J." ULRICH, an individual; SMASH INNOVATIONS, LLC, a Wyoming limited liability company; and FERACODE, LLC, a Utah limited liability company, | Civil No. 2:19-cv-00105-TC |
| Defendants. | Judge Tena Campbell |

Defendant Smash Solutions, LLC ("**Solutions**"), through its counsel of record Matthew

C. Barneck, Zachary E. Peterson, and Kristina H. Ruedas of the law firm RICHARDS BRANDT

MILLER NELSON, hereby Answers the Plaintiffs' First Amended Complaint for Injunctive and Other Relief as described below, amends it Counterclaim against Plaintiffs Smash Technology, LLC ("**Technology**") and Michael Alexander ("**Alexander**"), and alleges as follows:

## ANSWER

Solutions responds to the individually numbered paragraphs of the First Amended Complaint as follows:

## PARTIES

1.      Admit.

2.      Admit upon information and belief.

3.      Admit.

4.      Admit.

5.      Admit that Smash Innovations, LLC ("**Innovations**") is a Wyoming limited liability company that is registered to do business in Utah.

6.      Admit upon information and belief.

## JURISDICTION AND VENUE

7.      Admit.

## GENERAL ALLEGATIONS

8.      Deny.

9.      Admit.

**(The Formation of Smash Technology (Technology))**

10.      Deny.

11.      Deny.

12.     Deny.

13.     Deny.

14.     Deny.

15.     Deny.

16.     Deny.

**(The Feracode Agreement)**

17.     The agreement between Technology and Feracode, LLC ("**Feracode**") speaks for itself.  Deny all remaining allegations.

18.     Deny.

19.     Deny.

20.     Deny for lack of knowledge, information, and belief.

**(Ulrich's Financial Misconduct)**

21.     Deny.

22.     Deny.

23.     Deny.

24.     Deny.

**(Innovations: Ulrich's Misappropriations and Deceit)**

25.     Deny.

26.     Deny.

27.     Deny.

28.     Deny.

29.     Deny.

## FIRST CAUSE OF ACTION
### (Injunctive Relief)

30.     Solutions reasserts the responses set forth in paragraphs 1 through 29 and hereby incorporates them by reference.

31.     Deny.

32.     Deny.

33.     Deny.

34.     Deny.

35.     Deny.

36.     Deny.

37.     Deny.

## SECOND CAUSE OF ACTION
### (Breach of Contract—Ulrich)

38.     Solutions reasserts the responses set forth in paragraphs 1 through 37 and hereby incorporates them by reference.

39.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

40.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

41.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  Furthermore, this paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

42.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  Furthermore, this paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

### THIRD CAUSE OF ACTION
**(Breach of the Covenant of Good Faith and Fair Dealing—Ulrich)**

43.     Solutions reasserts the responses set forth in paragraphs 1 through 42 and hereby incorporates them by reference.

44.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

45.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

46.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  Furthermore, this paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

47.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  Furthermore, this paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

48.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

49.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

50.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  Furthermore, this paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

## FOURTH CAUSE OF ACTION
### (Unjust Enrichment – All Defendants)

51.     Solutions reasserts the responses set forth in paragraphs 1 through 50 and hereby incorporates them by reference.

52.     Deny.

53.     Deny.

54.     Deny.

55.     This paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

56.     This paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

## FIFTH CAUSE OF ACTION
### (Intentional Interference with Economic Relations—Ulrich, Solutions, and Innovations)

57.     Solutions reasserts the responses set forth in paragraphs 1 through 56 and hereby incorporates them by reference.

58.     Deny.

59.     Deny.

60.     Deny.

61.     Deny.

62.     This paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

63.     This paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

## SIXTH CAUSE OF ACTION
### (False Advertising and False Designation of Origin 15 U.S.C. § 1125(a)(1)(B)—Ulrich and Innovations)

64.     Solutions reasserts the responses set forth in paragraphs 1 through 63 and hereby incorporates them by reference.

65.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

66.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

67.     The allegations in this paragraph are not directed at Solutions. Therefore, no response from Solutions is required. If a response is required, deny.

68.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  Furthermore, this paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

69.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

70.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  Furthermore, this paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

71.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

## SEVENTH CAUSE OF ACTION
### (Unfair Competition 15 U.S.C. § 1125(a)(1)(A)—Ulrich and Innovations)

72.     Solutions reasserts the responses set forth in paragraphs 1 through 71 and hereby incorporates them by reference.

73.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

74.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  Furthermore, this paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

75.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

76.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  Furthermore, this paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

## EIGHTH CAUSE OF ACTION
### (Deceptive Trade Practices Utah Code Ann. § 13-11a-3(1)(b), (c), and (e)— Ulrich and Innovations)

77.     Solutions reasserts the responses set forth in paragraphs 1 through 76 and hereby incorporates them by reference.

78.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

79.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

80.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  Furthermore, this paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

81.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

82.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

## NINTH CAUSE OF ACTION
### (Declaratory Judgment – All Defendants)

83.     Solutions reasserts the responses set forth in paragraphs 1 through 82 and hereby incorporates them by reference.

84.     Deny.

85.     Admit.

86.     Deny.

87.     Deny.

88.     Deny.

## TENTH CAUSE OF ACTION
### (Equitable Accounting – Ulrich)

89.     Solutions reasserts the responses set forth in paragraphs 1 through 88 and hereby incorporates them by reference.

90.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

91.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

92.     The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

## ELEVENTH CAUSE OF ACTION
### (Conversion – All Defendants)

93.     Solutions reasserts the responses set forth in paragraphs 1 through 92 and hereby incorporates them by reference.

94.     Deny.

95.     Deny.

96.     Deny.

97.     This paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

## TWELFTH CAUSE OF ACTION
### (Misappropriation of Trade Secrets – All Defendants)

98.     Solutions reasserts the responses set forth in paragraphs 1 through 97 and hereby incorporates them by reference.

99.     Deny.

100.    Deny.

101.    Deny.

102.    Deny.

103.   Deny.

104.   Deny.

105.   Deny.

106.   Deny.

## THIRTEENTH CAUSE OF ACTION
### (Breach of Contract – Feracode)

107.   Solutions reasserts the responses set forth in paragraphs 1 through 106 and hereby incorporates them by reference.

108.   The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

109.   The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

110.   The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  Furthermore, this paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

111.   The allegations in this paragraph are not directed at Solutions. Therefore, no response from Solutions is required. Furthermore, this paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

## FOURTEENTH CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing – Feracode)

112.   Solutions reasserts the responses set forth in paragraphs 1 through 111 and hereby incorporates them by reference.

113.    The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

114.    The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

115.    The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  Furthermore, this paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

116.    The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  Furthermore, this paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

117.    The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

118.    The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  If a response is required, deny.

119.    The allegations in this paragraph are not directed at Solutions.  Therefore, no response from Solutions is required.  Furthermore, this paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

### First Affirmative Defense

Plaintiffs' claim for unjust enrichment fails to state a claim for relief or establish the required elements under Utah law, which are: "(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the

conferee to retain the benefit without payment of its value." *Jeffs v. Stubbs,* 970 P.2d 1234, 1248 (Utah 1998).

### Second Affirmative Defense

Plaintiffs seek injunctive relief which is not enforceable against Solutions and also seek further information which is not in Solutions' custody or control.

### Third Affirmative Defense

Plaintiffs' claim for conversion fails to state a claim for relief or establish the required elements of the claim under Utah law, which are: "A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession." *Allred v. Hinkley*, 328 P.2d 726, 728 (Utah 1958).

### Fourth Affirmative Defense

Plaintiffs' claims, in whole or in part, are derivative claims, and plaintiffs have not complied with the threshold procedural requirements to assert a derivative claim. *See* DEL. CODE ANN. §18-1001, *et seq.*; UTAH CODE ANN. §48-3a-802, *et seq.*; FED. R. CIV. P. 23.1.

### Fifth Affirmative Defense

Plaintiffs' claim for ownership of the intellectual property would deprive third party investors of rights, and plaintiffs' First Amended Complaint fails to identify, acknowledge, or join these third parties who are required and indispensable parties to the requested relief.

### Sixth Affirmative Defense

Plaintiffs lack standing to assert some or all of the claims alleged in this action.

### Seventh Affirmative Defense

Plaintiff Alexander has not established a prima facie claim for relief under any of the causes of action because he has not personally suffered any damages.

### Eighth Affirmative Defense

Plaintiffs' claims for breach of contract are not supported by any signed agreement or other written instrument.

### Ninth Affirmative Defense

Plaintiffs' claims for relief are barred in whole or in part by the statute of frauds.

### Tenth Affirmative Defense

Plaintiffs' claims for equitable relief are barred in whole or in part by the doctrine of unclean hands.

### Eleventh Affirmative Defense

The allegations in plaintiffs' First Amended Complaint are too vague and unintelligible to provide adequate notice of the nature of claims.  Furthermore, plaintiffs' claims are internally inconsistent, such that defendants cannot reasonably understand the nature of the claims in order to answer the allegations.

### Twelfth Affirmative Defense

To the extent plaintiffs' First Amended Complaint is based on allegations of fraud or fraudulent conduct, the allegations do not contain enough specificity to meet the requirements of Rule 9 of the Federal Rules of Civil Procedure.

**Thirteenth Affirmative Defense**

To the extent plaintiffs request injunctive relief, plaintiffs have not established irreparable harm or other elements necessary for an award of injunctive relief.

**Fourteenth Affirmative Defense**

Plaintiffs have not adequately investigated the asserted claims, and plaintiffs do not have documents to support the allegations in the First Amended Complaint.

**Fifteenth Affirmative Defense**

Plaintiffs cannot satisfy the writing requirement under the Lanham Act and interpreting case law, which requires that an assignment of rights relating to a trademark "shall be by instruments in writing duly executed."  15 U.S.C. §1060(3).

**Sixteenth Affirmative Defense**

To the extent Solutions proves the allegations in the First Amended Complaint are false, Solutions is entitled to attorney fees and costs incurred in proving the allegations were not adequately investigated and false.

**Seventeenth Affirmative Defense**

Plaintiffs' claim of ownership may be barred by existing copyrights, trademarks, or patents.

**Eighteenth Affirmative Defense**

Plaintiffs' damages may be caused in whole or in part by the conduct of P. Sterling Kerr, and Solutions reserves the right to seek the apportionment of fault against Mr. Kerr at trial as supporting facts are discovered.

**Nineteenth Affirmative Defense**

Plaintiffs' damages are caused in whole or in part by the conduct of others over whom Solutions has no right of control or for whom defendants are not vicariously liable.

WHEREFORE, having fully answered Plaintiffs' First Amended Complaint, Solutions denies liability for Plaintiffs' allegations, seeks dismissal of the claims against it, and requests such other and further relief as the Court deems appropriate.

## AMENDED COUNTERCLAIM

Solutions files this Amended Counterclaim against Technology and Alexander and alleges as set forth below.

## PARTIES

1.      Solutions was originally formed as a Utah limited liability company on September 5, 2012.  (*See Ex. 1*.)  It was converted to a Delaware limited liability company on or around January 2, 2013 pursuant to a Certificate of Conversion and a Certificate of Formation filed with the Secretary of State of Delaware.  Its principal place of business is in the State of Utah.

2.      Solutions is creating software that allows individuals and businesses to manage virtually every aspect of their business, including tasking, project management, communications, and focus on building a personalized relationship with their customers through an automated process.

3.      Technology is a Nevada limited liability company with its principal place of business in the State of Nevada.

4.      Alexander is an individual who is believed to be a resident of Bali, Indonesia.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C.

§§1331 and 1367.

6.      This Court has personal jurisdiction over the plaintiffs because they have

submitted themselves to the jurisdiction of the Court by filing this action.

7.      Venue properly lies in this Court.

## GENERAL ALLEGATIONS

**A.      Smash Solutions, LLC.**

8.      When Solutions was formed in 2012, Defendant Jerry J. Ulrich ("**Ulrich**") was

the sole member and manager.  Ulrich is still the primary manager of Solutions.

9.      By April 2014, several other persons had become members of Solutions,

including Samuel Potter ("**Potter**").

10.      Alexander was not a member of Solutions then nor did he sign the Operating

Agreement entered in 2014.

11.      The Operating Agreement was amended effective July 5, 2018, and Alexander

still was not a member of Solutions or a signing party to the Operating Agreement.

12.      The current officers of Solutions are Ulrich as Chairman, Kevin C. Kern ("**Kern**")

as President, and Sarah A. Ulrich ("**Sarah**") as Vice President.

13.      Ulrich invented the technology and infrastructure for the business software suite

based on his experience working with big data aggregation and data collection.  He created the

initial system that Solutions is developing, with the intent to market it commercially.  The

software is a data collection platform that has CRM (Customer Relationship Management)

capabilities.  Solutions owns all intellectual property rights (the "**IP**") to the software (the

"**Software**").

       14.      Solutions began developing the Software in 2012 in Salt Lake City, and later in

India and Brazil, long before Alexander became affiliated with Solutions.

       15.      Beginning in 2012, Solutions began preparing a "**Build Plan**" and completed it in

2014.  The Build Plan consists of nearly 6,000 pages and Alexander has never seen it.

**B.**      **Alexander's Business Dealings with Smash Solutions, LLC.**

       16.      For a few years, Alexander had certain business dealings with Solutions in which

it was proposed that Alexander would provide funding and assistance with business operations.

       17.      His first formal involvement with Solutions began in late 2015 when there were

discussions concerning a reseller agreement for a Solutions software product known as "Smash

Booster Bar."

       18.      Alexander signed a reseller agreement with Solutions effective date June 6, 2016.

       19.      In or about September 2016, Alexander sent Ulrich his resume and biography

looking to be hired by Solutions as a representative to raise money for Solutions and its software

development.

       20.      Afterward, Solutions prepared an offer letter for Alexander to be its chief sales

officer.  The offer dated January 2, 2017 contemplated a beginning salary of $13,500 per month

and an ownership stake in Solutions.

       21.      In April 2017, a consulting agreement was prepared between Solutions and

Alexander that contemplated Alexander becoming a consultant to identify and introduce

prospective investors to Solutions.

22.     One of Alexander's primary responsibilities was to raise funding for Solutions.

23.     One potential source of funds for Solutions was Alexander's investments in cryptocurrency, and more specifically in mining bitcoins.  The parties contemplated that Ulrich and Alexander would develop cryptocurrency positions through a bitcoin network (the "**Bitclub Network**") to generate additional funding for Solutions.

24.     In late April 2017, a draft agreement was prepared between Alexander and Ulrich whereby Ulrich would enroll in the Bitclub Network under Alexander's Centurion position.

25.     The Centurion position was under Uberfund, and the parties discussed how to split commissions and revenue generated from the Centurion position in the Bitclub Network.

26.     As early as April 21, 2017, the relationship between Ulrich and Alexander experienced some setbacks, which resulted in back and forth communications between them.

**C.      Feracode, LLC.**

27.     To develop the IP into a finished software product that can be marketed commercially, Solutions signed a contract with Feracode on January 29, 2018 (the "**Feracode-Solutions Agreement**").  This Agreement provided that Feracode would write the code for the Software.

28.     This Agreement was entered before Alexander formed Technology.  It has never been canceled and remains in force.

29.     Solutions provided the Build Plan to Feracode when it was completed and Feracode has been executing it.

30.     Feracode continues to write code and perform according to the Feracode-Solutions Agreement, or a subsequent agreement with Innovations, and Solutions and Ulrich continue to make payments according to the Agreement.

31.     The Agreement required Solutions to pay a total of $1,500,000 divided into monthly milestones, thus requiring monthly payments in excess of $100,000.  To service that obligation and to pay its other expenses, Solutions needed outside funding.

**D.     Further Discussions with Alexander; Smash Technology, LLC.**

32.     Beginning in or about November 2017, there were discussions between Solutions and Alexander toward a possible agreement for the funding, management, and possible licensure of the IP and the Software.  The discussions involved several talking points, which often differed based upon Alexander's change of position.

33.     The discussion points included at various times at least the following:

a.     Alexander would provide funding for Solutions to support the development of the Software and to service the Feracode-Solutions Agreement.

b.     Solutions ultimately would be dissolved.

c.     A new company would be formed and owned by at least Ulrich and Alexander, with their ownership interests to be equal.

d.     Alexander would take an active role in the day-to-day operations of Solutions and in transitioning the business to the new company.

e.     A user license to the IP and/or the Software would be entered with the new company.

34.     The parties did not reach a verbal agreement on these or any other terms and no agreement was reduced to writing.

35.     Technology was formed as a single member Nevada limited liability company on February 28, 2018.  (*See Ex. 2.*)  Alexander was the organizer, the sole manager, and the only member.  A lawyer in Las Vegas named P. Sterling Kerr ("**Sterling**") was the registered agent. Sterling recommended that Alexander be the sole member of Technology until Solutions was clear of any potential legal claims by accomplishing a dissolution.

36.     An agreement was then entered between Feracode and Technology on or about March 12, 2018 (the "**Feracode-Technology Agreement**").

37.     This Agreement was entered in preparation for an ultimate transition of the business to the new company.  It did not supersede the Feracode-Solutions Agreement.

38.     Shortly after entering this Agreement with Feracode, Technology defaulted on its payment obligations.

39.     On January 25, 2019, Feracode gave notice to Technology that the Feracode-Technology Agreement was terminated pursuant to its terms.  Feracode's stated reasons were the "serious delinquency of the payments and final transfer of the Intellectual Property not being completed from Jerry Ulrich and Smash Solutions …."

40.     Solutions continues to perform under the Feracode-Solutions Agreement, which predated the Feracode-Technology Agreement and remains in force, or under a subsequent agreement entered with Innovations.

E.       **Alexander Fails to Provide Funding; Ulrich and Solutions Make Feracode Payments.**

41.     In the latter part of 2018, the value of cryptocurrency and bitcoin started to decrease.

42.     This decrease in value impacted the availability of funding for Solutions from cryptocurrency.

43.     During this same time, Alexander continued to miss meetings with the Solutions team and failed to implement certain steps necessary to get Technology up and running.

44.     Specifically, Solutions requested that Technology put in place an operating agreement to govern the business operations of Technology.

45.     To date, Solutions and Ulrich are unaware of an operating agreement ever being signed for Technology.  Neither Ulrich nor Solutions have ever signed an operating agreement for Technology that would allow it to operate as Alexander desired.

46.     Ulrich never became an owner of Technology and to this date Alexander remains its sole member.

47.     Also, Technology never opened a bank account in its name to conduct business or to maintain its own finances.

48.     The team at Solutions repeatedly requested that Technology open a bank account, but it failed to do so.

49.     As the relationship between Alexander and the Solutions team continued to deteriorate in late 2018, Alexander unilaterally cut off the access of Ulrich and others at Solutions to commissions or revenue from positions in the Bitclub Network.

## FIRST CAUSE OF ACTION
### Declaratory Judgment

50.     Solutions reasserts the allegations set forth in paragraphs 1 through 49 above and incorporates them by reference.

51.     Based on the facts in the record, the Court should enter declaratory judgment pursuant to 28 U.S.C. §2201, *et seq.* that the IP and the Software at issue in this action are owned by Solutions and that neither ownership, licensure, nor any other rights were ever transferred to Technology.

52.     Alexander and Technology failed to perform their obligations according to the discussions described above, first, by failing to provide funding as agreed.

53.     Technology did not make any payments to Feracode.  All payments to Feracode were made by Solutions or Ulrich.

54.     For several months in 2018, Ulrich asked Alexander to provide funding for the payments to Feracode, pursuant to their discussions, but he failed to provide adequate funding.

55.     Alexander also failed to provide adequate funding to support Solutions' own expenses in the development of the IP and the Software.  Accordingly, Ulrich and Solutions had to find other ways to raise the money, and if not the development of the Software would have failed.  Solutions' records show Alexander contributed a total of $122,350.

56.     Aside from the failure to provide funding, Alexander also showed a total disregard for the day-to-day operations of Solutions during the transition of the business to Technology.  Alexander attended only 2 meetings out of many during the 7 month period from July 2018 to January 2019.

57.     No contract of sale was ever written or signed, nor was there a bill of sale, an assignment, or any other written instrument purporting to effect a transfer to Technology of any rights in the IP or the Software.

58.     During various meetings with Sterling and others, sometimes including Alexander, a licensure or sale of the IP was discussed.  When Kern asked about a contract of sale, Sterling told him the sale contract was not yet drawn up and since Alexander and Ulrich had an existing relationship, the contract would be filled out later.

59.     When Kern asked about the sale price, Sterling said a price had not yet been decided upon, and it would not be required unless someone brought it up.  Then Kern was told he did not need to worry about it.

60.     Thus, there is no written instrument or other written evidence of a transfer to Technology of any rights in the IP or the Software.

61.     Further, even if the discussions between the parties as described above were somehow enforceable, Alexander breached those terms for the reasons just described, and Solutions then had no further obligation to continue.

62.     This is an actual case or controversy and the dispute is real and substantial.

63.     Based thereon, the Court should enter declaratory judgment in favor of Solutions and against Alexander and Technology as set forth in the Prayer for Relief below.

## SECOND CAUSE OF ACTION
### (Injunctive Relief)

64.     Solutions reasserts the allegations set forth in paragraphs 1 through 63 above and incorporates them by reference.

65.     Alexander and Technology have misrepresented the origin and ownership of Solutions' intellectual property.

66.     Alexander and Technology's actions have caused immediate and irreparable harm to Solutions.

67.     The injury to Solutions outweighs any damages Alexander and Technology may incur as a result of the injunction.

68.     The issuance of an injunction would not be adverse to the public interest.

69.     There is a substantial likelihood that Solutions will prevail on the merits.

70.     Solutions is entitled to an order from the Court which permanently prohibits Alexander and Technology from misrepresenting the origin and ownership of Solutions' intellectual property; engaging in any misappropriation, infringement, or other improper use of Solutions intellectual property; and any other action that would interfere with or limit Solutions' use of its intellectual property.

## THIRD CAUSE OF ACTION
### (Trademark Infringement, 15 U.S.C. 1114(1)(a))

71.     Solutions reasserts the allegations set forth in paragraphs 1 through 70 above and incorporates them by reference.

72.     Solutions is the registered owner of the trademark at issue in this litigation.  (*See Ex. 3*.)  The mark was filed on August 2, 2013 and registered on August 5, 2014 (*see id.*), before Alexander or Technology had any business relationship with Solutions.

73.     Technology contends it is the sole owner of the IP, and is entitled to exclusive possession and use of the IP and the Software under the name of Smash Technology, LLC.

74.     Technology's acts in asserting ownership over the IP and Software have caused harm to Solutions' ability to develop and market its own products to consumers.

75.     Alexander and Technology's acts in commercial advertising or promotion misrepresent the nature, characteristics, qualities, or geographic origin of the IP and/or the Software or Solutions' goods, services, or commercial activities in violation of the Lanham Act, 15 U.S.C. §1114(1)(a).

76.     Solutions continues to suffer from harm based on Technology's actions and have suffered damages in an amount to be proven at trial.

## FOURTH CAUSE OF ACTION
### (Claims Under the Lanham Act, 15 U.S.C. § 1125(a)(1))

77.     Solutions reasserts the allegations set forth in paragraphs 1 through 76 above and incorporates them by reference.

78.     Ulrich invented the IP at issue in this litigation, and Solutions owns the IP and the Software.

79.     Solutions has never entered into any contract, either written or oral, with Technology or Alexander in which Solutions agreed to transfer to Technology any rights in the IP or the Software.

80.     Technology contends it is the sole owner of the IP, and is entitled to exclusive possession and use of the IP and the Software under the name of Smash Technology, LLC.

81.     While asserting this ownership interest, Technology is unable to operate as a business and owns no IP or Software in its own name.

82.     Technology never signed an operating agreement or otherwise established itself as an operating business entity.  Technology never opened a bank account to transact business on its own behalf.

83.     Accordingly, Technology's use of the Smash name and its representations of ownership are a false designation of origin or a false or misleading description or representation of fact that is likely to cause confusion or mistake, or deceive as to Technology's affiliation, connection, or association with Solutions and the IP and Software, in violation of § 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(A).

84.     Because Technology has no understanding of the capabilities of the IP and no ability to properly develop or market the IP, Technology's continued misrepresentations will dilute the product in the eyes of consumers and cause harm to Solutions based on Technology's inability to properly market and develop the Software products.

85.     A likelihood of confusion exists because, among other things, the name and mark being used by Technology are very similar to the name and mark owned by Solutions, and the services offered by Technology are similar to those offered by Solutions.

86.     In addition to its claim of ownership, Technology's acts in asserting ownership over the IP and Software have caused harm to Solutions' ability to develop and market its own products to consumers.

87.     Accordingly, Technology's acts in commercial advertising or promotion misrepresent the nature, characteristics, qualities, or geographic origin of the IP and/or the Software or Solutions' goods, services, or commercial activities, in violation of § 43(a) of the Lanham Act, 15 U.S.C. §1125(a)(1)(B).

88.     Technology's acts have caused irreparable harm to Solutions' reputation and business, and Technology should be restrained from misrepresenting its ownership in the IP and/or the Software.

89.     Solutions continues to suffer harm based on Technology's actions and has suffered damages in an amount to be proven at trial.

**FIFTH CAUSE OF ACTION**
**(Unfair Competition under the Utah Unfair Competition Act,**
**Utah Code Ann. § 13-5a-101−103)**

90.     Solutions reasserts the allegations set forth in paragraphs 1 through 89 above and incorporates them by reference.

91.     Solutions is the registered owner of the trademark at issue in this litigation.

92.     The mark filed on August 2, 2013 and registered on August 5, 2014, before Alexander or Technology had any business relationship with Solutions.

93.     Technology has engaged in commercial advertising or promotion which misrepresent the nature, characteristics, qualities, or geographic origin of the IP and/or the Software, or Solutions' goods, services, or commercial activities.

94.     Technology has no understanding of the capabilities of the IP and no ability to properly develop or market the IP.  Technology's continued misrepresentations have diluted the IP in the eyes of consumers and caused a material diminution in the value of Solutions' IP, in violation of the Utah Unfair Competition Act, Utah Code Ann. § 13-5a-101−103.

95.     Technology's acts have caused irreparable harm to Solutions' reputation and business, and Technology should be restrained from misrepresenting its ownership in the IP and/or the Software.

96.     Solutions continues to suffer from harm based on Technology's actions and have suffered damages in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
### (Intentional Interference with Economic Relations)

97.     Solutions reasserts the allegations set forth in paragraphs 1 through 96 above and incorporates them by reference.

98.     Ulrich and Alexander both contemplated that the use of commissions and revenues from Bitclub Network would be used to fund Solutions' continued development of the IP and marketing of the Software.

99.     Based on the parties' discussions, Solutions was an intended third-party beneficiary of the revenue generated from Ulrich's and Alexander's position in Bitclub Network.

100.    Alexander unilaterally cut off access to the various Bitclub positions with the intent to stop funding to Solutions and to prevent it from continuing to develop the Software.

101.    Alexander's conduct was done to further the interests of Technology and his own interests at the expense of Solutions.

102.    Alexander's conduct was intentional interference with Solutions' contractual rights, it was done by improper means, *i.e.* by a breach of Alexander's agreement with Ulrich, and it caused injury to Solutions.

103.    Alexander's unilateral act in cutting off commissions and revenue to be used by Solutions, or on its behalf, has damaged Solutions' ability to meet its financial obligations and develop the Software.

104.    Alexander's conduct has caused delays in Solutions' development of the IP, which has caused lost revenue and lost profits.

105.     Accordingly, Solutions is entitled to recover damages in an amount to be proven at trial for Alexander's breach of the parties' agreement and corresponding harm caused to the intended third-party beneficiary of the contract, Solutions.

## PRAYER FOR RELIEF

WHEREFORE, Solutions prays for judgment against Technology and Alexander as follows:

A.      For judgment in its favor and against Technology and Alexander on all claims asserted in the First Amended Complaint;

B.      For judgment in its favor and against Technology and Alexander on all claims asserted in the Amended Counterclaim;

C.      For an award of attorneys incurred; and

D.      For such other and further relief as the Court deems just and proper.

DATED this 19th day of September, 2019.

RICHARDS BRANDT MILLER NELSON


*/s/ Matthew C. Barneck*
MATTHEW C. BARNECK
ZACHARY E. PETERSON
KRISTINA H. RUEDAS
*Attorneys for Smash Solutions, LLC, Jerry J.
  Ulrich, and Smash Innovations, LLC*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 19th day of September, 2019, I electronically filed the foregoing **SMASH SOLUTIONS, LLC'S ANSWER TO FIRST AMENDED COMPLAINT, AND AMENDED COUNTERCLAIM** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

> Darren G. Reid
> Brandon T. Christensen
> Holland & Hart LLP
> 222 South Main Street, Suite 2200
> Salt Lake City, UT 84101
> dgreid@hollandhart.com
> btchristensen@hollandhart.com
> *Attorneys for Plaintiffs*

*/s/ Matthew C. Barneck*

G:\EDSI\DOCS\21981\0002\19M0074.DOC

31