MATTHEW C. BARNECK [5249]
ZACHARY E. PETERSON [8502]
KRISTINA H. RUEDAS [14306]
RICHARDS BRANDT MILLER NELSON
*Attorneys for Smash Solutions, LLC, Jerry J. Ulrich,*
*  and Smash Innovations, LLC*
Wells Fargo Center, 15th Floor
299 South Main Street
P.O. Box 2465
Salt Lake City, Utah  84110-2465
Email: matthew-barneck@rbmn.com
        zachary-peterson@rbmn.com
        kristina-ruedas@rbmn.com
Telephone: (801) 531-2000
Fax No.: (801) 532-5506

## IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| SMASH TECHNOLOGY, LLC, a Nevada limited liability company; and MICHAEL ALEXANDER, an individual,<br><br>　　　　Plaintiffs,<br><br>vs.<br><br>SMASH SOLUTIONS, LLC, a Delaware limited liability company; JERRY "J.J." ULRICH, an individual; SMASH INNOVATIONS, LLC, a Wyoming limited liability company; and FERACODE, LLC, a Utah limited liability company,<br><br>　　　　Defendants. | **DEFENDANT JERRY J. ULRICH'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM**<br><br><br><br><br>Civil No. 2:19-cv-00105-TC<br><br>Judge Tena Campbell |

Defendant Jerry J. Ulrich ("**Ulrich**"), through his counsel of record Matthew C. Barneck,

Zachary E. Peterson, and Kristina H. Ruedas of the law firm RICHARDS BRANDT MILLER

NELSON, hereby Answers the Plaintiffs' First Amended Complaint as described below, Counterclaims against Plaintiffs Smash Technology, LLC ("**Technology**") and Michael Alexander ("**Alexander**"), and alleges as follows:

## ANSWER

Ulrich responds to the individually numbered paragraphs of the First Amended Complaint as follows:

## PARTIES

1.      Admit.

2.      Admit upon information and belief.

3.      Admit.

4.      Admit.

5.      Admit that Smash Innovations, LLC ("**Innovations**") is a Wyoming limited liability company that is registered to do business in Utah.

6.      Admit upon information and belief.

## JURISDICTION AND VENUE

7.      Admit.

## GENERAL ALLEGATIONS

8.      Deny.

9.      Deny for lack of knowledge, information, and belief.

### (The Formation of Smash Technology (Technology))

10.      Deny.

11.      Deny.

12.     Deny.

13.     Deny.

14.     Deny.

15.     Deny.

16.     Deny.

**(The Feracode Agreement)**

17.     The agreement between Technology and Feracode, LLC ("**Feracode**") speaks for itself.  Deny all remaining allegations.

18.     Deny.

19.     Deny.

20.     Deny for lack of knowledge, information, and belief.

**(Ulrich's Financial Misconduct)**

21.     Deny.

22.     Deny.

23.     Deny.

24.     Deny.

**(Innovations: Ulrich's Misappropriations and Deceit)**

25.     Deny.

26.     Deny.

27.     Deny.

28.     Deny.

29.     Deny.

## FIRST CAUSE OF ACTION
### (Injunctive Relief)

30.     Ulrich reasserts the responses set forth in paragraphs 1 through 29 and hereby incorporates them by reference.

31.     Deny.

32.     Deny.

33.     Deny.

34.     Deny.

35.     Deny.

36.     Deny.

37.     Deny.

## SECOND CAUSE OF ACTION
### (Breach of Contract—Ulrich)

38.     Ulrich reasserts the responses set forth in paragraphs 1 through 37 and hereby incorporates them by reference.

39.     Deny.

40.     Deny.

41.     Deny.

42.     This paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

## THIRD CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing—Ulrich)

43.     Ulrich reasserts the responses set forth in paragraphs 1 through 42 and hereby incorporates them by reference.

44.     Deny.

45.     Deny.

46.     Deny.

47.     This paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

48.     Deny.

49.     Deny.

50.     This paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

**FOURTH CAUSE OF ACTION**
**(Unjust Enrichment – All Defendants)**

51.     Ulrich reasserts the responses set forth in paragraphs 1 through 50 and hereby incorporates them by reference.

52.     Deny.

53.     Deny.

54.     Deny.

55.     This paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

56.     This paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

## FIFTH CAUSE OF ACTION
**(Intentional Interference with Economic Relations—Ulrich, Solutions, and Innovations)**

57.    Ulrich reasserts the responses set forth in paragraphs 1 through 56 and hereby incorporates them by reference.

58.    Deny.

59.    Deny.

60.    Deny.

61.    Deny.

62.    This paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

63.    This paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

## SIXTH CAUSE OF ACTION
**(False Advertising and False Designation of Origin 15 U.S.C. § 1125(a)(1)(B)—
Ulrich and Innovations)**

64.    Ulrich reasserts the responses set forth in paragraphs 1 through 63 and hereby incorporates them by reference.

65.    Deny.

66.    Deny.

67.    Deny.

68.    This paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

69.    Deny.

70.     This paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

71.     Deny.

## SEVENTH CAUSE OF ACTION
### (Unfair Competition 15 U.S.C. § 1125(a)(1)(A)—Ulrich and Innovations)

72.     Ulrich reasserts the responses set forth in paragraphs 1 through 71 and hereby incorporates them by reference.

73.     Deny.

74.     This paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

75.     Deny.

76.     This paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

## EIGHTH CAUSE OF ACTION
### (Deceptive Trade Practices Utah Code Ann. § 13-11a-3(1)(b), (c) and (e)— Ulrich and Innovations)

77.     Ulrich reasserts the responses set forth in paragraphs 1 through 76 and hereby incorporates them by reference.

78.     Deny.

79.     Deny.

80.     This paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

81.     Deny.

82.     Deny.

## NINTH CAUSE OF ACTION
### (Declaratory Judgment – All Defendants)

83.     Ulrich reasserts the responses set forth in paragraphs 1 through 82 and hereby

incorporates them by reference.

84.     Deny.

85.     Admit.

86.     Deny.

87.     Deny.

88.     Deny.

## TENTH CAUSE OF ACTION
### (Equitable Accounting – Ulrich)

89.     Ulrich reasserts the responses set forth in paragraphs 1 through 88 and hereby

incorporates them by reference.

90.     Deny.

91.     Deny.

92.     Deny.

## ELEVENTH CAUSE OF ACTION
### (Conversion – All Defendants)

93.     Ulrich reasserts the responses set forth in paragraphs 1 through 92 and hereby

incorporates them by reference.

94.     Deny.

95.     Deny.

96.     Deny.

97.     This paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

## TWELFTH CAUSE OF ACTION
### (Misappropriation of Trade Secrets – All Defendants)

98.     Ulrich reasserts the responses set forth in paragraphs 1 through 97 and hereby incorporates them by reference.

99.     Deny.

100.    Deny.

101.    Deny.

102.    Deny.

103.    Deny.

104.    Deny.

105.    Deny.

106.    Deny.

## THIRTEENTH CAUSE OF ACTION
### (Breach of Contract – Feracode)

107.    Ulrich reasserts the responses set forth in paragraphs 1 through 106 and hereby incorporates them by reference.

108.    The allegations in this paragraph are not directed at Ulrich.  Therefore, no response from Ulrich is required.  If a response is required, deny.

109.    The allegations in this paragraph are not directed at Ulrich.  Therefore, no response from Ulrich is required.  If a response is required, deny.

110.    The allegations in this paragraph are not directed at Ulrich.  Therefore, no response from Ulrich is required.  Furthermore, this paragraph states a legal conclusion to which no response is required.

111.    The allegations in this paragraph are not directed at Ulrich.  Therefore, no response from Ulrich is required.  Furthermore, this paragraph states a legal conclusion to which no response is required.

## FOURTEENTH CAUSE OF ACTION
### (Breach of the Covenant of Good Faith and Fair Dealing – Feracode)

112.    Ulrich reasserts the responses set forth in paragraphs 1 through 111 and hereby incorporates them by reference.

113.    The allegations in this paragraph are not directed at Ulrich.  Therefore, no response from Ulrich is required.  If a response is required, deny.

114.    The allegations in this paragraph are not directed at Ulrich. Therefore, no response from Ulrich is required.  If a response is required, deny.

115.    The allegations in this paragraph are not directed at Ulrich.  Therefore, no response from Ulrich is required.  Furthermore, this paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

116.    The allegations in this paragraph are not directed at Ulrich.  Therefore, no response from Ulrich is required.  Furthermore, this paragraph states a legal conclusion to which no response is required.

117.    The allegations in this paragraph are not directed at Ulrich.  Therefore, no response from Ulrich is required.  If a response is required, deny.

118.    The allegations in this paragraph are not directed at Ulrich.  Therefore, no response from Ulrich is required.  If a response is required, deny.

119.    The allegations in this paragraph are not directed at Ulrich.  Therefore, no response from Ulrich is required.  Furthermore, this paragraph states a legal conclusion to which no response is required.  If a response is required, deny.

### First Affirmative Defense

Plaintiffs' claim for unjust enrichment fails to state a claim for relief or establish the required elements under Utah law, which are: "(1) a benefit conferred on one person by another; (2) an appreciation or knowledge by the conferee of the benefit; and (3) the acceptance or retention by the conferee of the benefit under such circumstances as to make it inequitable for the conferee to retain the benefit without payment of its value." *Jeffs v. Stubbs,* 970 P.2d 1234, 1248 (Utah 1998).

### Second Affirmative Defense

Plaintiffs seek injunctive relief which is not enforceable against Ulrich and also seek further information which is not in Ulrich's custody or control.

### Third Affirmative Defense

Plaintiffs' claim for conversion fails to state a claim for relief or establish the required elements of the claim under Utah law, which are: "A conversion is an act of wilful interference with a chattel, done without lawful justification by which the person entitled thereto is deprived of its use and possession."  *Allred v. Hinkley*, 328 P.2d 726, 728 (Utah 1958).

11

### Fourth Affirmative Defense

Plaintiffs' claims, in whole or in part, are derivative claims, and plaintiffs have not complied with the threshold procedural requirements to assert a derivative claim.  *See* DEL. CODE ANN. §18-1001, *et seq.*; UTAH CODE ANN. §48-3a-802; FED. R. CIV. P. 23.1.

### Fifth Affirmative Defense

Plaintiffs' claim for ownership of the intellectual property would deprive third party investors of rights, and plaintiffs' complaint fails to identify, acknowledge, or join these third parties who are required and indispensable parties to the requested relief.

### Sixth Affirmative Defense

Plaintiffs lack standing to assert some or all of the claims alleged in this action.

### Seventh Affirmative Defense

Plaintiff Alexander has not established a prima facie claim for relief under any of the causes of action because he has not personally suffered any damages.

### Eighth Affirmative Defense

Plaintiffs' claims for breach of contract are not supported by any signed agreement or other written instrument.

### Ninth Affirmative Defense

Plaintiffs' claims for relief are barred in whole or in part by the statute of frauds.

### Tenth Affirmative Defense

Plaintiffs' claims for equitable relief are barred in whole or in part by the doctrine of unclean hands.

### Eleventh Affirmative Defense

The allegations in plaintiffs' First Amended Complaint are too vague and unintelligible to provide adequate notice of the nature of claims.  Furthermore, plaintiffs' claims are internally inconsistent, such that defendants cannot reasonably understand the nature of the claims in order to answer the allegations.

### Twelfth Affirmative Defense

To the extent plaintiffs' First Amended Complaint is based on allegations of fraud or fraudulent conduct, the allegations do not contain enough specificity to meet the requirements of Rule 9 of the Federal Rules of Civil Procedure.

### Thirteenth Affirmative Defense

To the extent plaintiffs request injunctive relief, plaintiffs have not established irreparable harm or other elements necessary for an award of injunctive relief.

### Fourteenth Affirmative Defense

Plaintiffs have not adequately investigated the asserted claims, and plaintiffs do not have documents to support the allegations in the First Amended Complaint.

### Fifteenth Affirmative Defense

Plaintiffs cannot satisfy the writing requirement under the Lanham Act and interpreting case law, which requires that an assignment of rights relating to a trademark "shall be by instruments in writing duly executed."  15 U.S.C. §1060(3).

### Sixteenth Affirmative Defense

To the extent Ulrich proves the allegations in the First Amended Complaint are false, Ulrich is entitled to attorney fees and costs incurred in proving the allegations were not adequately investigated and false.

### Seventeenth Affirmative Defense

Plaintiffs' claim of ownership may be barred by existing copyrights, trademarks, or patents.

### Eighteenth Affirmative Defense

Plaintiffs' damages may be caused in whole or in part by the conduct of P. Sterling Kerr, and Ulrich reserves the right to seek the apportionment of fault against Mr. Kerr at trial as supporting facts are discovered.

### Nineteenth Affirmative Defense

Plaintiffs' damages are caused in whole or in part by the conduct of others over whom Ulrich has no right of control or for whom defendants are not vicariously liable.

WHEREFORE, having fully answered Plaintiffs' First Amended Complaint, Ulrich denies liability for Plaintiffs' allegations, seeks dismissal of the claims against him, and requests such other and further relief as the Court deems appropriate.

### COUNTERCLAIM

Ulrich alleges this Counterclaim against Technology and Alexander as set forth below.

### PARTIES

1.      Ulrich is an individual resident of the State of Utah.

2.      Smash Solutions, LLC ("**Solutions**") was originally formed as a Utah limited liability company on September 5, 2012.  It was converted to a Delaware limited liability company on or around January 2, 2013 pursuant to a Certificate of Conversion and a Certificate of Formation filed with the Secretary of State of Delaware.  Its principal place of business is in the State of Utah.

3.      Technology is a Nevada limited liability company with its principal place of business in the State of Nevada.

4.      Alexander is an individual who is believed to be a resident of Bali, Indonesia.

## JURISDICTION AND VENUE

5.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§1331 and 1367.

6.      This Court has personal jurisdiction over the plaintiffs because they have submitted themselves to the jurisdiction of the Court by filing this action.

7.      Venue properly lies in this Court.

## GENERAL ALLEGATIONS

A.      **The Intellectual Property and the Software.**

8.      Ulrich invented the technology and infrastructure for the business software suite at issue in this case, based on his experience working with big data aggregation and data collection.  He created the initial system that Solutions is developing, with the intent to market it commercially.  The software is a data collection platform that has CRM (Customer Relationship Management) capabilities (the "**Software**").  Solutions owns all intellectual property rights (the "**IP**") to the Software.

9.     Solutions began developing the Software in 2012 in Salt Lake City, and later in India and Brazil, long before Alexander became affiliated with Solutions.

10.     Beginning in 2012, Solutions began preparing a "**Build Plan**" and completed it in 2014.  The Build Plan consists of nearly 6,000 pages and Alexander has never seen it.

11.     When Solutions was formed in 2012, Ulrich was the sole member and manager. Ulrich is still the primary manager of Solutions.

12.     By April 2014, several other persons had become members of Solutions, including Samuel Potter ("**Potter**").  Alexander was not a member then nor did he sign the Operating Agreement entered in 2014.

13.     The Operating Agreement was amended effective July 5, 2018, and Alexander still was not a member of Solutions or a signing party to the Operating Agreement.

14.     The current officers of Solutions are Ulrich as Chairman, Kevin C. Kern ("**Kern**") as President, and Sarah A. Ulrich ("**Sarah**") as Vice President.

**B.     Alexander's Business Dealings with Smash Solutions, LLC.**

15.     For a few years, Alexander had certain business dealings with Solutions in which it was proposed that Alexander would provide funding and assistance with business operations.

16.     In or about September 2016, Alexander sent Ulrich his resume and biography looking to be hired by Solutions as a representative to raise money for Solutions and its software development.

17.     In April 2017, a consulting agreement was prepared between Solutions and Alexander that contemplated Alexander becoming a consultant to identify and introduce prospective investors to Solutions.

18.     In his affiliation with Solutions, one of Alexander's primary responsibilities was to raise funding.  One potential source of funds for Solutions was Alexander's investments in cryptocurrency, and more specifically in mining bitcoins.  The parties contemplated that Ulrich and Alexander would develop a bitcoin network (the "**Bitclub Network**") to generate additional funding for Solutions.

19.     In late April 2017, a draft agreement was prepared between Alexander and Ulrich whereby Ulrich would enroll in the Bitclub Network under Alexander's Centurion position.

20.     The Centurion position was under Uberfund, and the parties discussed how to split commissions and revenue generated from the Centurion position in the Bitclub Network.

**C.      Feracode, LLC.**

21.     To develop the IP into a finished software product that can be marketed commercially, Solutions signed a contract with Feracode, LLC ("**Feracode**") on January 29, 2018 (the "**Feracode-Solutions Agreement**").  This Agreement provided that Feracode would write the code for the Software.

22.     The Agreement requires to pay a total of $1,500,000 divided into monthly milestones, thus requiring monthly payments in excess of $100,000.  To service that obligation and to pay its other expenses, Solutions needed outside funding.

23.     Feracode continues to write code and perform according to the Feracode-Solutions Agreement, and Solutions and Ulrich continue to make payments according to the Agreement.

**D.      Further Discussions with Alexander; Smash Technology, LLC.**

24.      Beginning in or about November 2017, there were discussions between Solutions and Alexander toward a possible agreement for the funding, management, and possible licensure of the IP and the Software.  The discussions involved several talking points, which often differed based upon Alexander's change of position.

25.      The discussion points included at various times at least the following:

a.      Alexander would provide funding for Solutions to support the development of the Software and to service the Feracode-Solutions Agreement.

b.      Solutions ultimately would be dissolved.

c.      A new company would be formed and owned by at least Ulrich and Alexander, with their ownership interests to be equal.

d.      Alexander would take an active role in the day-to-day operations of Solutions and in transitioning the business to the new company.

e.      A user license to the IP and/or the Software to be entered with the new company.

26.      The parties did not reach a verbal agreement on these or any other terms and no agreement was reduced to writing.

27.      Technology was formed as a Nevada limited liability company on February 28, 2018.  Alexander was the organizer, the sole manager, and the only member.  A lawyer in Las Vegas named P. Sterling Kerr ("**Sterling**") was the registered agent.  Sterling recommended that Alexander be the sole member of Technology until Solutions was clear of any potential legal claims by accomplishing a dissolution.

28.     An agreement was entered between Feracode and Technology on or about March 12, 2018 (the "**Feracode-Technology Agreement**").

29.     This Agreement was entered in preparation for an ultimate transition of the business to the new company, which would now be Technology.  It did not supersede the Feracode-Solutions Agreement.

30.     Shortly after entering this Agreement with Feracode, Technology defaulted on its payment obligations to Feracode.

31.     On January 25, 2019, Feracode gave notice to Technology that the Feracode-Technology Agreement was terminated pursuant to its terms.  Feracode's stated reasons were the "serious delinquency of the payments and final transfer of the Intellectual Property not being completed from Jerry Ulrich and Smash Solutions …."

32.     Solutions continues to perform under the Feracode-Solutions Agreement, which predated the Feracode-Technology Agreement and remains in force, or under a subsequent agreement entered with Innovations.

**E.     Alexander Fails to Provide Funding; Ulrich and Solutions Make Feracode Payments.**

33.     In the latter part of 2018, the value of cryptocurrency and bitcoin started to decrease.  This decrease in value impacted the availability of funding for Solutions from cryptocurrency.

34.     During this same time, Alexander continued to miss meetings with the Solutions team and failed to implement certain steps necessary to get Technology up and running.

35.     Specifically, Solutions requested that Technology put in place an operating agreement to govern the business operations of Technology.

36.     To date, Solutions and Ulrich are unaware of an operating agreement ever being signed for Technology.  Neither Ulrich nor Solutions have ever signed an operating agreement for Technology that would allow it to operate as Alexander desired.

37.     Also, Technology never opened a bank account in its name to conduct business or to maintain its own finances.  The team at Solutions repeatedly requested that Technology open a bank account, but it failed to do so.

38.     As the relationship between Alexander and the Solutions team continued to deteriorate in late 2018, Alexander unilaterally cut off the access of Ulrich and others at Solutions to commissions or revenue from the Centurion position in the Bitclub Network.

<strong><u>FIRST CAUSE OF ACTION</u></strong><br/><strong>(Breach of Contract)</strong>

39.     Ulrich reasserts the allegations set forth in paragraphs 1 through 38 above and incorporates them by reference.

40.     Ulrich and Alexander entered into an agreement whereby they agreed to develop and share in commissions and revenue from the Bitclub Network.

41.     Ulrich and Alexander agreed to have Ulrich establish and develop a position under Alexander's Centurion position within the Uberfund.

42.     The parties contemplated that commissions and revenue generated from both Ulrich's and Alexander's positions in the Bitclub Network would generate revenue to be used to develop the IP.

43.     Alexander has unilaterally cut off Ulrich's access to the position Ulrich has created and developed under the Centurion position, including cutting off all payments for commissions and revenue to Ulrich.

44.     Alexander's unilateral actions in cutting off Ulrich's access to the Bitclub Network are in violation of the parties' agreement with respect to developing positions within Bitclub Network and to use the revenue to support Solutions.

45.     Ulrich has suffered monetary damages because of his inability to access commissions and revenue that are due to him for his position in the Bitclub Network.

46.     Alexander has wrongfully retained commissions and revenue owed to Ulrich for his own personal use.

47.     Alexander's breach of the parties' agreement is ongoing.

48.     Accordingly, Ulrich has suffered monetary losses in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### (Intentional Interference with Economic Relations)

49.     Ulrich reasserts the allegations set forth in paragraphs 1 through 48 above and incorporates them by reference.

50.     Ulrich and Alexander both contemplated that the use of commissions and revenues from Bitclub Network would be used to fund Solutions' continued development of the IP and marketing of the Software.

51.     Alexander unilaterally cut off Ulrich's access to the various Bitclub positions with the intent to stop funding to Solutions and to prevent it from continuing to develop the Software.

52.     Alexander's conduct was done to further the interests of Technology and his own interests at the expense of Ulrich and Solutions.

53.     Alexander's conduct was intentional interference with Ulrich's contractual rights, it was done by improper means, *i.e.* by a breach of Alexander's agreement with Ulrich.

54.     Alexander's unilateral act in cutting off commissions and revenue to Ulrich has caused him damages in amounts to be proven at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, Ulrich prays for judgment against Technology and Alexander as follows:

A.      For judgment in his favor and against Plaintiffs Technology and Alexander on all claims asserted in the Complaint;

B.      For judgment in his favor and against Technology and Alexander on all claims asserted in the Counterclaim;

C.      For an award of attorneys incurred; and

D.      For such other and further relief as the Court deems just and proper.

DATED this 19th day of September, 2019.

RICHARDS BRANDT MILLER NELSON


*/s/ Matthew C. Barneck*
MATTHEW C. BARNECK
ZACHARY E. PETERSON
KRISTINA H. RUEDAS
*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 19th day of September, 2019, I electronically filed the foregoing **DEFENDANT JERRY J. ULRICH'S ANSWER TO FIRST AMENDED COMPLAINT AND COUNTERCLAIM** with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

> Darren G. Reid
> Brandon T. Christensen
> Holland & Hart LLP
> 222 South Main Street, Suite 2200
> Salt Lake City, UT 84101
> dgreid@hollandhart.com
> btchristensen@hollandhart.com
> *Attorneys for Plaintiffs*

*/s/ Matthew C. Barneck*

G:\EDSI\DOCS\21981\0002\19M0080.DOC

23