## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **SMASH TECHNOLOGY, LLC, et al.,**<br><br>**Plaintiffs,**<br><br>v.<br><br>**SMASH SOLUTIONS, LLC, et al.,**<br><br>**Defendants.** | **MEMORANDUM DECISION AND ORDER**<br><br>**Case No. 2:19-cv-00105-TC-JCB**<br><br>**District Judge Tena Campbell**<br>**Magistrate Judge Jared C. Bennett** |

The court issues the following Memorandum Decision and Order regarding Defendants' three short-form discovery motions, all of which were filed on March 2, 2020.[1] For the reasons discussed below, Defendants' motions are GRANTED.

### INTRODUCTION

The opening scene in the musical *Fiddler on the Roof* has a silhouetted figure playing a violin on a rooftop during which the protagonist, Tevye, directs a lengthy aside to the audience. In this aside, Tevye states that everyone in his small village of Anatevka is "a fiddler on the roof" because each person "is trying to scratch out a pleasant, simple tune without breaking his neck." After acknowledging the difficulty and danger of such a precarious situation, Tevye anticipates what the audience is thinking and asks, "And how do we keep our balance?" He then answers that question in one word: "Tradition!"

---

[1] ECF Nos. 77, 78, 79.

In many ways, civil litigators live in Anatevka. With ominous warnings in the Federal Rules of Civil Procedure such as "any ground not stated in an objection is waived,"[2] civil discovery litigation is difficult and, like fiddling on a roof, can even feel dangerous. In this environment, civil litigators do their best to scratch out a living without breaking their necks. Given the precarious nature of civil discovery practice, many attorneys—like the Anatevkans—rely on "tradition" for stability. Some of these civil discovery traditions include: (1) a page or two of "general objections" wherein the responding civil litigator objects "to the extent that" any of the interrogatories, document requests, or requests for admission violate some rule; (2) objecting in every discovery response that the request was vague, ambiguous, overbroad, and unduly burdensome, among many other things; but (3) providing a response "without waiving and subject to" all of the foregoing objections. The party that receives these tradition-laden responses is then left to wonder whether these objections had any actual consequence regarding whether documents were withheld or other responses were left incomplete. Although incredibly inefficient, the civil litigator who provides this traditional "response" feels secure because he/she cannot fall off the metaphorical roof after having played "any and all" available objections.

However, many of the aforementioned civil discovery traditions have come under attack over the years. In fact, the United States Supreme Court has doggedly sought to eradicate these traditions to "secure the just, speedy, and inexpensive determination of every action and proceeding."[3]

---

[2] Fed. R. Civ. P. 34(b)(4).

[3] Fed. R. Civ. P. 1.

Several amendments to the Federal Rules of Civil Procedure from 1983 to 2015 amply demonstrate this tradition-breaking effort.[4] One of the objectives of these amendments was to end the tradition of the "boilerplate objection."[5] As one commentator described this tradition,

> The hallmark of a boilerplate objection is its generality. The word "boilerplate" refers to "trite, hackneyed writing"—an appropriate definition in light of how boilerplate objections are used. An objection to a discovery request is boilerplate when it merely states the legal grounds for the objection without (1) specifying how the discovery request is deficient and (2) specifying how the objecting party would be harmed if it were forced to respond to the request. For example, a boilerplate objection might state that a discovery request is "irrelevant" or "overly broad" without taking the next step to explain why. These objections are taglines, completely "devoid of any individualized factual analysis." Often times they are used repetitively in response to multiple discovery requests. Their repeated use as a method of effecting highly uncooperative, scorched-earth discovery battles has earned them the nicknames "shotgun"—and "Rambo"—style objections. The nicknames are indicative of the federal courts' extreme disfavor of these objections.[6]

These "boilerplate objections" violate the rule that "[t]he grounds for objecting" be "stated with specificity" as to interrogatories and that objections to document requests be "state[d] with specificity . . . including the reasons."[7]

> In other words, "merely assert[ing] boilerplate objections that the discovery sought is vague, ambiguous, overbroad, unduly burdensome, etc. . . .  without specifying how each [interrogatory or] request for production is deficient and without articulating the particular harm that would accrue if [the responding

---

[4] Paul W. Grimm, *Are We Insane? The Quest for Proportionality in the Discovery Rules of the Federal Rules of Civil Procedure*, 36 THE REV. OF LITIG. 117, 123-34 (Winter 2017) (addressing 30 years of amendments to the Federal Rules of Civil Procedure and the discovery practices that all of the amendments sought to change).

[5] Fed. R. Civ. P. 26 advisory committee's note to the 2015 Amendments.

[6] Matthew L. Jarvey, *Boilerplate Discovery Objections: How They are Used, Why They are Wrong, and What We Can Do About Them*, 61 DRAKE L. REV. 913, 914–16 (2013) (footnotes omitted).

[7] Fed. R. Civ. P. 33(b)(4); 34(b)(2)(B).

party] were required to respond to [the] discovery requests" simply is not enough.[8]

The amendments to the Federal Rules of Civil Procedure themselves along with cases too numerous to cite here have all declared an ignominious end to the tradition of boilerplate objections.[9]

Nevertheless, this odious tradition continues because it provides a sense of security—albeit false—on the high-pitched roof of civil litigation. Most civil litigators believe that if they simply play all objections, then they cannot be found to have waived any. But this traditional reliance on boilerplate objections is misplaced for two reasons. First, there is no provision in the Federal Rules of Civil Procedure that allows a party to assert objections simply to preserve them.[10] Instead, as stated above, the Federal Rules require that objections be specific.[11] Second,

---

[8] *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 185 (N.D. Iowa 2017) (citation omitted).

[9] Although the cases are too numerous to cite, here are just a few over the past 40 years: *Id.*; *Fischer v. Forrest*, No. 14-CV-1304-PAE-AJP, 2017 WL 773694, *1, *3 (S.D.N.Y. Feb. 28, 2017) (issuing "a discovery wake-up call" that general objections violate the rules especially after 2015 amendments to Federal Rules of Civil Procedure); *Precision Timber v. United States*, No. 98-720 C, 2001 WL 1819224, *6 (Fed. Cl. March 6, 2001) ("It is well established in federal practice that broad and sweeping objections to interrogatory and document requests are improper."); *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996) ("Mere recitation of the familiar litany that an interrogatory or a document production request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice."); *In re Folding Carton Antitrust Litig.*, 83 F.R.D. 260, 264 (N.D. Ill. 1979) ("General objections may result in waiver of the objections. Plaintiffs' catch-all objection named every conceivable ground including objections that the interrogatories are duplicative, not relevant to the subject matter of the litigation, oppressive, and overly vague. Plaintiffs' response was so broad as to be meaningless.").

[10] *See Morgan v. Wesley Med. Ctr. LLC*, No. 18-2158-KHV-KGG, 2019 WL 2067363, at *3 (D. Kan. May 9, 2019) (citing *Nyanjom v. Hawker Beechcraft, Inc.*, No. 12-1461-JAR-KGG, 2014 WL 2135997, at *1 (D. Kan. May 22, 2014)); *D.J. Simmons, Inc. v. Broaddus*, No. CIV 99-1105 JP/LFG, 2001 WL 37125080, at *3 (D.N.M. July 10, 2001).

[11] *See* Fed. R. Civ. P. 34(b)(2), 33(b)(4).

4

issuing a boilerplate objection often results in the opposite of preservation: waiver of objection.[12]

As one learned jurist said regarding the preservation of objections through boilerplate,

> Many federal courts have opined that "subject to" or "without waiving"
> objections are misleading, worthless and without legitimate purpose or effect.
> They reserve nothing. As one federal judge observed, "The Parties shall not recite
> a formulaic objection followed by an answer to the request. It has become
> common practice for a Party to object on the basis of any of the above reasons,
> and then state that 'notwithstanding the above,' the Party will respond to the
> discovery request, subject to or without waiving such objection. Such an objection
> and answer preserves nothing and serves only to waste the time and resources of
> both the Parties and the Court. Further, such practice leaves the requesting Party
> uncertain as to whether the question has actually been fully answered or whether
> only a portion of the question has been answered. . . ." "Without waiving" and
> "subject to" objections are cute and tricky but plainly violate the purpose of our
> Rules of Civil Procedure: "to secure just, speedy and inexpensive determination
> of every action."[13]

Consequently, the continued tradition of these boilerplate objections waives the objections while violating the rules. Instead of making the objecting attorney more surefooted on the pitched roof of civil litigation, this tradition places the objecting attorney in greater danger. Accordingly, for the benefit of the requestor, objector, and the court, this tradition must be broken here.

### FACTUAL BACKGROUND

On May 3, 2019, Plaintiffs Michael Alexander ("Mr. Alexander") and Smash Technology, LLC ("Smash Tech") (collectively, "Plaintiffs") served their initial disclosures on

---

[12] *See*, *e.g.*, *Mills v. E. Gulf Coal Preparation Co., LLC*, 259 F.R.D. 118, 132 (S.D.W. Va. 2009) ("Failure to state objections specifically in conformity with the Rules will be regarded as a waiver of those objections." (citing *Sabol v. Brooks*, 469 F. Supp. 2d 324, 328 (D. Md. 2006))).

[13] *Liguria Foods*, 320 F.R.D.at 187 (quoting Chief Justice Menis E. Ketchum II, Impeding Discovery: Eliminating Worthless Interrogatory Instructions and Objections, 2012–JUN W. Va. L. 18, 19 (2012) (emphasis added, citation omitted)).

5

Defendants in which Plaintiffs failed to provide the required computation of damages.[14] Instead, Plaintiffs stated that they would provide a damage calculation after "special or expert testimony" that would "likely" include: the loss of Mr. Alexanders' investment into Smash Tech, the diminution of value to Smash Tech, and the loss from an alleged misappropriation of intellectual property. However, the initial disclosures failed to even provide an amount that each "likely" category of damages would support.

    Given this unserviceable disclosure on a required matter, Defendants served interrogatories and document requests upon Mr. Alexander and Smash Tech seeking clarification regarding the amount and basis for Plaintiffs' damages.[15] In response, both Mr. Alexander and Smash Tech each provided a couple of pages of "General Objections" in which Plaintiffs objected to every one of Defendants' discovery requests "to the extent that" they sought information that was privileged or violated an applicable rule.[16] Mr. Alexander and Smash Tech both incorporated these "General Objections" into each discovery response and specifically objected that the interrogatories and document requests pertaining to damages were "compound, overly broad, unduly burdensome, and oppressive in the amount and format of the information required."[17] However, Plaintiffs provided no further explanation. For good measure, Plaintiffs further objected "to the extent that" the interrogatory for a damage calculation called for expert

---

[14] ECF No. 77-1 at 11 of 13.

[15] ECF Nos. 77-2 at 5 of 17, 77-3 at 6 of 20.

[16] ECF Nos. 77-2 at 2-4 of 17; 77-3 at 3-5 of 20.

[17] ECF Nos. 77-2 at 6 of 17; 77-3 at 6 of 20.

testimony[18] and, as to the corresponding document request, "to the extent that" the request sought "documents in the custody, possession, and/or control of Defendants and other related third parties."[19] As to the interrogatories on damages, Mr. Alexander and Smash Tech then stated "[s]ubject to and consistent with the foregoing objections" that they had not calculated their damages "[a]t this early stage of discovery."[20] As to the document requests on damages, Plaintiffs responded "subject to and consistent with the foregoing objections" that they had already produced some documents, that they were now producing more, but Plaintiffs said nothing about what they withheld as a result of their objections to the document requests.[21] Thus, Defendants and the court are left wondering what consequence any of these boilerplate objections had in Plaintiffs' responses to the interrogatories and document requests regarding Plaintiffs' purported damages. Additionally, Plaintiffs' responses to Defendants' interrogatories were not verified.[22]

This pattern of boilerplate tradition follows in nearly all the objections to Defendants' First Set of Interrogatories and Requests for Production of Documents. The request and truncated objections are in tabular form below.

---

[18] ECF No. 77-2 at 6 of 17; 77-3 at 6 of 20.

[19] ECF No. 77-2 at 10-11 of 17; 77-3 at 13 of 20.

[20] ECF No. 77-2 at 6 of 17; 77-3 at 6 of 20.

[21] ECF Nos. 77-2 at 11 of 17; 77-3 at 13 of 20.

[22] ECF Nos. 77-2 at 16 of 17; 77-3 at 19 of 20.

Discovery Requests Regarding Mr. Alexander[23]

| Defendants' Request | Mr. Alexander's Response |
|---|---|
| **Interrogatory No. 5**: In paragraph 43 of the complaint you allege that you have performed all your material obligations in your contract with Ulrich. Please identify each instance of performance of your obligations, the nature of your performance, and the date of performance. | (1) Incorporates his General Objections;<br>(2) Objects to the meaning of the phrase "each instance of performance of your obligations" as vague and not proportional to the case because it may involve hundreds of instances;<br>(3) Objects to this request as "vague," compound, overly broad, unduly burdensome, and oppressive without further explanation;<br>(4) Objects that this is a "contention interrogatory"; and<br>(5) States that "consistent with" his objections, he cannot supply an answer due to Defendants' misconduct. |
| **Request for Production No. 6**: Please produce copies of any documents supporting or relating to your claim that Ulrich agreed to build his Bitclub Network business to produce adequate sales and production volume to maximize daily earnings from Tatiana Alexander's Uberfund and Centurion Bitclub Network, as alleged in paragraph 11 of your complaint. | (1) incorporates his General Objections,<br>(2) objects that this request is "overly broad, unduly burdensome, and oppressive in the amount and format of the information required";<br>(3) objects to this request "<u>to the extent that</u> [request] seeks documents in the custody, possession, and/or control of Defendants" and other related third parties;<br>(4) "objects . . . <u>to the extent</u> [request] calls for expert testimony . . . ."; and<br>(5) Responds with some documents "[s]ubject to and consistent with the foregoing objections" without explaining if any documents were withheld as a result of these objections. |

---

[23] ECF No. 77-2 at 9, 13-14 of 17.

Discovery Requests Regarding Smash Tech[24]

| Defendants' Request | Smash Tech's Response |
|---|---|
| **Interrogatory No. 3**: In paragraph 19 of the operative complaint you allege that Ulrich engaged in financial misconduct. Please identify each instance of misconduct that support this contention, including the date of the misconduct, the amount of the improper financial transaction, and the method used in the financial misconduct. | (1) Incorporates his General Objections; (2) Objects that the request seeks information in control of Defendants or related third parties; (3) Objects to the meaning of the phrase "each instance of misconduct" as vague and not proportional to the case; (4) Objects to this request as "vague"; compound, overly broad, unduly burdensome, and oppressive without further explanation; (5) Objects that this is a "contention interrogatory,"; and (6) States that "consistent with" his objections, it cannot supply an answer due to Defendants' misconduct. |
| **Request for Production No. 3**: Please produce copies of all federal and state tax returns filed in the United States for the taxable years 2015 through the present. | (1) Incorporates its General Objections; (2) Objects that this request is "overly broad, unduly burdensome, and oppressive in the amount and format of the information required" without further explanation; (3) Objects to the time period and relevance without further explanation; and (4) "Subject to and consistent with the foregoing objections," it states that it has no responsive documents without providing an explanation whether the failure to provide documents is attributable to its objections. |
| **Request for Production No. 4**: Please provide any agreements, contracts, or draft documents between Technology and any individual or entity for employment, membership, ownership, or operations with Technology. | (1) Incorporates its General Objections; (2) Objects "to the extent [request] seeks documents in the custody, possession, and/or control of Defendants and other related third parties"; and (3) Answers that it has produced documents and produces more "[s]ubject to and consistent with the foregoing objections" without explaining whether it withheld any documents as a result of its objections. |
| **Request for Production No. 6**: Please produce copies of any documents supporting or relating | (1) Incorporates its General Objections; |

---

[24] ECF No. 77-3 at 7-9, 13-17 of 19.

| | |
|---|---|
| to your claim that you have conferred benefits upon Ulrich or Solutions that constitute unjust enrichment, as alleged in the fourth cause of action of your complaint. | (2) Objects "to the extent [request] seeks expert testimony before relevant expert deadlines in the Court's scheduling order"; <br> (3) Objects "to the extent that [request] seeks documents in the custody, possession, and/or control of Defendants and other related third parties"; and <br> (4) Answers that it has produced documents and produces more "[s]ubject to and consistent with the foregoing objections" without explaining whether it withheld any documents as a result of its objections. |
| **Request for Production No. 7**: Please produce copies of any documents reflecting, supporting, or relating to the claim that you have made payments to Feracode pursuant to an agreement between Technology and Feracode entered in March 2018, as alleged in paragraph 15 of the complaint, including but not limited to checks, wire transfer records, payment receipts, bank account records, and other related documents. | (1) Incorporates its General Objections; <br> (2) Objects that this request is "overly broad, unduly burdensome, and oppressive in the amount and format of the information required" without further explanation; <br> (3) Objects "to the extent [request] seeks expert testimony before relevant expert deadlines in the Court's scheduling order"; <br> (4) Objects "to the extent that [request] seeks documents in the custody, possession, and/or control of Defendants and other related third parties"; and <br> (5) Answers that it has produced documents and produces more "[s]ubject to and consistent with the foregoing objections" without explaining whether it withheld any documents as a result of its objections. |
| **Request for Production No. 9**: Please produce copies of any documents supporting or relating to your claim that Ulrich or Solutions converted funds or other property belonging to Technology, as alleged in the eleventh cause of action of your complaint. | (1) Incorporates its General Objections; <br> (2) Objects "to the extent [request] seeks expert testimony before relevant expert deadlines in the Court's scheduling order"; <br> (3) Objects "to the extent that [request] seeks documents in the custody, possession, and/or control of Defendants and other related third parties"; and <br> (4) Answers that it has produced documents and produces more "[s]ubject to and consistent with the foregoing objections" without explaining whether it withheld any documents as a result of its objections. |

Defendants subsequently served a second set of document requests upon Mr. Alexander.[25] However, Mr. Alexander failed to timely respond, failed to seek more time from opposing counsel, and failed to move this court for additional time.

While these discovery issues were being discussed between the parties' respective counsel, Plaintiffs' counsel withdrew.[26] Plaintiffs' new counsel inherited these discovery disputes, but the parties were still unable to resolve them. Consequently, Defendants filed two motions to compel challenging the discovery responses discussed above[27] and a separate motion to compel regarding Mr. Alexander's failure to respond to Defendants' second request for production of documents.[28]

In resolving these three pending motions, the court begins with the two motions challenging Plaintiffs' responses to Defendants' first set of discovery requests.[29] Thereafter, the court addresses Defendants' motion to compel Mr. Alexander to respond to Plaintiffs' second request for production of documents.[30] After deciding these three motions, the court discusses the appropriate sanctions to impose against Plaintiffs for relying on prohibited discovery

---

[25] ECF No. 79-1.

[26] ECF No. 71.

[27] ECF Nos. 77, 78.

[28] ECF No. 79.

[29] ECF Nos. 77, 78.

[30] ECF No. 79.

traditions, failing to verify their interrogatory responses, and for Mr. Alexander's failure to respond to Defendants' second request for production of documents.

## I.   DEFENDANTS' MOTIONS TO COMPEL MR. ALEXANDER'S AND SMASH TECH'S RESPONSES TO THE FIRST SET OF DISCOVERY REQUESTS

To decide Defendants' two motions challenging Plaintiffs' responses to the first set of discovery requests, the court must cut through a great deal of tradition. To efficiently do so, the court addresses Plaintiffs' objections to the first set of discovery requests in categories. The first category addresses "boilerplate objections." The second objection category addresses Plaintiffs' objection to "contention interrogatories." The final objection category discusses Plaintiffs' specific concerns with the wording of Interrogatory 5 to Mr. Alexander and Interrogatory 3 to Smash Tech. As shown below, Plaintiffs' objections fail.

### A.   Boilerplate Objections: A Tradition No More

The court overrules all of Plaintiffs' boilerplate objections because they are and have long been violative of the Federal Rules of Civil Procedure. For purposes of this order, the term "boilerplate objections" consists of: (1) Plaintiffs' General Objections; (2) objections as to overbreadth, undue burden, and proportionality without further explanation; (3) objections containing the phrase "to the extent that"; and (4) refusals to provide information based on Defendants' misconduct. As shown below, these objections all fail for want of specificity.

Both Rule 33 and Rule 34 respectively impose specificity requirements when responding to interrogatories and document requests. "The grounds for objecting to an interrogatory must be

stated with specificity,"[31] and, as to document requests, the responding party must "state with specificity the grounds for objecting to the request."[32] Where, as here, the rules themselves do not define a term, courts apply the term's "ordinary and customary meaning."[33] The term "specificity" is undefined in the rules, but its customary meaning is: "The quality or fact of being specific in operation or effect."[34] The word, "specific" means in relevant part, "Having a special determining quality; Peculiar to, characteristic of, something."[35] Thus, under a plain language approach to Rules 33 and 34, a responding party's objections must have a "special determining quality" that is "peculiar to" or "characteristic of" the request to which the responding party is objecting.

Numerous federal court decisions bolster this plain-language interpretation of Rules 33 and 34. Among them is *Liguria Foods, Inc. v. Griffith Laboratories, Inc.*,[36] in which the parties' objections to discovery requests were as steeped in tradition as those at issue here.[37] The *Liguria* court overruled the parties' objections in that action for failing to meet the specificity requirements of Rules 33 and 34. In doing so, the court stated,

---

[31] Fed. R. Civ. P. 33(b)(4).

[32] Fed. R. Civ. P. 34(b)(2)(B).

[33] *Peabody Twentymile Mining, LLC v. Sec'y of Labor*, 931 F.3d 992, 997 (10th Cir. 2019)

[34] *Specificity*, OXFORD ENGLISH DICTIONARY.

[35] *Specific*, OXFORD ENGLISH DICTIONARY.

[36] 320 F.R.D. 168 (N.D. Iowa 2017).

[37] *Id.* at 173-79 (providing tables of the parties' discovery objections).

> When, as here, an objecting party makes no attempt to "show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive," and no attempt to "articulat[e] the particular harm that would accrue if [the responding party] were required to respond to [the proponent's] discovery requests," but relies, instead, on "the mere statement . . . that the interrogatory [or request for production] was overly broad, burdensome, oppressive and irrelevant," the response "is not adequate to voice a successful objection"; instead, the response is an unacceptable "boilerplate" objection. Moreover, simply stating that a response is "subject to" one or more general objections does not satisfy the "specificity" requirement, because, for example, it leaves the propounding party unclear about which of the numerous general objections is purportedly applicable as well as whether the documents or answers provided are complete, or whether responsive documents are being withheld.[38]

Accordingly, to meet the specificity requirements of Rules 33 and 34, an objecting party must do more than rattle off a litany of trite phrases or make an objection "subject to" other trite phrases located elsewhere in the discovery response. Instead, the objecting party must explain how each objection applies to each specific discovery request. And as to document requests, "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34(b)(2)(C). Thus, the objector must state whether responsive materials were withheld and link each specific objection to what was withheld. Otherwise, the objection fails to comply with Rules 33 and 34 and is therefore waived.

Further, the "to the extent that" moniker does not satisfy the specificity requirement because the objecting party is not even definitively contending that there is an actual, objection-worthy problem in the request. "To the extent that" is a feeble "maybe" objection behind which the objector lacks the resolve to definitively state whether something actually occurred that

---

[38] *Id.* at 186-87 (citations omitted).

warrants objecting. It is the equivalent of saying, "I am not sure that this request is worthy of objection, but if it is, then I object." Imagine trying such a tactic at trial. Counsel begins to examine a witness, and opposing counsel rises and objects "to the extent that" any of the examining counsel's questions or the witness's answers violate a privilege, rule of evidence, or rule of procedure. Besides rightfully evoking the trial judge's ire, such "generalized objections" preserve nothing on appeal.[39] Not surprisingly, the generalized "to the extent that" objection also lacks the requisite specificity to comply with Rules 33 and 34.

Moreover, merely objecting that the other party has allegedly misbehaved, without any further explanation, fails to satisfy the specificity requirements. Rule 26(d)(3) clearly states that "discovery by one party does not require any other party to delay discovery."[40] Thus, the default rule is that "a party cannot delay responding to discovery simply because the other party has not yet responded to its discovery."[41] The only way to change this default rule is to persuade the court through a motion for protective order that a different sequence is necessary.[42] That has not happened here.

Given this ample authority, the court overrules all of Plaintiffs' boilerplate objections, as that term is used in this decision. Plaintiffs mere use of the title "General Objections" should

---

[39] *See, e.g., United States v. Zapata*, 546 F.3d 1179, 1190 (10th Cir. 2008) ("Thus, we have held that a generalized objection to an instruction is insufficient to preserve a specific objection on appeal." (emphasis added)).

[40] Fed. R. Civ. P. 26(d)(3).

[41] *Liguria Foods*, 320 F.R.D. at 183.

[42] Fed. R. Civ. P. 26(b)(2) (allowing court limit discovery including sequence).

have clearly signaled a violation of the specificity requirements in Rules 33 and 34. General objections neither explain nor preserve anything. They are empty, useless traditions that do nothing but make discovery unnecessarily cumbersome. Similarly, Plaintiffs' explanation-less "undue burden" objections and all of Plaintiffs' "to the extent that" objections fail the specificity requirements because they conceal from opposing counsel and the court the actual problem with each request. Finally, Plaintiffs fail to explain what misconduct of Defendant is precluding them from producing the requested discovery. This lack of specificity dooms these objections. Therefore, all these objections are OVERRULED in every discovery response in which they appear. The tradition is over.[43]

> B.  Contention Interrogatories are Permissible but the Response Deadline is Extended

Plaintiffs' "contention interrogatory" objections to Interrogatory No. 5 regarding Mr. Alexander and Interrogatory No. 3 regarding Smash Tech also fail, but the nature of the interrogatories warrants more time to respond. This type of interrogatory "ask[s] a party: to state what it contends, . . . [or] to state all the facts upon which it bases a contention."[44] Although Plaintiffs contend that contention interrogatories are contrary to law—and the court readily concedes that this type of interrogatory can be tedious—"it is well settled that contention

---

[43] Although Plaintiffs answered some discovery requests "[s]ubject to and consistent with the foregoing objections," this too is improper especially where, as here, Plaintiffs failed to disclose whether any consequence arose from any of the proffered objections. *Liguria Foods*, 320 F.R.D. at 187. Objections must have a consequence or else they become mere confusing background noise that interferes with the judiciary's ability to listen for the real problems in a dispute.

[44] *Everett v. USAir Grp., Inc.*, 165 F.R.D. 1, 3 (D.D.C. 1995) (quoting *B. Braun Med. Inc. v. Abbott Labs.*, 155 F.R.D. 525, 527 (E.D. Pa. 1994)) (internal quotation marks omitted).

interrogatories that seek non-privileged information are permissible and warrant a response."[45] Indeed, Federal Rule of Civil Procedure 33(a)(2) provides that "[a]n interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact . . . ." Thus, objecting merely because an interrogatory appears to be of the "contention" variety is, by itself, an invalid objection. Accordingly, Plaintiffs' objections in this regard are overruled.

Although a contention interrogatory must be answered, the nature of such interrogatories warrants special treatment. Rule 33 provides that "the court may order that the [contention] interrogatory need not be answered until designated discovery is complete . . . or some other time."[46] Under this provision, many courts defer the obligation to respond to the contention interrogatory "until near the end of the discovery period unless the proponent carries its burden of demonstrating why they are necessary earlier on."[47] Defendants have not addressed why a response is necessary now.

---

[45] *English v. Wash. Metro. Area Transit Auth.*, 323 F.R.D. 1, 19 (D.D.C. 2017); *see also* Steven S. Gensler, Lumen N. Mulligan, *Rule 33* FED. R. OF CIVIL PRO., RULES AND COMMENTARY (February 2020 update) ("Contention interrogatories are clearly permitted.").

[46] Fed. R. Civ. P. 33(a)(2).

[47] *Everett*, 165 F.R.D. at 3 (citing *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 335-36 (N.D. Cal. 1985)); *see also* Steven S. Gensler, Lumen N. Mulligan, *Rule 33* FED. R. OF CIVIL PRO., RULES AND COMMENTARY (February 2020 update) ("[T]he court may permit the answering party to defer answering until a more appropriate time. While courts often say that contention interrogatories ordinarily should be deferred until after discovery, that is not a hard and fast rule.").

Exercising the court's broad authority to regulate discovery,[48] Mr. Alexander must respond to Interrogatory No. 5 and Smash Tech must respond to Interrogatory No. 3 no later than 30 days after the close of fact discovery. The reason for this decision is that Interrogatory No. 5 asks Mr. Alexander to identify each "instance" in which he performed his contractual obligations to Ulrich along with the "nature" and "date" of performance. Similarly, Interrogatory No. 3 asks Smash Tech to provide detailed information regarding instances, nature, and dates of alleged "misconduct" by Ulrich. To provide a useable response, Mr. Alexander and Smash Tech will need the befit of fact discovery. Therefore, Plaintiffs' "contention interrogatory" objections are OVERRULED, but the period to respond to the aforementioned interrogatories is deferred as noted above.[49]

---

[48] *Sec. & Exch. Comm'n v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) ("The district court has broad discretion over the control of discovery, and [the Tenth Circuit] will not set aside discovery rulings absent an abuse of that discretion."); *Hutchinson v. Pfeil*, 105 F.3d 562, 566 (10th Cir. 1997) ("Discovery is a nondispositive matter[] and magistrate judges have the authority to order discovery sanctions.").

[49] Unlike "contention interrogatories," Plaintiffs' obligation to provide a damage calculation in its initial disclosures and in response to Defendants' interrogatories cannot be deferred until a later date. Plaintiffs have made claims about how much Mr. Alexander invested, which he concedes is relevant to determining his damage claim. ECF No. 77-1 at 11 of 13. Both he and Smash Tech have an obligation to provide their damage disclosures and cannot claim that they will figure it out later. Obviously, the numbers may change as new evidence is discovered, but that does not excuse them from disclosing what they now know. Indeed, absent a court order, "it is not an 'objection' at all, and certainly not a valid one, that a party may not have a response or responsive documents, yet, or that the party may have to supplement its response later, because Rule 26(e) imposes that very obligation to supplement responses." *Liguria*, 320 F.R.D. at 186. Plaintiffs must provide Defendants with a damage calculation a required by Federal Rule of Civil Procedure 26(a)(3) and Defendants' interrogatories to both Mr. Alexander (i.e., Interrogatory Nos. 1, 2) and Smash Tech (i.e., Interrogatory No. 1).

C.  Plaintiffs' Specific Objections to Interrogatories 5 and 3 Fail.

After all the aforementioned boilerplate objections, the court finally gets to what the rules seek to resolve: specific objections to specific interrogatories. In Interrogatory No. 5 to Mr. Alexander and Interrogatory No. 3 to Smash Tech, Plaintiffs object that the meaning of the phrases "each instance of performance in your obligations" and "each instance of misconduct" used in each respective interrogatory are both too vague to warrant a response.[50] "The party claiming that an interrogatory is vague has the burden of demonstrating its vagueness."[51] "The responding party should exercise 'common sense' and attribute ordinary definitions to terms in discovery requests."[52] Plaintiffs fail to meet their burden here.

In addressing these specific objections, the court is cognizant that it is dealing with two "contention interrogatories" allowed under Federal Rule of Civil Procedure 33(a)(2). Indeed, Rule 33(a)(2) allows interrogatories to ask for "the application of law to fact."[53] That is precisely what the objected-to phrases require. Mr. Alexander must state what he believes to be acts of contract compliance, which necessarily requires the application of law to facts. Similarly, Smash Tech must state what it believes to acts of "misconduct," which necessarily requires it to apply law to facts. Being able to read what Mr. Alexander and Smash Tech believe to constitute contract compliance and misconduct, respectively, is precisely what these interrogatories are

---

[50] ECF Nos. 77-2 at 9 of 17; 77-3 at 7 of 20.

[51] *Swackhammer v. Sprint Corp.*, 225 F.R.D. 658, 662 (D. Kan. 2004) (footnote omitted).

[52] *Rogers v. Giurbino*, 288 F.R.D. 469, 489 (S.D. Cal. 2012)

[53] Fed. R. Civ. P. 33(a)(2).

after. Consequently, they are not vague, and Plaintiffs' aforementioned specific objections are OVERRULED.

## II.   DEFENDANTS' MOTION TO COMPEL MR. ALEXANDER TO RESPOND TO THE SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

Defendants' motion to compel Mr. Alexander's response to their second request for production of documents must be granted. Federal Rule of Civil Procedure 34(b)(2) requires a respondent to respond to a document request "within 30 days after being served" unless the parties agree or the court determines otherwise. Where, as here, a party fails to comply with the production deadline, Rule 37(a)(3)(B)(iv) allows the aggrieved party to file a motion to compel a response, which Defendants did. Plaintiffs do not seek a post-deadline extension of time to respond under Rule 6. Therefore, Mr. Alexander's response to the second set of document requests is late, and Defendants' motion to compel is GRANTED.

## III.   SANCTIONS

"Imposing sanctions is an odious task."[54] Indeed, imposing sanctions was certainly not a reason why I became a Magistrate Judge. The hit that sanctions put on attorneys and their clients is not lost on the court. However, to curb discovery abuses, the Federal Rules of Civil Procedure provide that this court "must" require the sanctions of costs, including attorney's fees, when a motion to compel is granted unless, among other things, "the opposing party's nondisclosure, response, or objection was substantially justified; or other circumstances make an award of expenses unjust."[55] The analysis below first addresses whether Plaintiffs' objections to discovery

---

[54] *Liguria Foods*, 320 F.R.D. at 188.

[55] Fed. R. Civ. P. 37(a)(5)(A).

requests and Mr. Alexander's failure to respond to Defendants' second request for production of documents is substantially justified followed by whether "other circumstances" militate against an award of costs and fees.

A. Substantially Justified

Neither Plaintiffs' discovery responses nor Mr. Alexander's failure to respond is substantially justified. "Substantially justified" is a familiar term to those who have ever worked with the Equal Access to Justice Act ("EAJA").[56] EAJA allows a "prevailing party" to collect attorney fees against the United States government unless the United States' litigating position was "substantially justified."[57] The United States Supreme Court held that a position is substantially justified if it is "justified in substance or in the main—that is, justified to a degree that could satisfy a reasonable person."[58] Stated differently, a government position is substantially justified "if it has a reasonable basis in both law and fact."[59] Where, as here, Rule 37 employs the same term of art as EAJA for the same purpose of awarding costs and attorney's fees, the court borrows from EAJA jurisprudence to determine substantial justification.[60]

---

[56] 28 U.S.C.A. § 2412(d)(1)(A).

[57] *Id.*

[58] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[59] *Hanover Potato Prods., Inc. v. Shalala*, 989 F.2d 123, 128 (3d Cir. 1993).

[60] *Lawson v. FMR LLC*, 571 U.S. 429, 459 (2014) ("[P]arallel text and purposes counsel in favor of interpreting . . . provisions consistently."); *Northcross v. Bd. of Educ. of Memphis City Sch.*, 412 U.S. 427, 428 (1973) (per curiam) (stating that when two provisions of different statutes share similar language, that is a "strong indication" they are to be interpreted consistently); *Morissette v. United States*, 342 U.S. 246, 263 (1952) (explaining that "where Congress borrows terms of art" it also borrows their meaning).

Based on the language of the rules themselves along with the numerous cases interpreting the rules, Plaintiffs' boilerplate objections, contention interrogatory objections, and specific objections to Interrogatory Nos. 3 and 5 lack a reasonable basis in fact or law. Plaintiffs' lack of specificity fails to provide either a factual basis or a legal basis for those objections. Moreover, Plaintiffs' failure to abide by the verification requirement of Rule 33(b)(3) further underscores the unjustifiable nature of their responses. Therefore, Plaintiffs are not substantially justified as to their arguments against responding to Defendants' first set of discovery requests.

Likewise, Mr. Alexander's failure to respond to Defendants' second request for production of documents is not substantially justified. Although Mr. Alexander was ill and even though COVID-19 has made litigation more cumbersome, he neither communicated with counsel nor with the court to seek an extension of time to respond. The court cannot find on these facts that his failure to provide a response was substantially justified.

B.  Other Circumstances

Although neither Plaintiffs' discovery responses nor Mr. Alexander's failure to respond are substantially justified, that does not end the sanctions inquiry. Instead, the court must exercise its ample discretion to determine whether "other circumstances" render unjust an award of costs and fees to Defendants.[61] The court first addresses Plaintiffs' discovery responses followed by Mr. Alexander's failure to respond.

---

[61] *In the Matter of Baker*, 744 F.2d 1438, 1441 (10th Cir. 1984) ("Of course the trial court has discretion to withhold the award of expenses, including reasonable attorney's fees, on an affirmative finding that the noncompliance was substantially justified or that other circumstances would make the award unjust.").

### 1.  *Plaintiffs' Discovery Responses*

As to Plaintiffs' discovery responses at issue in ECF Nos. 77 and 78, the court finds other circumstances that make the award of costs and attorney's fees unjust and, instead, applies a nonmonetary sanction. Attorneys who are no longer in this litigation drafted Plaintiffs' discovery responses. Therefore, assessing attorney fees against new counsel for work product that belongs to prior counsel seems unjust. Additionally, imposing costs and attorney's fees upon the client is unjust because the court cannot impute knowledge about proper discovery responses to a lay person that even good attorneys clearly do not understand. Therefore, monetary sanctions under these circumstances would be unjust.

However, the court has the authority to impose a non-monetary sanction.[62] Plaintiffs are ordered to provide new discovery responses to all the interrogatories and document requests for which Defendant filed ECF Nos. 77 and 78 as detailed at the end of this decision. If Plaintiffs opt for a traditional approach to responding anew to these discovery requests, the court will not hesitate to impose monetary sanctions when ruling on a subsequent motion to compel or a motion for protective order.[63]

### 2.  *Mr. Alexander's Failure to Respond*

As to Mr. Alexander's failure to respond to Defendants' second request for production of documents, the court finds no circumstances that make an award unjust. Mr. Alexander simply

---

[62] Fed. R. Civ. P. 26(b)(2).

[63] Although the court is unaware of whether Defendants also used tradition to govern their discovery responses, Defendants are now on notice. If they have relied on tradition, then the court trusts that they will meet and confer with Plaintiffs to either withdraw the verboten objections or amend their objections to comply with specificity requirements.

neglected to either respond or ask for more time to respond. This neglect warrants costs and attorney's fees for Defendants having to bring a motion to compel. Therefore, within 30 days of this order, Plaintiffs and Defendants must meet and confer on the amount of costs and attorney's fees that Defendants are claiming for having to file ECF No. 79. If the parties are unable to reach an agreement, then Defendants are ordered submit a motion within 14 days of the unsuccessful meet and confer that provides a detailed justification of their costs and fees. Plaintiffs will have 14 days to respond. Defendants will have 14 days after Plaintiffs' filing to provide a reply. None of the aforementioned briefs shall exceed 10 pages (including coversheet, facts, and legal argument).

## CONCLUSION

At the end of this opinion, just as at the end of *Fiddler on the Roof*, it is time to leave Anatevka. The former traditions to which civil litigators have long held should now be abandoned. If not, Rule 37(a)(5) will help rectify the inefficiencies and inequities that attorneys who cling to past traditions impose on parties, opposing counsel, and this court and, therefore, interfere with our collective duty to obtain the "just, speedy, and inexpensive determination of every action and proceeding."[64]

## ORDER

In summary, as detailed above, IT IS HEREBY ORDERED that:

(1)     Mr. Alexander must respond anew to Interrogatories 1 and 2 and document requests 1, 2, and 6 within 30 days of this order.

---

[64] Fed. R. Civ. P. 1.

(2)     Mr. Alexander must respond to Interrogatory No. 5 no later than 30 days after the

close of fact discovery.

(3)     Smash Tech must respond again to Interrogatory No. 2 and document requests 3,

4, 6, 7, and 9 within 30 days of this order.

(4)     Smash Tech must respond to Interrogatory No. 3 no later than 30 days after the

close of fact discovery.

(5)     All interrogatory responses must be "under oath."

IT IS SO ORDERED.

DATED this 30th day of June 2020.

BY THE COURT:

_____

JARED C. BENNETT
United States Magistrate Judge