## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| SMASH TECHNOLOGY, LLC, a Nevada limited liability company; and MICHAEL ALEXANDER, an individual,<br><br>**Plaintiffs,**<br><br>v.<br><br>SMASH SOLUTIONS, LLC, a Delaware limited liability company; JERRY "J.J." ULRICH, an individual; SMASH INNOVATIONS, LLC, a Wyoming limited liability company; and FERACODE, LLC, a Utah limited liability company,<br><br>**Defendants.** | **REPORT AND RECOMMENDATION**<br><br>**Case No. 2:19-cv-00105-TC-JCB**<br><br>**District Judge Tena Campbell**<br><br>**Magistrate Judge Jared C. Bennett** |

District Judge Tena Campbell referred this case to Magistrate Judge Jared C. Bennett under 28 U.S.C. § 636(b)(1)(B). Defendants Smash Solutions, LLC ("Smash Solutions"), Jerry Ulrich ("Mr. Ulrich"), Feracode, LLC ("Feracode"), and Smash Innovations, LLC's ("Smash Innovations") (collectively "Defendants") moved for summary judgment and for sanctions (jointly referred to as "Motion")[1] against Plaintiffs Smash Technology, LLC ("Smash Technology") and Michael Alexander's ("Mr. Alexander") (together, "Plaintiffs"). Besides Defendants' Motion, the court also considers, *sua sponte*, Plaintiffs' failure to prosecute their case and to comply with court orders. As shown below, the court recommends that: (1)

---

[1] Feracode filed a Joinder in Motion for Summary Judgment and for Sanctions. ECF Nos. 101, 103.

Defendants' Motion be granted in part and denied in part, and (2) Plaintiffs' action be dismissed in its entirety with prejudice pursuant to Fed. R. Civ. P. 37(b) and 41(b).

**BACKGROUND**

A.  <u>Mr. Ulrich and Mr. Alexander</u>

Mr. Ulrich invented a customer relationship management software ("CRM Software")[2] that his company, Smash Solutions, owns.[3] Mr. Alexander is a former shareholder of Smash Solutions and the present owner of Smash Technology.[4] Messrs. Ulrich and Alexander had numerous discussions from 2015 to 2018 about a joint venture or business partnership to commercialize the CRM Software.[5] The parties give very different accounts of the content and effect of those conversations and this action is centered, in part, on the parties' differing interpretations of those discussions.

On the one hand, Mr. Alexander alleges that these discussions culminated in an agreement between the parties under which Mr. Ulrich would transfer the CRM Software to Smash Technology (i.e., Mr. Alexander's company),[6] and, in turn, Mr. Alexander would fund

---

[2] The parties interchangeably refer to the product as "intellectual property," "technology," and "software." For ease of reference, the court refers to the product at issue simply as the "CRM Software."

[3] ECF No. 59 at ¶ 13. Mr. Ulrich is also a member or owner of Smash Innovations, though the particulars of the relationship of Smash Innovations to Smash Solutions are not entirely clear from the record.

[4] ECF No. 50 at ¶¶ 9-10.

[5] *Id.* at ¶¶ 12-15; ECF No. 59 at 19-23, 32-34.

[6] Although Mr. Alexander is the sole member of Smash Technology, he avers the parties intended to form an "equity partnership" in which Mr. Ulrich would eventually be added as the second member of Smash Technology, and the parties would share in proceeds. ECF No. 50 at ¶ 15.

the development of the CRM Software.[7] On the other hand, Mr. Ulrich contends that Smash Solutions contemplated engaging Mr. Alexander in a consulting capacity to raise funds and to connect it with potential investors.[8] Mr. Ulrich states that he and Mr. Alexander also discussed the prospect of granting Smash Technology a license to use the CRM Software,[9] but the parties were unable to agree on the particulars of any arrangement and eventually parted ways.[10] From Mr. Ulrich's perspective, discussion of a business partnership never developed beyond an exploratory level, and the communications broke down before any final agreement was reached.[11] He asserts that the parties did not reach either a verbal agreement or a written one. Consequently, Mr. Ulrich contends, Smash Solutions did not transfer the CRM Software rights to Smash Technology.[12]

     B.  Feracode

Mr. Alexander also brought claims against Feracode, a software development company. Smash Technology contracted with Feracode to develop the CRM Software at a cost of $1.7 million.[13] Mr. Alexander alleges Feracode breached the contract,[14] and Feracode asserts instead

---

[7] *Id.* at ¶ 12.

[8] ECF No. 59 at ¶¶ 21-22.

[9] *Id.* at ¶¶ 32-33.

[10] *Id.* at ¶ 34.

[11] *Id.*

[12] *Id.* at ¶ 51.

[13] *Id.* at ¶ 17.

[14] *Id.* at ¶¶ 17-20, 107-19.

that Mr. Alexander breached the contract by defaulting on payment obligations.[15] Feracode contends it terminated the contract pursuant to its terms and returned to work for Smash Solutions under a prior agreement with Smash Solutions.[16]

### C. Claims and Counterclaims

Plaintiffs filed suit against Defendants in state court, which was then removed to federal court.[17] Plaintiffs later amended their complaint to add Feracode and Smash Innovations as defendants to this action. The First Amended Complaint, filed on September 19, 2019, asserts 14 causes of action against Defendants, either individually or in some combination.[18] Mr. Ulrich, Smash Solutions, and Smash Innovations deny the allegations, and in turn assert six

---

[15] ECF No. 59 at ¶ 39.

[16] *Id.* at ¶ 40.

[17] ECF No. 2.

[18] ECF No. 50 at ¶¶ 30-119. In Counts I, IX, and X, Plaintiffs inappropriately assert claims for Injunctive Relief, Declaratory Judgment, and Equitable Accounting as separate causes of action. Injunctions and declaratory judgments are not separate causes of action; they are remedies for substantive causes of action. *Brickert v. Deutsche Bank Nat'l Tr. Co.*, 380 F. Supp. 3d 1127, 1141 (D. Colo. 2019) ("Plaintiff alleges a 'claim' for declaratory and injunctive relief, but such claim is actually a request for a certain type of relief and not a separate cause of action."). Similarly, an action for an equitable accounting seeks an equitable ruling that the requesting party is owed a certain sum of money by the opposing party. *Jordan v. Unified Gov't of Wyandotte Cnty.*, 100 F. Supp. 3d 1111, 1120 (D. Kan. 2015) ("'[P]laintiffs' 'claim' for an [equitable] accounting is not a separate cause of action but simply a method through which plaintiffs seek to calculate their damages . . . ."). Thus, a request for an accounting is a remedy sought in conjunction with a separate cause of action and is not a separate cause of action on its own. Because the court recommends dismissing Plaintiffs' complaint in its entirety, it is unnecessary to strike individual claims. However, if Judge Campbell disagrees with the undersigned's recommendation to dismiss the case, the court recommends dismissing Counts I, IX, and X for failure to state a claim. If Plaintiffs' claims were to survive, Plaintiffs could seek injunctive relief, declaratory judgment, and equitable accounting as remedies only and not as separate claims for relief.

counterclaims against Plaintiffs.[19] Feracode denies the Plaintiffs' allegations and does not assert

any counterclaims.[20]

     D.  <u>Procedural History</u>

The court issued a scheduling order that included a deadline for initial disclosures.[21]

Plaintiffs timely provided their initial disclosures but failed to include any computation or

documentation of damages as required under Fed. R. Civ. P. 26(a)(1)(A)(iii). Therefore, their

disclosures were incomplete.

Consequently, Defendants served Plaintiffs with their first set of written discovery

requests, seeking documents and information about Plaintiffs' claimed damages.[22] Plaintiffs'

response asserted that Plaintiffs had not yet calculated their damages and would supplement their

response with calculations following expert testimony.[23] Defendants served a meet-and-confer

letter on Plaintiffs regarding these deficiencies on September 16, 2019, but received no

---

[19] ECF No. 59 at ¶¶ 50-105. Defendants' counterclaims I and II also inappropriately assert separate claims for declaratory relief. However, requests for declaratory judgment and injunctions are not freestanding causes of action but forms of relief. *Brickert*, 380 F. Supp. 3d 1127 at 1141. Count I for declaratory judgment is addressed below. As to Counterclaim II, Defendants set forth injunctive relief as separate cause of action but do not specify the grounds or authority under which they seek it. Accordingly, the claim for injunctive relief (Counterclaim II) should be dismissed.

[20] ECF No. 61.

[21] ECF No. 25.

[22] ECF No. 101 at 3.

[23] ECF No. 77 at 2.

response.[24] Defendants later served a second request seeking production of documents they had requested but not received from Plaintiffs.[25]

Given Plaintiffs' discovery failures, Defendants filed three short form discovery motions arguing: (1) Plaintiffs did not provide damages calculations in either their initial disclosures or their responses to Defendants' first set of discovery requests;[26] (2) Plaintiffs did not adequately respond to Defendants' discovery requests seeking facts in support of Plaintiffs' claims;[27] and (3) Plaintiffs did not respond at all to Defendants' second set of discovery requests.[28] The court granted these motions and ordered Plaintiffs to respond to the discovery requests within 30 days of the order.[29] Because Plaintiffs would "need the benefit of fact discovery" to adequately respond to some of Defendants' interrogatories, the court ordered Plaintiffs to answer those interrogatories within 30 days of the close of fact discovery.[30] The court also sanctioned Plaintiffs for failing to respond to Defendants' second set of discovery requests and ordered Plaintiffs to pay Defendants' attorney's fees for the motion to compel.[31]

---

[24] *Id.*

[25] *Id.* at 4.

[26] ECF No. 77.

[27] ECF No. 78.

[28] ECF No. 79.

[29] ECF No. 90.

[30] *Id.*

[31] *Id.*

Plaintiffs timely served supplemental, albeit deficient, responses to Defendants' first set of discovery requests but did not respond to the second set of requests.[32] Defendants then served a meet-and-confer letter for Plaintiffs' latest failure to abide by the court's prior discovery order.[33] The parties met and conferred, and Plaintiffs agreed to pay Defendants' attorney's fees as ordered.[34] Plaintiffs also served responses to the second set of discovery requests—two weeks after the court-ordered deadline.[35] However, Plaintiffs have not paid the court-ordered and agreed-upon attorney's fees.[36]

Thereafter, Plaintiffs' counsel moved to withdraw as counsel, citing a breakdown in client communications.[37] The court granted that motion and ordered Mr. Alexander to find new counsel or to file a notice of pro se appearance within 21 days.[38] The court ordered Smash Technology to have new counsel file a notice of appearance within the same time.[39] The order warned Plaintiffs that failure to comply could result in sanctions "including but not limited to dismissal or default judgment."[40] September 21, 2020 was the deadline for filing a notice of

---

[32] ECF No. 101 at 2, 6.

[33] *Id.* at 6.

[34] *Id.* at 5; ECF No. 101-1.

[35] ECF No. 102 at 2.

[36] ECF No. 101 at 5.

[37] *Id.*; ECF Nos. 95, 96.

[38] ECF No. 98.

[39] *Id.* As an "artificial entity," Smash Technology cannot appear pro se and "must be represented by an attorney who is admitted to practice in this court." DUCivR 83-1.3(c).

[40] ECF No. 98 at 2.

appearance, and neither Mr. Alexander nor Smash Technology obtained new counsel.[41] Mr. Alexander never filed a notice of pro se appearance.[42] To date, Plaintiffs remain absent from this case. Fact discovery closed on October 30, 2020,[43] and Plaintiffs did not serve responses to the interrogatories that the court previously ordered within 30 days of this date.[44] Likewise, Plaintiffs failed to comply with the scheduling order to provide expert disclosures and reports.[45]

Defendants filed the instant Motion for Summary Judgment and for Sanctions on February 26, 2021.[46] The Motion requested sanctions preventing Plaintiffs from using any damages evidence or expert testimony at trial and sought summary judgment on the grounds that Plaintiffs could not support their damages claims.[47] Plaintiffs have not responded to the Motion.

## DISCUSSION

Given Plaintiffs' failure to comply with discovery orders and failure to prosecute, the court recommends dismissing Plaintiffs' claims with prejudice pursuant to Fed. R. Civ. P. 37(b)(2)(A)(v) and 41(b). The court also finds that, following this dismissal of Plaintiffs' claims, Defendants' request for declaratory judgment regarding the ownership of the CRM Software is

---

[41] ECF No. 101 at 13.

[42] *Id.*

[43] ECF No. 94.

[44] ECF No. 101 at 6.

[45] *Id.* at 6-7. Defendants timely designated experts and produced expert reports. ECF Nos. 99, 100. However, Plaintiffs did not seek any discovery from Defendants' experts by the February 5, 2021 deadline.

[46] ECF Nos. 101, 103.

[47] *Id.*

moot and should be denied. Dismissal of Plaintiffs' claims extinguishes the controversy over the ownership of the CRM Software and renders Defendants' request null.[48]

## I.    RULE 37(b) SANCTIONS AND RULE 41(b) FAILURE TO PROSECUTE

Because Rule 37 and Rule 41(b) sanctions are analyzed under the same standard, the court addresses them together. Rule 37 governs a party's failure to make disclosures or cooperate in discovery and permits a party to move to request appropriate sanctions. Rule 37(b)(2) states that "[i]f a party . . . fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders." Fed. R. Civ. P. 37(b)(2)(A). Such orders may include: (1) directing that matters addressed in the order be taken as established by the prevailing party; (2) prohibiting the sanctioned party from supporting or opposing claims or defenses or from introducing evidence; (3) striking pleadings in whole or in part; (4) staying the proceedings until the order at issue is obeyed; (5) dismissing the action in whole or in part; (6) entering judgment against the disobedient party; and (7) treating the failure to obey the orders at issue as contempt of court (except where the orders direct the party to submit to a physical or mental examination). *Id.* Discovery sanctions are designed to serve several purposes: ensuring that a party will not benefit from its failure to comply; obtaining compliance with the court's orders; punishing present litigation abuse; compensating victims of litigation abuse; streamlining court dockets and facilitating case management; and deterring noncompliance, both in the particular case and in litigation in general. *Burton v. R.J. Reynolds Tobacco Co.*, 203 F.R.D. 636, 640 (D. Kan. 2001)

---

[48] The court does not address the portion of Defendants' Motion for Summary Judgment seeking dismissal of Plaintiffs' claims, having recommended dismissal on other grounds.

(citing *White v. Gen. Motors Corp.*, 908 F.2d 675, 683 (10th Cir. 1990)). The imposition of

sanctions lies within the sound discretion of the court. *LaFleur v. Teen Help*, 342 F.3d 1145,

1151 (10th Cir. 2003).

     Rule 41(b) provides that an action may be dismissed "[i]f the plaintiff fails to prosecute

or to comply with [the federal] rules or a court order." Fed. R. Civ. P. 41(b). Although Rules

37(b) and 41(b) may be analyzed together, they are not interchangeable because sanctions

imposed pursuant to Rule 37(b) must arise from the violation of a discovery order, while

dismissal under Rule 41(b) may be warranted where the plaintiff generally flouts court orders,

regardless of whether or not those orders pertain to discovery. *See, e.g.*, *Gross v. Gen. Motors

Corp.*, 252 F.R.D. 693, 696 (D. Kan. 2008) (providing that where a party fails to comply with a

discovery order, the aggrieved party has the option of proceeding under either Rule 37(b) or Rule

41(b)). However, as recognized by the Tenth Circuit, sanctions under Rule 37(b) and dismissals

under Rule 41(b) are guided largely by the same analysis. *Gripe v. City of Enid, Okl.*, 312 F.3d

1184, 1188 (10th Cir. 2002).

     When considering dismissal under Rule 37(b) or 41(b), the court should consider the

following factors: (1) the degree of actual prejudice to the opposing party, (2) the degree of

interference with the judicial process, (3) the litigant's culpability, (4) whether the litigant was

warned in advance that dismissal was a likely sanction, and (5) whether a lesser sanction would

be effective. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir. 1992). These factors are non-

exhaustive and are not necessarily of equal weight. *Chavez v. City of Albuquerque,* 402 F.3d

1039, 1044 (10th Cir. 2005). Dismissal is an appropriate sanction "when the aggravating factors

outweigh the judicial system's strong predisposition to resolve cases on their merits." *Ehrenhaus,
965 F.2d at 921.*[49] The court finds these factors weigh heavily in favor of dismissal.

    A.  Degree of Prejudice to Opposing Party

        Plaintiffs' noncompliance with discovery has caused actual prejudice to Defendants'
ability to defend. Plaintiffs failed to adequately respond to Defendants' discovery requests
seeking evidence of damages, which is a basic and necessary component of the earliest discovery
in litigation. Fed. R. Civ. P. 26(a)(1)(A)(iii). More than ten months have passed since the court
ordered Plaintiffs to supplement their responses to Defendants' requests. Fact discovery closed
six months ago. Despite a court order, it appears Plaintiffs have not produced any computation or
evidence of damages. Defendants cannot craft an informed defense without this information.
Moreover, this litigation, which has now spanned over two years, has been at a virtual standstill
for the past ten months since counsel withdrew. Not only have Plaintiffs chosen not to
communicate with the court or appear in any way, they have stopped all forms of engagement,
including the decision to let the expert witness deadlines lapse—despite their assertion that
damages could only be determined through expert testimony. There is nothing to indicate that
Plaintiffs' behavior will change in foreseeable future. Already, Plaintiffs' conduct has cost
Defendants needless time and expense in attempting to resolve discovery issues. *See Kalkhorst v.*

---

[49] Plaintiffs have entirely failed to appear in this case. Even if this court were to deem Mr. Alexander, in his individual capacity, as a pro se litigant, the court's recommendation to dismiss the case with prejudice would remain the same. Plaintiffs who appear pro se are not excused from compliance with court orders and the Federal Rules of Civil Procedure. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (providing that the Tenth Circuit has "repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants" (quotations and citation omitted)); *DiCesare v. Stuart*, 12 F.3d 973, 979 (10th Cir. 1993). A pro se litigant is solely responsible for complying with case deadlines, court orders, and applicable rules. *Green v. Dorrell*, 969 F.2d 915, 917 (10th Cir. 1992). Mr. Alexander has not done so.

*Medtronic, Inc.*, No. 18-cv-580-KLM, 2018 WL 6697072, at *3, (D. Colo. Dec. 19, 2018)

("Allowing the case to proceed when Plaintiff has failed to comply with his obligations would

require Defendant to expend further unnecessary time and expense to defend against a case

which Plaintiff appears to have little interest in prosecuting on his own."); *see also Tolefree v.*

*Amerigroup Kan., Inc.*, No. 18-2032-CM-TJJ, 2018 U.S. Dist. LEXIS 195448, at *5 (D. Kan.

Nov. 15, 2018) ("Defendants have had plaintiff's allegations pending in an open court case for

nearly ten months, with no end in sight. Plaintiff, on the other hand, has shown little interest in

pursuing her claims or following court orders."). This factor weighs in favor of dismissal.

### B.  Amount of Interference with the Judicial Process

Plaintiffs' disregard of the court's orders has interfered with the judicial process by

showing a disregard for the effective administration of justice. Indeed, ignoring court orders

imposes unnecessary and inappropriate burdens on opposing counsel and on an already

overburdened court system. *Jones v. Thompson*, 996 F.2d 261, 265 (10th Cir. 1993) (ignoring

court orders "hinder[s] the court's management of its docket and its efforts to avoid unnecessary

burdens on the court and the opposing party"); *see also Taylor v. Safeway, Inc.*, 116 F.App'x

976, 978 (10th Cir. 2004) ("The judicial process essentially ground to a halt when [Plaintiff]

refused to respond to either the defendant's requests or the district court's orders."); *Oliver v.*

*Wiley*, No. 09-cv-00441-PAB, 2010 WL 3307611, at *2 (D. Colo. Aug. 18, 2010) (concluding

plaintiff's failure to comply with court orders "demonstrate[d] a lack of respect for the Court,

[Defendant], and the judicial process"). Plaintiffs have also interfered with the judicial process

by failing to comply with the court's orders to respond to Defendants' discovery requests, to pay

sanctions, to meet court-imposed deadlines, and to obtain new counsel or appear pro se. Their

continued non-compliance with the judicial process flouts the court's authority. *Ehrenhaus*, 965 F.2d at 920. The court's frequent review of the docket and preparation of orders to move this case along have increased the workload of the court and unnecessarily distracted it from other matters with parties who have met their obligations and deserve prompt resolution of their issues. "This order is a perfect example, demonstrating the substantial time and expense required to perform the legal research, analysis, and writing to craft this document." *Lynn v. Roberts*, No. 01-cv-3422-MLB, 2006 WL 2850273, at *7 (D. Kan. Oct. 4, 2006). This factor also militates toward dismissal.

### C.  Culpability of Plaintiffs

Plaintiffs are entirely at fault for the current state of litigation. Plaintiffs have failed to: adequately respond to Defendants' discovery requests, comply with multiple court orders, and be in touch with the court for long stretches. Plaintiffs have not communicated that their non-compliance with the Federal Rules, discovery deadlines, or orders of the court was inadvertent due to an inability to comply. *Armstrong v. Swanson*, No. 08-CV-00194, 2009 WL 1938793, at *4 (D. Colo. July 2, 2009) (finding plaintiff culpable when nothing in the record indicated external forces were to blame for plaintiff's failure to prosecute). Whereas Defendants appear diligent in their efforts to advance the case, Plaintiffs have been inaccessible and dilatory without explanation. *Xyngular Corp. v. Schenkel*, 200 F. Supp. 3d 1273, 1301 (D. Utah Aug. 2, 2016) (noting culpability does not require "actual ill will" but can be demonstrated by "substantial and prejudicial obduracy" or "conduct that delays or disrupts the litigation"). The third factor also favors dismissal.

D.  <u>Whether the Court Warned Noncomplying Litigant that Dismissal Was Likely Sanction</u>

Here, there can be no question that Plaintiffs were adequately warned that failure to comply with the court's orders could result in dismissal. On August 31, 2020, the court ordered Mr. Alexander to obtain new counsel or file a notice of pro se appearance and ordered Smash Technology to have new counsel file a Notice of Appearance. "A party who fails to file a Notice of Substitution of Counsel or Notice of Appearance . . . may be subject to sanction . . . including but not limited to dismissal or default judgment."[50]

This warning unmistakably put Plaintiffs on notice that dismissal was imminent. Additionally, Defendants' Motion for Summary Judgment and for Sanctions also constitutes notice of potential dismissal. *See, e.g.*, *Villeco v. Vail Resorts, Inc.*, 707 F.App'x 531, 535 (10th Cir. 2017) ("Both the Motion to Dismiss and the Notice to Submit gave [Plaintiff] notice that his complaint was subject to dismissal under Rule 41(b)."); *Smith v. City & Cnty. of Denver*, No. 07-cv-00154, 2009 WL 485163, *3 (D. Colo. 2009) (finding defendants' warning to plaintiff in their motion to dismiss was adequate). *But see Xyngular*, 200 F. Supp. 3d at 1323 (noting the factors are not equally weighted and "the absence of a warning is not dispositive"). Because Plaintiffs were warned that their case could be dismissed and still did nothing, this factor weighs in favor of dismissal.

E.  <u>Efficacy of Lesser Sanctions</u>

In considering the final factor, Plaintiffs' defiance of court orders and indifference to court deadlines and rules demonstrate a disregard for court orders and procedure that can only be

---

[50] ECF No. 98.

14

remedied through dismissal. Although the court recognizes the gravity of dismissing a case with prejudice under these circumstances, dismissal with prejudice is appropriate where, as here, Plaintiffs disregarded their case, wasted judicial resources, and caused Defendants to needlessly invest time and resources in defending a lawsuit which Plaintiffs stopped pursuing long ago. Moreover, the court is not convinced that imposing lesser sanctions on Plaintiffs would be fruitful considering Plaintiffs have consistently failed to comply with the court's prior orders, which include monetary sanctions.

Although Defendants request that Plaintiffs be prevented from presenting any evidence of damages at trial or calling expert witnesses to testify about damages, this court must go beyond this lesser sanction because Plaintiffs' own failure to produce evidence of damages, to timely designate experts, or to produce expert reports calculating damages has already achieved this result. Plaintiffs have effectively prevented themselves from supporting their claims. Therefore, this exclusion is no sanction at all and would have no punitive effect. *See, e.g.*, *Gripe*, 312 F.3d at 1187 (finding lesser sanctions inappropriate based on repeated failures to comply with court orders); *Jones v. Thompson*, 996 F.2d 261, 265-66 (10th Cir. 1993) (finding dismissal appropriate where plaintiffs, with the threat of dismissal facing them, still refused to comply with court orders); *Ehrenhaus*, 965 F.2d at 922 (finding dismissal appropriate where plaintiff intentionally failed to comply with court orders even after notice that noncompliance would result in dismissal); *De Foe v. Sprint/United Mgmt. Co.*, 196 F.R.D. 392, 395 (D. Kan. 2000) (finding lesser sanctions inappropriate where past court orders did not motivate plaintiff to move the case forward); *see also O'Neil v. Burton Grp.*, 559 F. App'x 719, 722 (10th Cir.

2014) (unpublished) ("[S]imply because lesser sanctions were available does not mean that the court was obligated to apply them."). Accordingly, the fifth factor weighs in favor of dismissal.

As shown above, all factors favor dismissal with prejudice. Litigants who disregard court rules and orders do so at their own peril. Regardless of the reasons that Plaintiffs chose to ignore the court's warnings, Plaintiffs' decisions have cost them their case. Accordingly, the court recommends that Plaintiffs' case be dismissed with prejudice pursuant to Rule 37(b)(2)(A)(v). Likewise, dismissal of this action pursuant to Rule 41(b) is also appropriate for the reasons discussed above, as it is evident that Defendants and this court will continue to suffer if this case remains stalled indefinitely. Therefore, Plaintiffs' claims should be dismissed with prejudice.

## II.     MOTION FOR SUMMARY JUDGMENT FOR DECLARATORY RELIEF

Besides seeking dismissal of Plaintiffs' causes of action, Defendants seek "summary judgment against the Plaintiffs and in favor of Smash Solutions" on their first counterclaim regarding Plaintiffs' ownership interests in the CRM Software.[51]  Pursuant to the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201, Defendants seek a declaration that "neither Alexander nor Smash Tech[nology] have any ownership interest in the [CRM Software] at issue in this

---

[51] *Id.* at 14. The instant Motion asks for a "ruling that neither Alexander nor Smash Tech[nology] have any ownership interest in the [CRM Software] at issue in this action." *Id.* at 19. Defendants' prior Partial Motion for Summary Judgment, by contrast, sought a ruling that "Solutions owns the Intellectual Property at issue in this case, and that Technology has no ownership interest." ECF No. 32 at 18. The court notes the important distinction between affirming Solutions as the owner and determining Technology has no ownership. The court addresses only Defendants' request for declaratory judgment that Plaintiffs have no ownership in the CRM Software. To the extent Defendants ask the court to affirmatively determine Solutions owns the CRM Software, the court declines to do so. Defendants have not provided sufficient information for the court to make such a determination. Moreover, the court cannot declare that Defendants are the owners of the CRM Software against any party that is not in this litigation because, to do so would both exceed this court's subject-matter jurisdiction and violate the due process rights of any other person or entity that may claim such a right but has not participated in this action. Therefore, the court only has authority to declare that Plaintiffs do not have ownership rights in the CRM Software. Although this court cannot declare Defendants' ownership rights against the rest of the world, the Copyright Act provides a mechanism for doing so. 17 U.S.C. §§ 408-09.

action."[52] They assert the record contains undisputed facts that no contract existed between the parties and, absent a contract, Plaintiffs are without "legal basis to allege a transfer of the Intellectual Property [or] to compel Smash Solutions to transfer the Intellectual Property to Smash Tech[nology]."[53]

Defendants' declaratory judgment counterclaim arises from the same set of operative facts as Plaintiffs' claims. Although Plaintiffs' claims are dismissed, the court retains jurisdiction over Defendants' claims because they are compulsory. *Berrey v. Asarco Inc.*, 439 F.3d 636, 645 (10th Cir. 2006); *Pipeliners Local Union No. 798 v. Ellerd*, 503 F.2d 1193, 1199 (10th Cir. 1974); Fed. R. Civ. P. 13(a). But the counterclaims for declaratory judgment must constitute "a case of actual controversy" at all stages of the suit for the court to exercise that jurisdiction under the DJA. 28 U.S.C. § 2201(a). The question central to the instant motion, then, is whether Defendants' counterclaim can be properly characterized as a justiciable controversy after the dismissal of Plaintiffs' claims with prejudice. For the reasons explained below, the court concludes it cannot and, therefore, recommends that Defendants' counterclaim for declaratory judgment be denied as moot.

The DJA allows a federal court to "declare the rights and other legal relations of any interested party seeking such declaration" when there is an "actual controversy" between parties. 28 U.S.C. § 2201. Declaratory judgment "settl[es] some dispute *which affects the behavior of the defendant towards the plaintiff*." *Hewitt v. Helms*, 483 U.S. 755, 761 (1987). A declaratory

---

[52] ECF No. 101 at 14.

[53] *Id.*

17

judgment action thus requires an "actual controversy" or dispute between the parties. *Unified Sch. Dist. v. Disability Rts. Ctr. of Kan.*, 491 F.3d 1143, 1147 (10th Cir. 2007). Without a controversy, the case is moot, and the court "has no power" to hear the case. *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997). "In the declaratory-judgment context, the mootness inquiry looks to whether the requested relief will actually alter the future conduct of the named parties." *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1114 (10th Cir. 2016). Indeed, the declaration must "have some effect in the real world." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010). Declaratory relief is therefore moot when it cannot "afford . . . meaningful relief" to the parties by resolving a controversy. *Id.*; *see also Jordan v. Sosa*, 654 F.3d 1012 (10th Cir. 2011) (no controversy when plaintiff who disputed prison policy was transferred out of defendant's facility); *Corder v. Lewis Palmer Sch. Dist. No. 38*, 566 F.3d 1219, 1225 (10th Cir. 2009) (no controversy when high school student who contested school policy graduated); *USANA Health Scis., Inc. v. SmartShake US, Inc.*, No. 2:17-cv-00139-DN, 2018 WL 2709215, at *4 (D. Utah June 5, 2018) (no controversy when defendant covenanted not to bring trademark infringement suit).

The decision in *Capitol Records, Inc. v. Foster,* No. Civ. 04-1569-W, 2006 WL 4558154, at *1 (W.D. Okla. July 13, 2006)*,* is illustrative. The plaintiff in *Capitol Records*, a record label, sued the defendant for copyright infringement for illegally downloading the label's copyrighted music. The defendant counterclaimed, seeking declaratory judgment that she had *not* infringed the copyright. *Id.* The plaintiff eventually moved to voluntarily dismiss its own claims with prejudice. *Id.* It then moved to dismiss the declaratory judgment counterclaim on the ground that dismissal of the record label's claims ended the controversy between the parties. *Id.* at *3.

18

The *Capitol Records* court agreed and granted the motion to dismiss the counterclaim. *Id.*
Dismissing the label's claims with prejudice meant the copyright infringement claims were
adjudicated on the merits. *Id.* This barred the record label from bringing any further action
regarding the alleged copyright infringement. *Id.* The defendant thus had no need for declaratory
judgment to preclude future litigation because the dismissal of the label's claims already
accomplished that. *Id.* There was no remaining infringement controversy between the plaintiff
and the defendant that declaratory judgment might resolve that was not already provided by the
dismissing the plaintiff's claims with prejudice. *Id.*; *see also Elf-Man, LLC v. Lamberson*, No.
13-CV-0395-TOR, 2014 WL 12634827, at *1 (E.D. Wash. July 10, 2014) ("[D]ismissal with
prejudice of the copyright claims against [defendant] would moot [his] claims for declaratory
relief."); *Bodyguard Prods., Inc. v. Does 1-25*, No. 17-cv-7667, 2019 WL 7900686, at *2 (N.D.
Ill. Feb. 19, 2019).

Similarly, this court's dismissal of Plaintiffs' claims with prejudice acts a final judgment
on the merits under Fed. R. Civ. P. 41(b).[54] That merits-based disposition bars Plaintiffs from
any further litigation against Defendants that is "based on the same cause of action" at issue here.
*Nwosun v. Gen. Mills Rests., Inc.*, 124 F.3d 1255, 1257 (10th Cir. 1997) ("[A] cause of action
includes all claims or legal theories of recovery that arise from the same transaction, event, or
occurrence."); *see MACTEC, Inc. v. Gorelick*, 427 F.3d 821, 831 (10th Cir. 2005) ("[C]laim
preclusion . . . prevent[s] a party from litigating a legal claim that was or could have been the
subject of a previously issued final judgment."). Because this court has rejected on the merits

---

[54] A dismissal for failure to prosecute or failure to comply with court orders "operates as an adjudication on the
merits." Fed. R. Civ. P. 41(b).

Plaintiffs' contention that it *did* have ownership interests, there is no need to make a separate

determination that Plaintiffs did *not* have ownership interests. *See Bodyguard Prods.*, 2019 WL

7900686, at *2 (dismissal of Plaintiff's claims with prejudice "render[ed] . . . Defendant's

counterclaim a legal nullity, as the request for declaratory relief is simply the flip-side of

Plaintiff's original claim that has been finally resolved on the merits"). Consequently, there is no

longer an "actual controversy" on which the court could base a declaratory judgment. Because

no justiciable issue remains regarding Plaintiffs' ownership of the CRM Software, Defendants'

counterclaim for declaratory relief should be denied as moot.

### RECOMMENDATION

Based on the foregoing analysis, IT IS HEREBY RECOMMENDED that:

1.      Defendants' Motion for Summary Judgment and Sanctions[55] be

GRANTED IN PART and DENIED IN PART consistent with above.

2.      Feracode's Joinder in Motion for Summary Judgment and Sanctions[56] be

GRANTED in its entirety.

3.      Plaintiff's Amended Complaint[57] be DISMISSED WITH PREJUDICE.

4.      Defendants' Counterclaim I for declaratory relief be DENIED AS MOOT.

5.      Defendants' Counterclaim II for Injunctive Relief be DISMISSED for

failure to state a claim.

\*\*\*

---

[55] ECF No. 101.

[56] ECF No. 103.

[57] ECF No. 50.

Copies of this Report and Recommendation are being sent to all parties, who are hereby notified of their right to object. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). The parties must file any objection to this Report and Recommendation within fourteen (14) days after being served with a copy of it. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to object may constitute waiver of objections upon subsequent review.

DATED May 7, 2021.


BY THE COURT:

_____

JARED C. BENNETT
United States Magistrate Judge